1   are fraudulent because they have no personal knowledge of whatever they are stating, and

2   furthermore it is mostly fantasy designed to fit their racial prejudices against, Dolphin, Negroes,

3   and negroid nations ("African").

4   183.    Gollin, Schwartz, and Contreras, the Illinois and the ODA, each and all, being public

5   employees, officials and agencies, have the responsibility to verify, with due diligence, each and

6   every statement they make concerning any citizen of the United States of America.

7

8   **BACKGROUND OF SLSOM**

9   184.    The online curriculum created by Dolphin for SLSOM was the first of its kind in the

10  world. The online curriculum mirrored the curriculum offered in Liberia on the SLSOM campus.

11  It was created to supplement the medical students study.  The curriculum was and is based on the

12  exam topics listed in the USMLE Annual Step 1 Bulletin for basic sciences, the first two years of

13  medical school. See Exhibit "36".

14  185.    No student has ever graduated from St. Luke School of Medicine using its online

15  curriculum, alone.  It is too difficult and too extensive.  In fact, of SLSOM's 36 graduates, only

16  two has ever used its online curriculum.  All other 34 graduates are completely unfamiliar with

17  it.  They are transfer students to SLSOM from other accredited medical schools, from various

18  parts of the world.  Therefore, they only had their last two years of full-time training at

19  accredited hospitals and clinics to complete.

20  186.    SLSOM records each and every examination score in the medical student's record, which

21  is recorded in the student's transcript, which is then averaged for each course for the course final

22  grade.  A SLSOM medical student is not allowed to fail any examination in any course.  A

23  student has four chances to pass any examination, otherwise that medical student must retake the

24  entire course and cannot progress until that course is passed.  The transcripts of all SLSOM

25  students and graduates will clearly demonstrate SLSOM's diligent record keeping.

26  187.    Accurate financial records were kept for each and every student enrolled in SLSOM.  At

27  no time were hundreds of Indian or Liberian students ever enrolled at SLSOM.   Liberian

28  students were not even charged tuition at SLSOM.  However, the Liberian campuses were

destroyed from civil war on two occasions and closed as a result of governmental extortion, interference and misconduct from 2005 until the present day.

188.    During the first eight years of SLSOM's existence, 1998 through 2006, SLSOM graduated 36 doctors.  This represents an average of 4.5 doctors a year.  This does not fit the definition of a "diploma mill".

189.    It is impossible for a medical student to graduate with a Doctorate of Medicine degree with courses completed online.  Even if a student completes SLSOM's online curriculum for basic sciences, which only 6 medical students did during SLSOM's operation in Liberia until 2006, the medical student would have to complete at least 80 weeks of clinical rotations at an accredited hospital to graduate, aside from other requirements needed for graduation.

190.    The best evaluation of the rigor and effectiveness of St. Luke School of Medicine's online and clinical science curriculum is the pass rate for national and international medical licensing examinations.  SLSOM's worldwide medical licensing examination pass rate of 88% is exceptional.  If the scores from medical students forced to transfer to other medical schools due to the IMED removal and subsequent fallout were included in this calculation, SLSOM's worldwide medical licensing examination pass rate would rise to 96%.

191.    Because there is no central foreign medical school accrediting body, a foreign medical school's listing on the IMED essentially acts as a de-facto accreditation. The hallmark used by ECFMG in assessing foreign medical programs is student passage rates on the USMLE.

192.    ECFMG and FAIMER removed SLSOM from IMED, surprisingly, among other things, without taking note of SLSOM students high USMLE pass rate. This meant that SLSOM graduates and degrees are not recognized worldwide. World Health Organization's Worldwide Directory of Medical Schools will no longer be updated.

**IV.        CAUSES OF ACTION**

**1st Cause of Action - CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983 (First Amendment - Freedom of Speech, the Right to Peaceably Assemble and to Petition the Government for Redress)**

192    Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-191 as if fully set forth herein.

193    Defendants Gollin, Schwartz, the Illinois, Contreras and the ODA intentionally and maliciously violated plaintiff''s First Amendment rights by publishing defamatory, libelous, untrue statements, in newsprint and the internet, that caused plaintiffs reputation, school, students, and graduates to be discredited and denied medical doctor certification by the ECFMG and other medical certification agencies. All to Plaintiffs damage in an amount to be proven at trial.

194    Gollin, Schwartz, the Illinois, Contreras and the ODA violated The Plaintiffs and the Class' right the right to First Amendment - Freedom of Speech, the Right to Peaceably Assemble and to Petition the Government for Redress while acting or purporting to act in the performance of their official duties.

195    Gollin, Schwartz, the Illinois, Contreras and the ODA's violations of the right to First Amendment - Freedom of Speech, the Right to Peaceably Assemble and to Petition the Government for Redress was a substantial factor in causing harm to Plaintiffs and the Class.

196    Plaintiffs and the Class are entitled to damages of past economic loss, future economic loss, past non-economic loss, including physical pain and mental suffering, and future non-economic loss, including physical pain and mental suffering in an amount to be proven at trial.

**2nd Cause of Action CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983 (Fourth Amendment - Unreasonable Search and Seizure)**

197     Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-196 as if fully set forth herein.

198     The acts of the government Liberia as cited in paragraphs 1-198, by putting in jail, seizing Dolphin's passport, confining him to his office, keeping in the house for 15 days, and not permitting leaving Liberia for more than 200 days in 2005, violated the 4th amendment prohibition against unreasonable seizure as prohibited by the Friendship Treaty.

199     Plaintiff Dolphin is entitled to damages of past economic loss, future economic loss, past non-economic loss, including physical pain and mental suffering, emotional distress and psychological stress, for which Plaintiff Dolphin is entitled to actual compensatory, punitive and general damages according to proof at trial.

**3rd Cause of Action - CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983 (Fifth Amendment - Right to Due Process)**

200     Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-199 as if fully set forth herein,

201     Whereas defendants Liberia, Gollin, Schwartz, the Illinois, Contreras and the ODA intentionally and maliciously violated the Fifth Amendment - Right to Due Process of the Plaintiffs Plaintiffs and the Class.  By harassing, libeling, slandering, Dolphin, SLSOM, SL-G, and the Class, without proof of their accusations, and without trial as required by the laws of Liberia, and as required by ORS 348.615 (Appeal Procedure for Unaccredited Institutions) and ORS 348.597 (Applicability of ORS 348.594 to 348.615), sending fraudulent letters to the Ghana NAB accusing the Plaintiffs and the Class of being criminals, and being denied a hearing.

202     Gollin, Schwartz, the Illinois, Contreras and the ODA violated The Plaintiffs and the Class Fifth Amendment - Right to Due Process  while acting or purporting to act in the performance of their official duties.

203     Gollin, Schwartz, the Illinois, Contreras and the ODA's violations of the Fifth Amendment - Right to Due Process was a substantial factor in causing harm to The Plaintiffs and the Class.

204     Plaintiffs and the Class are entitled to damages of past economic loss, future economic loss, past non-economic loss, including physical pain and mental suffering, and future non-economic loss, including physical pain and mental suffering in an amount to be proven at trial..

**4th Cause of Action - CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983**

**(Eighth Amendment - Prohibiting Cruel and Unusual Punishment)**

205     Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-204 as if fully set forth herein.

206     Shariff and the Republic of Liberia intentionally and maliciously violated the Eighth Amendment - Prohibiting Cruel and Unusual Punishment of the Plaintiff Dolphin.

207     Shariff and the Republic of Liberia  violated The Plaintiff Dolphin's Eighth Amendment - Prohibiting Cruel and Unusual Punishment while acting or purporting to act in the performance of their official duties, in violation of the Friendship Treaty.

208     Shariff and the Republic of Liberia's violations of the Eighth Amendment - Prohibiting Cruel and Unusual Punishment was a substantial factor in causing harm to Plaintiffs and the Class.

209     Plaintiff Dolphin is entitled to punitive, compensatory and general damages of past economic loss, future economic loss, past non-economic loss, including physical pain and mental suffering, and future non-economic loss, emotional distress, psychological pain and mental suffering in an amount to be proven at trial..

**5th Cause of Action - CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983**

**(Fourteenth Amendment - Deprivation of Liberty, Due Process, and Equal Protection)**

210     Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-209 as if fully set forth herein. This all relates to Liberia not golin et al as stated above.

211    All the Defendants intentionally and maliciously violated the Fourteenth Amendment - Deprivation of Liberty, Due Process, and Equal Protection of the Plaintiffs and the Class. The acts of Shariff and the Liberia government to destroy Dolphin, SLSOM, SL-G, and the Class were done in violation of all their rights under the constitution. The actions of Gollin, Schwartz, Contreras, the Illinois, and the ODA destroy Dolphin, SLSOM, SL-G, and the Class were done in violation of all their rights under the constitution. Under Oregon law, the Plaintiff, each and all, were entitled to a hearing, which was denied to them. They were entitled to an appeal in the Superior Court in the County in which they are located or operating. SLSOM was never located in Oregon. Historically, only one student of SLSOM resided in Oregon. The other 250 or more SLSOM students are not under the jurisdiction of the Oregon law and their rights to due process, as well as the rights of Dolphin, SLSOM and SL-G were denied by the Defendants prejudice and racial bias.

212    The Plaintiffs and the Class suffered irreparable harm and damages of a pecuniary nature, mental and emotional shock, psychological deprivation, shame humiliation, ridicule and other losses, all to the punitive, compensatory and general damage of the plaintiffs in an amount to be proven at trial. Plaintiffs and the Class are entitled to damages of past economic loss, future economic loss, past non-economic loss, including physical pain and mental suffering, and future non-economic loss, including physical pain and mental suffering according to proof at trial.

**6ᵗʰ Cause of Action - CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1985(3) (Conspiracy to Violate Civil Rights)**

213    Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-212 as if fully set forth herein.

214    the act of imprisoning dolphin, publishing false and misleading, statements and articles in news papers, sending out false letters defining the status of St. Luke, the decertifying SLSOM and its students and graduates by Gollin, Schwartz, the Illinois, Contreras, the ODA, Shariff, the Republic of Liberia, and the Ghana NAB intentionally and maliciously performed a Conspiracy

to Violate Civil Rights of the Plaintiffs and the Class, by denying them the opportunity to conduct a school, go to school, graduate from school, to make money and become doctors, violated their civil right to education and work..

215    The conspiratorial acts of all the defendants  Conspiracy to Violate Plaintiffs Civil Rights was a substantial factor in causing harm to Plaintiffs and the Class.

216    Plaintiffs and the Class are entitled to punitive, compensatory, and general damages for past economic loss, future economic loss, past non-economic loss, including physical pain and mental suffering, and future non-economic loss, including physical pain and mental suffering in an amount to be proven at trial..

- HARASSMENT BY PUBLIC OFFICIALS (U.S. CONSTITUTION 14TH AMENDMENT)
- VIOLATIONS OF ORS 348.615 (Appeal Procedure for Unaccredited Institutions)
- VIOLATIONS OF § 348.597  (Applicability of ORS 348.594 to 348.615)
- LIBEL (California Civil Code Section 45, 45a, 46)
- TRADE LIBEL
- INTERFERENCE IN BUSINESS ADVANTAGE (California Civil Code Section 2202)
- COLLUSION, BRIBERY, AND TRADING IN INFLUENCE
- VIOLATIONS OF §§ 2511 and 2520 of the Electronic Communications Privacy Act ("EPCA")
- VIOLATIONS OF 18 U. S. C. § 1030, § 2701 of the Stored Communication Act ("SCA")
- FRAUD (COMPUTER FRAUD AND ABUSE ACT ("CFAA"), 18 U.S.C. § 1030 )
- INTENTIONAL DISCRIMINATION IN EMPLOYMENT (Title 42, Chapter 21, Subchapter I, § 1981(a))
- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (California Jury Instructions –  CACI 1600)
- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (California Jury Instructions – CACI 1620)

- THREATS AND EXTORTION AGAINST FOREIGN OFFICIALS (TITLE 18, PART I, CHAPTER 41 § 878.)
- INVASION OF PRIVACY (Article 1, §1 of the California Constitution; )
- INTERNET STALKING (California Civil Code § 1708.7)

217   Contreras, the ODA, Gollin and Schwartz, the the Illinois Board of Govenors ratified" the decision knowing the unlawful reason for those actions and personally approved it after it had been made.

218   Defendants actions complained of herein were conscious, intentional, wanton and malicious entitling Plaintiffs and other members of the Class to an award of punitive damages.

219   Plaintiffs and the other members of the Class have no adequate remedy of law for Defendants continued violation of the Plaintiffs' and the Class' rights..

**7th Cause of Action - CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983 (Civil Action for Deprivation of Rights – State Liability)**

220   Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-219 as if fully set forth herein.

221   The Plaintiffs and the Class claims that Gollin, Schwartz, the Illinois, Contreras and the ODA denied the Plaintiffs, each and all, full and equal protection under the law because of their race, national origins, and/or the race and national origins of the owners of the institutions.

222   Gollin, Schwartz, the Illinois, Contreras and the ODA denied, aided, and or incited a denial of equal protection and equal civil rights and priviledges to Plaintiffs and the Class.

223   A major motivating reason for Gollin, Schwartz, the Illinois, Contreras and the ODA's conduct was its racial perception of, and perception of the racial origin of the owners of Plaintiffs (African-American and African) and the Class.  The race of the owners of, or the race of a person whom The Plaintiffs and the Class were associated with was a motivating reason for Gollin, Schwartz, the Illinois, Contreras and the ODA's conduct;

224   The Plaintiffs and the Class were harmed; and Gollin, Schwartz, the Illinois, Contreras and the ODA's conduct was a substantial factor in causing Plaintiffs and the Class harm.

225    Defendants actions complained of herein were conscious, intentional, wanton and malicious entitling Plaintiffs and other members of the Class to an award of punitive damages.

226    Plaintiffs and the other members of the Class have no adequate remedy of law for Defendants continued violation of the Plaintiffs' and the Class' rights.

227    Plaintiffs and the Class are entitled to punitive, compensatory, and general damages for past economic loss, future economic loss, past non-economic loss, including physical pain and mental suffering, and future non-economic loss, including physical pain and mental suffering in an amount to be proven at trial.

**8th Cause of Action - HARASSMENT BY PUBLIC OFFICIALS (U.S. CONSTITUTION 14TH AMENDMENT)**

228    Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-227 as if fully set forth herein.

229    The Plaintiffs and the Class claim that they were harmed by being subjected to harassment because of the race of the predominant owners, the national origins of the Class, and the ethnicity of the locations of the institutions and that Gollin, Schwartz, the Illinois, Contreras and the ODA is responsible for that harm.

230    The Plaintiffs and the Class suffered harassment that was so severe, pervasive, and offensive that it effectively deprived them all of the right of equal access to educational benefits and opportunities;

231    The defendants, each and all, had actual knowledge of that harassment; and the Defendants, each and all, acted with deliberate indifference in the face of that knowledge. The Defendants, each and all acted, with deliberate indifference to their response to the harassment were clearly unreasonable in light of all the known circumstances.

232    The Plaintiffs and the Class claims that they, each and all, were harmed

   A.) by Shariff's harassment, libel, slander, fraud, and conversion;

B.) by harassment, libel, slander, fraud, and conversion of Roland;

C.) by harassment, libel, slander, fraud, and conversion other officials of the Republic of Liberia;

D.) by harassment, libel, slander, fraud, and conversion of officials of the NAB of the Republic of Ghana;

E.) by conversion of SLSOM's listing on the ECFMG – FAIMER's International Medical Education Directory;

F.) by libel, slander and fraud of Gollin;

G.) by libel, slander and fraud of Schwartz;

H.) by libel, slander and fraud of Gollin and Schwartz approved by the Illinois;

I.) by libel, slander and fraud of Contreras;

J.) and, by libel, slander and fraud of Contreras approved by the ODA.

233   Plaintiffs and the Class also claim that Shariff and Roland are responsible for the harm because Shariff and Roland were acting as their employers, the Liberia NTLA, and the NCHE, respectively, when the incidents occurred.

234   St. Luke  Dolphin, and the Class also claim that Gollin, Schwartz, the Illinois, Contreras and the ODA are responsible for the harm because Gollin and Schwartz were acting as employees of the Illinois (Gollin and Schwartz) and the ODA ( Contreras ) when the incidents occurred.

235   Plaintiffs and the Class also claim that Carole Bede is responsible for the harm because Carole Bede was acting as employee of ECFMG – FAIMER when the incidents occurred.

236   Plaintiffs and the Class also claim that unknown does are responsible for the harm because unknown does  were acting as employees of the NAB of the Republic of Ghana when the incidents occurred.

237   Defendants actions complained of herein were conscious, intentional, wanton and malicious entitling Plaintiffs and other members of the Class to an award of punitive damages according to proof.

238    Plaintiffs and the other members of the Class have no adequate remedy of law for Defendants continued violation of the Plaintiffs' and the Class' rights.

239    Plaintiffs and the Class are entitled to punitive, compensatory, and general damages for past economic loss, future economic loss, past non-economic loss, including physical pain and mental suffering, and future non-economic loss, including physical pain and mental suffering in an amount to be proven at trial..

**9th Cause of Action - VIOLATIONS OF § 348.597 (Applicability of ORS 348.594 to 348.615)**

240    Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-239 as if fully set forth herein.

241    Wrongful Use of Administrative Proceedings.  The Plaintiffs and the Class claims that Gollin, Illinois, Contreras and the ODA wrongfully brought an administrative proceeding against the Plaintiffs and the Class.

242    Gollin, Schwartz, Illinois, Contreras and the ODA was actively involved in listing SLSOM on the Oregon "Diploma Mill List" without the appropriate administrative proceeding;

243    The ODA did not conduct an independent investigation; The private proceeding ended in The Plaintiffs' and the Class' disfavor. No reasonable person in Gollin, Contreras and the ODA's circumstances would have believed that there were reasonable grounds to bring the proceeding against Plaintiffs and the Class,

244    Gollin, Schwartz, Contreras, the Illinois, and the ODA acted primarily for a purpose other than succeeding on the merits of the claim;

245    The Plaintiffs and the Class was harmed; and

246    Gollin, Schwartz, the Illinois, Contreras and the ODA's conduct by publishing the diploma mill list that included SLSOM, and sending the 91-page documents to the the NAB and to officials of the Republic of Ghana were substantial factors in causing harm to Plaintiffs and the Class.

247   Defendants actions complained of herein were conscious, intentional, wanton and malicious entitling Plaintiffs and other members of the Class to an award of punitive damages.

248   Plaintiffs and the other members of the Class have no adequate remedy of law for Defendants continued violation of the Plaintiffs' and the Class' rights.

249   Plaintiffs and the Class are entitled to punitive, compensatory, and general damages for past economic loss, future economic loss, past non-economic loss, including physical pain and mental suffering, and future non-economic loss, including physical pain and mental suffering in an amount to be proven at trial..

**10th Cause of Action - VIOLATIONS OF ORS 348.615 (Appeal Procedure for Unaccredited Institutions)**

250   Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-249 as if fully set forth herein.

251   Abuse of Process. Plaintiffs and the Class claim that Gollin, the Illinois, Contreras and the ODA wrongfully inserted SLSOM on the State of Oregon's "Diploma Mill List".

252   That Gollin, the Illinois, Contreras and the ODA knew that Plaintiffs and the Class were each and all located outside the state of Oregon, and therefore outside the jurisdiction established the the law itself. ORS 348.615 states "If the Oregon Student Assistance Commission refuses to grant approval to a school to confer degrees or revokes the approval to confer degrees, the refusal or revocation shall be subject to the right of review by an action brought in the circuit court of the county in which the school is located."

253   Gollin, Schwartz, the Illinois, Contreras and the ODA intentionally used this confusing and unconstitutional act.

254   The defendants used the procedure to alleged false, libelous, and defamatory statements insinuating that Dolphin, the owners of SLSOM, SL-G , and the Class are criminals, something that that procedure was not designed to achieve;

Complaint for Damages for Wrong - 62

255     As a result of the defendants actions Plaintiffs and the Class was harmed; and, Gollin, the Illinois, Contreras and the ODA's conduct was a substantial factor in causing Plaintiffs and the Class harm

256     Defendants actions complained of herein were conscious, intentional, wanton and malicious entitling Plaintiffs and other members of the Class to an award of punitive damages according to proof at trial.

257     Plaintiffs and the other members of the Class have no adequate remedy of law for Defendants continued violation of the Plaintiffs' and the Class' rights.

258     The Plaintiffs and the Class are entitled to punitive, compensatory and general damages in an amount to be determined at trial.

**11th Cause of Action - LIBEL (California Civil Code Section 45, 45a, 46)**

259     Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-258 as if fully set forth herein.

260     Defendants, each all, made many false public statements concerning SLSOM  and their principle owner Dolphin and the Class.  The defendants, each of them, in publishing false and untrue statements, alleged, did so intentionally, with knowledge that said statements had no foundation in truth, or did not exercise due diligence, in ascertaining the truth or falsity of the statements they published. In doing this acts the defendants, each of them, acted maliciously to defame St. Luke l Dolphin and the class and therefore entitling plaintiffs to punitive, compensatory and general damages in an amount to be proven at trial.

**ECFMG and FAIMER**

261     On January 20, 2005, defendants Carole Bede of ECFMG and FAIMER, and each of them, acting in their official capacity, received an unnamed and unsigned letter on NCHE letterhead that stated: "St. Luke School of Medicine is not registered or accredited as a medical school in Liberia." Thereafter, without confirming any of this information and without

contacting St. Luke  or  Dolphin, She immediately removed St. Luke  the International Medical Education Directory (IMED).

262    On April 25, 2005 Carole Bede removed St. Luke from the IMED based on a sloppily typed letter purportedly signed by Roland stating that SLSOM was a "computer" school. Carole Bede had a duty to ascertain the authenticity of the letter before removing SLSOM from the IMED. Thereafter, again, without confirming any of this information and without  contacting St. Luke or Dolphin, She immediately removed St. Luke School of Medicine - Liberia from the International Medical Education Directory (IMED).

263    Carole Bede, as the executive officer of ECFMG and FAIMER, had a duty to ascertain the authenticity of the unnamed and unsigned letter before removing SLSOM from the IMED in January and April 2005.  She also had a duty to restore SLSOM to the IMED by order of the Liberian Supreme Court and the NCHE between September 2005 through January 2006, and even until now, to which she did not. Her unilaterial actions caused plaintiffs shame and ridicule, which led to the denial of privileges of being certified as a medical school and SLSOM graduates being denied the honors of being doctors. The Plaintiffs and the Class are entitled to punitive, compensatory and general damages in an amount to be determined at trial.

**GEORGE GOLLIN AND THE UNIVERSITY OF ILLINOIS**

264    Gollin has been publishing defamatory information against SLSOM on his website at the Illinois since 2003. Gollin has admitted that he is a consultant to the Republic of Liberia and Liberia's Ministry of Education. In this manner, Gollin played a significant role in assisting Shariff, Bahr and Roland in sending false information to ECFMG, ultimately resulting in SLSOM's removal from the IMED, and played a significant role in the extortion and "shake down" of SLSOM and Dolphin.  Gollin's published statements on his Illinois website have been used and referenced on at least 36 different websites in the United States alone. Some of the false statements published on Gollin's Illinois site are presented here:

     a.    Gollin lists SLSOM as a "diploma mill" on his Illinois website. On his site, Gollin defines a  "diploma mill" as an "organization or individual that produces and sells

diplomas, degrees transcripts, or other academic records that are meant to give the impression of academic achievement, but really represent little or no study." FALSE.

b.      On his site, Gollin published that "St. Regis University even operated St. Luke's School – they put MDs out there on the street. These were medical degrees that were not just to hang on the wall, they were going to use them." FALSE

c.      On his site, Gollin published that "David Karam, one of the apparent owners of SLSOM, organized a company manufacturing products described as curing skin cancer and offering potential treatments for diabetes and hepatitis. As 'Executive Vice President and Chief Medical Officer' his fake M.D. lent an air of legitimacy that helped convince a pair of investors to buy $400,000 of stock in "Bio-Life Labs, Inc.," shortly before its officers abandoned the company." FALSE

d.      "St. Luke is a diploma mill." FALSE

e.      "A U.S. State Department official says it's fake. FALSE

f.      "Liberia says it's illegal." FALSE

g.      "A Ghananian official said it's bogus." FALSE

h.      "Liberia says St. Luke is a fake." FALSE

I.      "St. Luke School of Medicine: www.stluke.edu, an entirely fake medical school run from TX, KY, CA." FALSE

j.      "Another unaccredited entity is the "St. Luke School of Medicine" with domain http://stluke.edu' St. Luke was declared illegal by Liberia in 2004 but continues to operate, using various U.S. addresses. At least three of its American "graduates" have served prison terms for attempting to treat patients." FALSE

k.      "Do recall that a number of customers of "St. Luke School of Medicine" have been incarcerated for their activities, but that the (American) operators of this supposedly Liberian, Ghanaian, California, Texan, and Kentuckian monstrosity are out and about, selling patient medicines, issuing degrees, and selling stock in a company that claimed to market a cure for skin cancer." FALSE

l.      "It could be quackery.  It could be criminal.  The American Medical Association needs to get involved."  FALSE

m.      "The American owners of the "St. Luke School of Medicine" took advantage of the catastrophic civil war in Liberia to claim, without governmental challenge, to be training medical students in Monrovia.  (They weren't.)   FALSE

n.      In 2005 U.S. Embassy personnel in Liberia visited St. Luke and found 'no evidence of anything resembling a functioning medical school."  FALSE

o.      "Even the vile St. Luke Medicine retains its .edu domain."  FALSE

p.      Gollin threatened to put SLSOM "out of business."

q.      and, many more libelous statements against Dolphin and St. Luke School of Medicine and the Class  too numerous to included in this petition.  However, the Plaintiffs and the Class reserve the right to introduce other false statements made by the Defendant Gollin and others.

r.      the many libelous, false, and fraudulent statements made by Gollin in Exhibits 41, 42, 43, and 45.

265    Gollin has published the entire 91-page document that he sent to the NAB of the Republic of Ghana on his Illinois website which is packed with blatently false, fraudulent, magical, and contrived statements about, St. Luke , SLSOM graduates, and others.  He claims that this document is public domain because it was presented in court.  The statement is blatantly false because  Dolphin only presented the first 5 pages of the document to the court in federal lawsuit, 10-CV-01791-RGK (SHx).  Exhibit 40.

266    The Plaintiffs and the Class present a detailed list of false, libelous, and threatening statements of the 91-page document authored by Gollin and the Illinois (Exhibits 42 & 43),  in Exhibit 52.

267    Plaintiffs and the Class, each and all, claim that Gollin harmed them by making the the false statement(s) referenced above. The defendant Gollin made the statement to the worldwide population on the Internet, to people other than Plaintiffs and the Class; These people other that the Plaintiffs and the Class reasonably understood that the statements were about Plaintiffs and

the Class;  these people other than the Plaintiffs and the Class reasonably understood the statements to mean that "Plaintiffs and the Class had committed a crime" and were criminals, cheats, frauds, and scum-bags. The above statements made by Gollin were false.  The Defendant Gollin knew the statement(s) false or had serious doubts about the truth of the statement(s).

268     The Plaintiffs and the Class are entitled to punitive, compensatory and general damages in an amount to be determined at trial.

## MOHAMMED SHARIFF, THE MINISTRY OF EDUCATION, THE NATIONAL COMMISSION ON HIGHER EDUCATION, AND THE MINISTRY OF HEALTH OF THE REPUBLIC OF LIBERIA

269     On March 16, 2005, in "The Inquirer", Monrovia, Liberia, Assemblyman Shariff stated that, "the whole thing about the school is fake." and made false and threatening statements against Dolphin.

270     On March 22, 2005, in a letter addressed to SLSOM regarding a recent "inspection" Dr Horatius Browne of the Liberian Medical Board stated that SLSOM had no library, books, handbook or laboratories.  Dr. Browne also stated in his letter that SLSOM was not "representative of a Medical College."

271     On March 31, 2005, the Inquirer reported that the Liberian Medical Board, at a NCHE hearing called by Shariff, stated, "there is no school in Liberia known as the St. Luke School of Medicine", that it was "illegal", and "counterfeit." Dr. Benson Barh, Chief Medical Officer of Liberia, stated "we are not aware and have no knowledge of *the* medical school."  All the statements made by the Liberian Medical Board were patently false.

272     On that same day, Bahr stated that the building where SLSOM was located was "a run down dwelling home under major renovation which lacks electricity, laboratory, class rooms, running water."

273     On April 11, 2005, the NCHE issued a letter to ECFMG that stated SLSOM "does not exist" and was a "computer school."

274   On April 12, 2005, Roland and Dr. Kondikai (Minister of Education) both stated at an NTLA hearing that SLSOM "does not exist in Liberia."

275   On May 10, 2005, the NTLA declared that SLSOM was "a fake medical institute and is not a legal establishment" and had endangered "the health of the public and should be turned over to the Justice Ministry for prosecution."

276   BARH sent a letter to the W.H.O. Representative in Monrovia stating that St. Luke School of Medicine "Does not exist in Liberia" after he and the LMB inspected SLSOM's facilities.  This is an obviously false and fraudulent statement.  EXHIBIT 40 (reserved)..

277   Barh also sent a copy of the same letter to the NAB of Ghana as well as to the Medical and Dental Council of the Republic of Ghana in an effort to defame Dolphin and St. Luke School of Medicine..  EXHIBIT 40 (reserved).

278   As specified above, the Plaintiffs and the Class, each and all, were injured by the publishing and distribution of the letters, documents, and media articles, and the radio broadcast of the false statements.

279   Plaintiffs and the Class, each and all, claim that Shariff, the Ministry of Education, the NCHE, and the MH of the Republic of Liberia harmed them by making the the false statement(s) referenced above. The defendants Shariff, the Ministry of Education, the NCHE, and the MH of the Republic of Liberia made the statement to the worldwide population on the Internet, to people other than Plaintiffs and the Class; These people other that the Plaintiffs and the Class reasonably understood that the statements were about Plaintiffs and the Class;  That these people other than the Plaintiffs and the Class reasonably understood the statements to mean that "Plaintiffs and the Class had committed a crime" and were criminals, cheats, frauds, and scum-bags.

280   The above statements made by Shariff, the Ministry of Education, the NCHE, and the MH of the Republic of Liberia were false.  The Defendants Shariff, the Ministry of Education, the NCHE, and the MH of the Republic of Liberia knew the statement(s) false or had serious doubts about the truth of the statement(s).

281     The Plaintiffs and the Class are entitled to punitive, compensatory and general damages in an amount to be determined at trial.

## BRAD SCHWARTZ AND THE UNIVERSITY OF ILLINOIS

282     Schwartz and the Illinois College of Medicine did libel the Plaintiffs and the Class with the document he sent to the NAB of the Republic of Ghana. Exhibit 51.  The Plaintiffs and the Class incorporate Exhibit 54 (a list of fraudulent, false, and threatening statements of Schwartz and the Illinois).

283     Plaintiffs and the Class, each and all, claim that Schwartz and the Illinois harmed them by making the the false statement(s) referenced above. The defendants Schwartz and the  Illinois made the statements to the worldwide population on the Internet, to people other than Plaintiffs and the Class; These people other that the Plaintiffs and the Class reasonably understood that the statements were about Plaintiffs and the Class;  That these people other than the Plaintiffs and the Class reasonably understood the statements to mean that "Plaintiffs and the Class had committed a crime" and were criminals, cheats, frauds, and scum-bags.

284     The Plaintiffs and the Class are therefore entitled to punitive, compensatory and general damages in an amount to be determined at trial.

## ALAN CONTRERAS AND THE OREGON ODA

285     Contreras and the ODA did libel the Plaintiffs and the Class since 2003 on their website.

286     The Plaintiffs and the Class present a detailed list of false, libelous, and threatening statements  authored by Contreras and the ODA (Exhibits 49 and 50), in Exhibit 53.

287     Contreras  and the ODA  did libel the Plaintiffs and the Class with the documents he sent to the NAB of the Republic of Ghana. Exhibit 49 and 50.  The Plaintiffs and the Class incorporate Exhibit 53 (a list of fraudulent, false, and threatening statements of Contreras and the ODA).

288     Plaintiffs and the Class, each and all, claim that Contreras and the ODA harmed them by making the the false statement(s) referenced above. The defendants Contreras and the  ODA

made the statements to the worldwide population on the Internet, to people other than Plaintiffs and the Class; These people other that the Plaintiffs and the Class reasonably understood that the statements were about Plaintiffs and the Class;  That these people other than the Plaintiffs and the Class reasonably understood the statements to mean that "Plaintiffs and the Class had committed a crime" and were criminals, cheats, frauds, and scum-bags.

289    The Plaintiffs and the Class are entitled to punitive, compensatory and general damages in an amount to be determined at trial.

## THE NAB OF THE REPUBLIC OF GHANA

290    The Ghana NAB did submit the fraudulent, libelous, and threatening documents to appeal the judgment of the Ghana High Court in favor of SL-G in December 2009 in an effort to publicly libel and slander the Plaintiffs and the Class. Exhibit 42, 43, and 47 – 54.

291    As specified below, the Plaintiffs and the Class, each and all, were injured by the publishing and distribution of the letters, documents, and media articles, and the radio broadcast of the false statements.

292    Plaintiffs and the Class, each and all, claim that NAB harmed them by making the the false statement(s) referenced above. The defendant NAB made the statements to the worldwide population on the Internet, to people other than Plaintiffs and the Class; These people other that the Plaintiffs and the Class reasonably understood that the statements were about Plaintiffs and the Class;  That these people other than the Plaintiffs and the Class reasonably understood the statements to mean that "Plaintiffs and the Class had committed a crime" and were criminals, cheats, frauds, and scum-bags.

293    The Plaintiffs and the Class  are entitled to punitive, compensatory and general damages in an amount to be determined at trial.

294    The Defendants, each and all, knew the statements to be false and acted intentionally causing the statements to be published in the media and on the internet.

295    The Defendants, each and all, were negligent or acted recklessly in failing to determine whether the statements contained in the ad were true before publishing the false statements.

296    The Defendants Shariff and Officials of the Republic of Liberia acted in lawless disregard continuously making false, libelous, and threatening statements to Dolphin, officials of SLSOM, SL-G , and the Class. Defendants, each and all, knew the statements the made to be false and acted intentionally in causing the documents and statements to be published and distributed.

297    Defendant Roland and the NCHE and the Ministry of Education sent a fraudulent, defamatory and libelous letter (Exhibit 11) to the Educational Commission for Foreign Medical Graduates in March 2005. Defendant Roland knew the statements to be false and acted intentionally in causing the documents and statements to be published and distributed.

298    Defendants Educational Commission for Foreign Medical Graduates and Foundation for Advancement of Medical Education and Research were complicit in the libel, who without question removed SLSOM from the International Medical Education Directory.

299    Professor Gollin knew all of his alleged statements detailed in Exhibit 43 and 45 and repudiated in Exhibit 52 to be false and acted intentionally in causing the documents and statements to be published and distributed.

300    Dr. Schwartz  knew all of his alleged statements detailed in Exhibit 51, and repudiated in Exhibit 54, to be false and acted intentionally in causing the documents and statements to be published and distributed.

301    Contreras knew all of his alleged the statements detailed in Exhibit 49 and repudiated in Exhibit 53 to be false and acted intentionally in causing the documents and statements to be published and distributed.

302    The Illinois actions were negligent or acted recklessly in providing Gollin a website, letterhead, permission and authority in which to make false statements concerning SL-G , SLSOM, Dolphin, and the Class.

303    The Illinois actions were negligent or acted recklessly in providing Schwartz, letterhead, permission and authority in which to make false statements concerning SL-G , SLSOM, Dolphin, and the Class.

304    The State of Oregon ODA actions were negligent or acted recklessly in providing Contreras with website, unrestricted unlawful permission to publish the "diploma mill" list, letterhead, permission and authority in which to make false statements concerning St. Luke Dolphin, and the Class.

305    As specified above, the St. Luke Dolphin, and the Class, each and all, were injured by the publishing and distribution of the letters, documents, and media articles, and the radio broadcast of the false statements made by the Defendants. The name and reputation of Plaintiffs and the Class were besmirched by the Defendants, each and all. Additionally, the Republic of Liberia and its conspirators continued to caused the disruption of SLSOM even though the Supreme Court issued an order to restore SLSOM to its previous status, Exhibit 14, it was ignored and SLSOM was uncompensated for damages, Exhibit 21 – Exhibit 30.

**Actual Damages**

306    The Plaintiffs and the Class are entitled to recover actual damages against The Defendants' wrongful conduct was a substantial factor in causing the following:

a. Harm to The Plaintiffs and the Class' property, business, trade, profession, or occupation;

b. Created Expenses the Plaintiffs and the Class had to pay as a result of the defamatory statements;

c. Harm to The Plaintiffs and the Classs reputation; or

Shame, mortification, or hurt feelings.

307    Even if Plaintiffs and the Class has not proved any actual damages for harm to reputation or shame, mortification or hurt feelings, the law nonetheless assumes that they suffered this harm.

308    Without presenting evidence of damage, Plaintiffs and the Class is entitled to receive compensation for this assumed harm in whatever sum you believe is reasonable.

**Punitive Damages**

309    Plaintiffs and the Class may also recover damages to punish The Defendants if they prove by clear and convincing evidence that The Defendants acted with malice, oppression, or fraud.

310    Defendants, each all, made many false written and published public statements concerning SLSOM, SL-G , its principle owner Dolphin, and the Class.

311    Defendants, each and all, had the responsibility to assure that the information they desiminated on the Internet, newspapers, and other media was true, accurate, and correct to which they, each and all, did not bother (or care) to verify its truthfulness.

**13ᵗʰ Cause of Action - TRADE LIBEL & INTERFERENCE IN BUSINESS ADVANTAGE (California Civil Code Section 2202). Intentional Interference With Prospective Economic Relations**

312    Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-311 as if fully set forth herein.

313    SLSOM owned a Charter and an Act of Legislature, making St. Luke School of Medicine - Liberia  a legal and corporate entity with perpetual succession, having the authority to contract, sue and be sued, plead and be impleaded in any court of competent jurisdiction within the Republic; to purchase or otherwise acquire and hold property, real and mixed up to the value of one hundred and fifty million United States dollars (US$150,000,000); making St. Luke School of Medicine (SLSOM) to be perpetually maintained in the Republic of Liberia for medical education of the people of the Liberian nation, people of the other countries and for those who may otherwise have the capacity to seek medical education.

314    Defendants, and each of them, were aware of SLSOM's economic relationship with the Republic of Liberia, ECFMG, potential medical students worldwide, and the World Health Organization, by virtue of the enabling documents: the Act, Charter, and Statement of Attestation. Defendants were aware of SLSOM's legitimate status, and SLSOM's profit making potential and actuality. Defendants' False Public and Private Statements were designed to disrupt

1   SLSOM's worldwide economic relationships. Defendants' False Public Statements caused

2   ECFMG to permanently remove SLSOM from the IMED, even after a Liberian Supreme Court

3   order and several subsequent NCHE letters requested that St. Luke School of Medicine - Liberia

4   be reinstated. As a consequence of SLSOM's removal from the IMED, medical students and

5   graduates lost jobs, residencies, and positions. Additionally, SLSOM's graduates who had

6   legitimately earned degrees and licenses had them revoked and properly earned degrees

7   invalidated.  The actions of the Defendants, each and all of them, ruined the reputation of

8   Dolphin, and resulted in the loss of .business opportunities for Dolphin in Liberia, Ghana,

9   Nigeria, and the United States of America. The acts of the defendants were done with the

10   specific intent to destroy SLSOM, SL-G , Dolphin, and discredit the degrees of the the Class.

11   The plaintiffs and the Class are entitled to damages for the loss of there licenses, school and

12   income according to proof at trial.

13   317.    Defendants False Public Statements caused ECFMG to permanently remove SLSOM

14   from the IMED, even after a Liberian Supreme Court order and several subsequent NCHE letters

15   requested that SLSOM be reinstated. As a consequence of SLSOM's removal from the IMED,

16   Medical Students lost jobs, residencies, and positions. Additionally, certain members of the

17   Class had their earned licenses revoked and properly earned degrees invalidated.  The actions of

18   the Defendants, each and all of them, ruined the reputation of Dolphin and the Class and resulted

19   in the loss of .business opportunities for Dolphin in Liberia, Ghana, and the United States of

20   America and the Class worldwide.

21   318.    The Defendants NAB, Gollin and Schwartz of the Illinois, Contreras and ODA's

22   fraudulent and false Public Statements were meant to discredit SL-G in the United States and the

23   Republic of Ghana government agencies and personnel.

24   319.    The Plaintiffs and the Class claim that Gollin, Schwartz, the Illinois, Contreras and the

25   ODA intentionally interfered with an economic relationship between them and the NAB of the

26   Republic of Ghana that probably would have resulted in an economic benefit to The Plaintiffs

27   and the Class.

28

Complaint for Damages for Wrong - 74

320.    The Plaintiffs and the Class and NAB were in an economic relationship that probably would have resulted in an economic benefit to SL-G , Dolphin, and the Class.

321.    Gollin, Schwartz, the Illinois, Contreras and the ODA knew of the relationship;

322.    Gollin, Schwartz, the Illinois, Contreras and the ODA intended to disrupt the relationship;

323.    Gollin, Schwartz, the Illinois, Contreras and the ODA engaged in wrongful conduct through fraud, libel, misrepresentation and violation of the stature.

324.    The Plaintiffs' and the Class' economic relationships were disrupted;

325.    The Plaintiffs and the Class were harmed; and

326.    Gollin, Schwartz, the Illinois, Contreras and the ODA's wrongful conduct was a substantial factor in causing Plaintiffs and the Class harm.

327.    Defendants actions complained of herein were conscious, intentional, wanton and malicious entitling Plaintiffs and other members of the Class to an award of punitive, compensatory and general damages.

328.    Plaintiffs and the other members of the Class have no adequate remedy of law for Defendants continued violation of the Plaintiffs' and the Class' rights.

**14th Cause of Action - VIOLATIONS OF §§ 2511 and 2520 of the Electronic Communications Privacy Act ("EPCA")**

329.    Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-328 as if fully set forth herein.

330.    Plaintiffs and the Class and the Class assert this Count against Gollin and the Illinois, jointly and severally, pursuant to §§ 2511 and 2520 of the ECPA, 18 D.S.C. §§ 2511 and 2520.

331.    Section 2511 of the ECPA provides in part:

(1) Except as otherwise specifically provided in this chapter any person who-

      (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept, or endeavor to intercept, any ... electronic communications;

Complaint for Damages for Wrong - 75

1        (d) intentionally uses, or endeavors to use, the contents

2       of any ... electronic communication knowing or having reason to know that the

3         information was obtained through the interception of a[n] ... electronic

4         communication in violation of this subsection; ... shall be punished as provided in

5         subsection (4) or shall be subject to suit as provided in subsection (5).

6   332.    Section 2520 of the ECPA provides in part:

7  (a) In general. -Except as provided in section 2511 (2)(a)(ii), any person whose ... electronic

8  communication is intercepted ... or intentionally used in violation of this chapter may in a civil

9  action recover from the person or entity which engaged in that

10  violation such relief as may be appropriate.

11  (b) Relief.-In the action under this section, appropriate relief includes-

12       (1) such preliminary and other equitable or declaratory relief as may be appropriate

13       (2) damages under subsection (c) and punitive damages in appropriate cases; and

14       (3) a reasonable attorney's fee and other litigation costs reasonably' incurred.

15   333.    Section 2510 of the ECPA, setting forth the definitions of the terms in § 2511, defines

16  "person" to include "any employee, or agent of the United States or any State or political

17  subdivision thereof .... " 18 U.S.C. § 2510(6). Accordingly. each Gollin and the Illinois is a

18  "person" within the meaning of § 2511.

19   334.    Section 2510 defines "electronic communication" to include "any transfer of signs,

20  signals, writing, imaging, sounds, data, or intelligence of any nature transmitted in whole or in

21  part by a wire, radio, electromagnetic, photo electronic, or photo optical system that affects

22  interstate or foreign commerce, ... " 18 U.S.C. § 2510(12). Accordingly, the Gollin's Exhibit 1

23  complained of constitute an "electronic communication" within the meaning of § 251.1.

24   335.    Section 2510 defines "intercept" to mean "the aural or other acquisition of the contents of

25  any wire, electronic, or oral communication through the use of any electronic, mechanical, or

26  other device.." 18 U.S.C. § 2510(4). Section 2510 defines "electronic, mechanical, or other

27  device" to mean "any device or apparatus which can be used to intercept a wire, oral, or

28  electronic communication," subject to exclusions not relevant to this action. 18 U.S.C. § 2510(5).

336.    The software/hardware used by Gollin to remotely activate and steal Exhibit 1 complained of constitute an "electronic ... device" within the meaning of 18 U.S.C. § 2510(5). By using said software/hardware to secretly obtain Exhibit 1, each Defendant Gollin and the Illinois "intercepts" that communication within the meaning of § 2510.

337.    By virtue of the foregoing, Plaintiffs SLSOM, Dolphin and each member of the Class is a "person whose ... electronic communication is intercepted ... or intentionally used in violation of this chapter" within the meaning of § 2520.

338.    By virtue of the foregoing, Defendants Gollin and the Illinois are liable to Plaintiffs and the Class and the other members of the Class for their violations of §§ 2511 and 2520 of the ECPA.

339.    Since Plaintiffs and the Class first learned of Defendants' unlawful seizure of Exhibit 1 complained of on November 11, 2009, this action is timely and not beyond ECPA's applicable statue of limitations.

340.    Defendants' actions complained of herein were conscious, intentional, wanton and malicious, entitling Plaintiffs and the Class and the other members of the Class to an award of punitive, compensatory and general damages.

341.    Plaintiffs and the other members of the Class have no adequate remedy at law for Defendants continued violation of the ECPA.

**15th Cause of Action - FRAUD (COMPUTER FRAUD AND ABUSE ACT ("CFAA"), 18 U.S.C. § 1030 )**

342.    Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-340 as if fully set forth herein.

Section 2701 of the SCA provides, in pertinent part:

Except as provided in subsection (c) of this section, whoever-

1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or intentionally exceeds an authorization to access that facility; and thereby obtains, alters or prevents  authorized access to a wire or

electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

343.    Section 2711 of the SCA defines "electronic communication" *as* "any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic. photo electronic or photo optical system that affects interstate or foreign commerce .... " 18 U.S.C. §§ 2711, 2510(12). Accordingly, the documentation stolen Exhibit 1 by Gollin complained of are "electronic communications" within the meaning of the SCA.

344.    Section 2711 of the SCA defines "person" to include "any employee, or agent of the United States or of a State or political subdivision thereof, and any individual, partnership, association .... " 18 U.S.C. §§ 2711, 2510(6). Accordingly, all Gollin and the Illinois are "persons" within the meaning of the SCA.

345.    Section 2711 of the SCA defines "electronic storage" to include "any temporary intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof .... " 18 U.S.C. §§ 2711, 2510(17)(A).\

346.    Defendants' use of the software/hardware to remotely steal the Exhibit 1 complained of and to obtain their images constitutes an unauthorized acquisition of stored electronic communications in violation of the SCA.

347.    258.  Section 2701(b) of the SCA provides punishment in those instances where the unauthorized acquisition of stored electronic communications was not done for commercial gain or advantage of "a .fine under this title or imprisonment for not more than six months, or both.... " 18 U.S.C. § 2701(b)(B).

348.    Defendants actions complained of herein were conscious, intentional, wanton and malicious entitling Plaintiffs and other members of the Class to an award of punitive damages.

349.    Plaintiffs and the other members of the Class have no adequate remedy of law for Defendants continued violation of the CFAA.

**16th Cause of Action - FALSE IMPRISONMENT (California Jury Instructions – VF-1400. False Imprisonment)**

350.    Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-348 as if fully set forth herein.

351.    Defendants, Republic of Liberia,  and Shariff without lawful privilege and without filing criminal charges, confined Dolphin against his will, and preventing him from traveling freely and thereby confining him as is set forth in paragraphs 1 through 198, on multiple occasions.

   1. That Shariff and  the Republic of Liberia intentionally deprived  Dolphin of his freedom of movement by use of  force, threats of force, and unreasonable duress;  and,

   2. That the detention and confinement compelled Dolphin to stay at the Liberia Capital building in Monrovia, and, prevented him from leaving Liberia on three or more occasions where for some appreciable time;

   Dolphin did not knowingly or voluntarily consent to be so confined imprisoned and detained. Dophin suffered harm to his mind, body and soul. His psycho was destroyed, plus, his family life.

   6.    Defendants actions complained of herein were conscious, intentional, wanton and malicious entitling  Dolphin to an award of punitive, compensatory and general damages. According to proof at trial.

**17th Cause of Action - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

352.    Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-351 as if fully set forth herein.

353.    The Defendants, each and all, knew that imprisoning Dolphin, publishing false and misleading information about SLSOM, SL-G, Dolphin and the class, they were abusing their authority, destroying Plaintiffs' and the Class' reputations and that the Defendants, each and all, abused positions of authority or a relationship that gave them real or apparent power to affect the Plaintiffs' and the Class' interests and that these acts would cause plaintiffs emotional harm; and

354.    The defendants, each and all, knew that they had a right to classify the medical certification of SLSOM, SL-G, Dolphin, and the Class, each and all, *and* knew that the Plaintiffs and the Class was particularly vulnerable to emotional distress; and

355.    Defendants actions complained of herein were conscious, intentional, wanton , willful, reckless and malicious entitling Plaintiffs and other members of the Class to an award of punitive, compensatory and general damages according to proof at trial.

356.    Plaintiffs and the other members of the Class have no adequate remedy of law for Defendants continued violation of the Plaintiff Dolphin's rights..

**18th Cause of Action - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**Plaintiff repeats and re-allege each and every preceding allegation in paragraphs 1-355 as if fully set forth herein.**

357.    The Plaintiffs and the Class claims that Defendants had a duty to not falsely imprison Dolphin, publish false information, to research any information of a negative nature before taking punitive action, like decertifying SLSOM and the class, before doing so, that doing these acts would have detrimental, lasting, permanent denial of Doctor status to the class, and closure of SLSOM, therefore causing untold serious emotional distress to Dolphin and the class.

358.    The defendants breached this duty of fairness in reporting and researching negative information, before taking punitive action against SLSOM, Dolphin, and the class. The defendants by breaching this duty caused indescribable harm and emotional distress, including anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame to plaintiffs, which entitles them to punitive damages for this willful, wanton and reckless conduct, plus, compensatory and general damages in an amount to be awarded according to proof at trial.

359.    Plaintiffs and the other members of the Class have no adequate remedy of law for Defendants continued violation of the Plaintiff Dolphin's rights.

**19th Cause of Action - INTERNET HACKING ( COMPUTER INTRUSION, I.E. HACKING, CYBERTERRORISM, Title 47 USC § 223) Obscene or harassing telephone calls in the District of Columbia or in interstate or foreign communications; and, Title 47 USC.§ 230, Protection for private blocking and screening of offensive material.**

360. Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-358 as if fully set forth herein.

361.    Gollin  hacked into SLSOM's website to obtain password protected information and published the same on his Illinois website, falsely stating that it is also in public domain. However, court records from federal lawsuit 10-CV-01791-RGK (SHx)  Exhibit 1 shows that this is also a lie presented to the public by Gollin.  This is Gollin's attempt at blackmailing Plaintiffs and the Class and harassing witnesses and victims of his crimes against Dolphin, SLSOM, SL-G, the Class, and others.   Hacking is a violation of Federal and State laws.

362.    Gollin has taken the liberty to alter the "court documents" as he chooses, he presents on his website in an effort to make himself look good in the public eye.  He altered the documents to make it seem that he, Gollin, was being victimized by  Dolphin and St. Luke .  He uses these documents to terrorize the people listed on Exhibit 45.

363.    Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, [theft/bribery/misrepresentation/breach or inducing a breach of a duty to maintain secrecy/ [or] wiretapping, electronic eavesdropping, [or] internet hacking (illegal access to privately or publicly owned computers.  Defendant Gollin did not obtain his Exhibit 1 detailed above by any lawful methods.

364.    Gollin and Illinois misappropriation of Gollin's purported " Exhibit 1" caused Plaintiffs and the Class harm,  and their willful and malicious conduct justifies an award of punitive, comopensatory and general damages, the purposes of punitive damages are to punish the wrongdoers for the conduct that harmed the Plaintiffs and the Class and to discourage similar conduct in the future. Said damages will be subject to proof at trial.

**20th Cause of Action - INTERNET STALKING (California Civil Code § 1708.7)**

365.    Plaintiffs repeat and re-allege each and every preceding allegation in paragraphs 1-363 as if fully set forth herein.

366.    The Plaintiffs and the Class claims that Gollin, Schwartz, the Illinois, Contreras and the ODA violated their right to privacy.

367.    Gollin, Schwartz, the Illinois, Contreras and the ODA engaged in a pattern of conduct with the intent to harass the Plaintiffs and the Class.

368.    As a result of this conduct the Plaintiffs and the Class reasonably feared for their own safety or for the safety of an immediate family member; and

369.    As part of the pattern of conduct, Gollin, Schwartz, the Illinois, Contreras and the ODA made a believable threat with the intent to place The Plaintiffs and the Class in reasonable fear for their livelihood; and

370.    The Plaintiffs and the Class clearly demanded at least once that Gollin, Schwartz, the Illinois, Contreras and the ODA stop; and

371.    Gollin, Schwartz, the Illinois, Contreras and the ODA persisted in their pattern of conduct;

372.    Plaintiffs and the Class was harmed; and Gollin, Schwartz, the Illinois, Contreras and the ODA's conduct was a substantial factor in causing Plaintiffs and the Class harm.

373.    "Harass" means a knowing and willful course of conduct directed at The Plaintiffs and the Class that seriously alarms, annoys, torments, or terrorizes them, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to The Plaintiffs and the Class. A "pattern of conduct" means a series of words or actions over a period of time, however short, that reflects an ongoing purpose.

374.    Defendants actions complained of herein were conscious, intentional, wanton and malicious entitling Plaintiffs and other members of the Class to an award of punitive, compensatory and general damages.

375.    Plaintiffs and the other members of the Class have no adequate remedy of law for Defendants continued violation of the Plaintiffs' and the Class' rights..

## V.                        PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for judgment against Defendants, and each of them, jointly and severally, as follows and appropriate to the particular Causes of Action:

1.  For monetary relief as requested in the Causes of Action as appropriate for the particular Causes of Action against the Republic of Liberia,

2.  For monetary relief as requested in the Causes of Action as appropriate for the particular Causes of Action against the NAB of the Republic of Ghana.

3.  For monetary relief as requested in the Causes of Action against ECFMG and FAIMER to be proven at trial;

4.  For monetary relief as requested in the Causes of action against Gollin in his individual and official capacities.

5.  For monetary relief as requested in the Causes of Action against Schwartz in his individual and official capacities.

6.  For monetary relief as requested in the Causes of Action against the Illinois.

7.  For Monetary relief as requested in the Causes of Action against Contreras in his individual and official capacities.

8.  For Monetary relief as requested in the Causes of Action against the ODA.

9.  For pre- and post-judgment interest;

10. For Punitive damages as appropriate for the particular Causes of Action against all defendants;

11. For restoration of SLSOM on the International Medical Education Directory;

12. For removal of St. Luke School of Medicine from the State of Oregon "diploma mill" list;

13. For removal of St. Luke School of Medicine from the "diploma mill" list of other states and territories that use the State of Oregon's "Diploma Mill" list;

14. An Equitable ruling on the Constitutionality of "diploma mill" lists and similar other restrictive lists that preclude educational and employment rights and opportunities for law-abiding citizens who have otherwise acquired the education, training, and examination qualifications for employment;

15. An Equitable ruling on the Constitutionality that employees of the Oregon state governments, specifically, the ODA, cannot apply laws and regulations outside of their own state in any matter of law, order, citizenship, or rights of that state not expressly written in the Constitution of the United States without express written permission of any other state or country to any person, institution, or corporations outside of that state, and therefore cannot violate the civil rights of any individual, institution, or corporation outside of their own states.

16. For attorneys' fees and costs of suit pursuant to, inter alia, the common fund and private Attorney General doctrines, California Code of Civil Procedure section 1021.5 and/or the statutory Causes of Action asserted herein, as may be appropriate;

17. and, for such other and further relief as this Court may deem just and proper.

////

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable and an advisory jury for a factual determination on all equitable claims.


Respectfully Submitted

February 2, 2012



Larry D. Walls

Attorney for the Plaintiffs and the Class

## VERIFICATION

    I have read the foregoing and certify, under the penalty of perjury under the laws of the State of California that the foregoing is true and correct and was executed in Los Angeles, California.

Dated: February 2, 2012

Jerron B. R. Dolphin

**LIST OF EXHIBITS**

(Page numbers are separate from the complaint)

Exhibit A – Members of the Class-Action......................1

Exhibit 1 – W.H.O. Letter from Ministry of Health, August 2000
..........................................................4

Exhibit 2 – PERMIT TO OPERATE ISSUED SEPTEMBER 2002 .........5

Exhibit 3 – PRESIDENT SIGNS SLSOM CHARTER ACT AUGUST 2003....6

Exhibit 4 – LIBERIA EMBASSY WEBSITE DISCLAIMER..............7

Exhibit 5 – 18 Jan 2005 NCHE letter to Madame Carole Bede,
ECFMG........................................................9

Exhibit 6 – Adverse Letter from Madame Carole Bede, ECFMG...12

Exhibit 7 – ATTESTATION FROM NCHE, March 2005..............15

Exhibit 8 – 12 March 2005 NCHE Letter to Madame Carole Bede. 16

Exhibit 9 – Receipt for Payment of LMB's Inspection Fee.....19

Exhibit 10 – Liberian Medical Board Assessment of SLSOM Campus
...........................................................20

Exhibit 11 – NCHE "Computer School" Letter to ECFMG.........22

Exhibit 12 – TEXT OF SLSOM "WRIT OF PROHIBITION" PETITION...27

Exhibit 13 – Madame Carole Bede's Denial of NCHE Request to
Restore SLSOM's IMED Listing...............................33

Exhibit 14 – Liberia Supreme Court 'Stay Order' and Hearing
Issued July 22, 2005.......................................35
35

Exhibit 15 – Liberia Supreme Court 'Conference' Scheduled on
Aug 4, for Aug 10, 2005....................................36

Exhibit 16 – Liberia Supreme Court Restores SLSOM's
Accreditation on Aug 10, 2005 Order........................37

Exhibit 17 - Liberia Government Defaults-Liberia Supreme Court
    Issues Default Certificate to SLSOM......................38

Exhibit 18 - NCHE Requests ECFMG-IMED to Restore SLSOM's
    Previous Status in IMED...................................39

Exhibit 19 - NCHE Second Request for ECFMG-IMED to Restore
    SLSOM's Previous Status in IMED..........................40

Exhibit 20  - Benson Barh Fired by President Sirleaf for
    Corruption...............................................41

Exhibit 21 - SLSOM's Civil Law Court Petition..............44

Exhibit 22 - Ministry of Health & Social Welfare Answer to
    SLSOM's "Damages for Wrong" Complaint....................48

Exhibit 23 - Ministry of Education Answer to SLSOM's "Damages
    for Wrong" Complaint.....................................53

Exhibit 24 - SLSOM's REPLY TO CO-DEFENDANT MINISTRY OF
    EDUCATION ANSWER.........................................56

Exhibit 25 - SLSOM FILES RESPONDENT'S RESISTANCE...........61

Exhibit 26 - SLSOM FILES REQUEST FOR SUMMARY JUDGMENT......66

Exhibit 27 - MINISTRY OF EDUCATION WITHDRAWAL..............69

Exhibit 28 - SLSOM REQUEST FOR CLERK'S CERTIFICATE" (Default
    Certificate).............................................70

Exhibit 29 - SLSOM FILES MOTION FOR BARE DENIAL............72

Exhibit 30 - Liberia Government Defaults-Liberia Civil Law
    Court Issues Default Certificate to SLSOM................76

Exhibit 31  - LEGISLATIVE ENACTMENT........................77

Exhibit 32 - Pictures of the SLSOM Gaye Town Campus before
    Renovation, November 2004................................82

Exhibit 33 - Pictures of SLSOM Gaye Town Campus after
    Renovation, Circa March 2005.............................88

Complaint for Damages for Wrong - 87

Exhibit 34 - Partial Transcript of Ministry of Health Letter to India Consulate General..................................92

Exhibit 35 - SLSOM Invitation to the LMB for Inspection of its Campus.......................................................93

Exhibit 36 - SLSOM Curriculum............................94

Exhibit 37 - LMB Press Release, March 2005.................107

Exhibit 38 - Benson Barh Contract with SLSOM from 2004 (reserved)..................................................112

Exhibit 39 - Benson Barh Receipt of Payment from 2004 (reserved)..................................................113

Exhibit 40 - "Secret Letter" sent by Benson Barh to W.H.O., the NAB, and Medical and Dental Council of Ghana (reserved) ..................................................114

Exhibit 41 - George Gollin's Power Point Presentation that is Linked at Least 7 Times On the Internet (reserved).......115

Exhibit 42 - The First 5 Pages of the 91-page Document George Gollin Sent to the Ghana NAB (reserved).................116

Exhibit 43 - The 91-page Document George Gollin Published on his University of Illinois Website.......................117

Exhibit 44 - "Exhibit 1" from the Previous Lawsuit CV-01791-RGK (reserved)..............................................118

Exhibit 45 - "Exhibit 1" George Gollin Published on his University of Illinois Website (reserved)...............119

Exhibit 46 - Not Used......................................120

Exhibit 47 - Letter from NAB to the Attorney General of Republic of Ghana submitted to Court of Appeal...........121

Exhibit 48 - Caution Letter from Ministry of Foreign Affairs, Republic of Ghana as a Result of ODA Letter, submitted to Court of Appeal...........................................123

Exhibit 49 - Defamation Letter from Alan Contreras to Republic of Ghana (faxed version) Submitted to Ghana Court of Appeals ...........................................................125

Exhibit 50 - Defamation Letter from Alan Contreras to Republic of Ghana (mail version) Submitted to Ghana Court of Appeals ...........................................................127

Exhibit 51 - Defamation Letter from Brad Schwartz to Republic of Ghana (mail version) Submitted to Ghana Court of Appeals ...........................................................129

Exhibit 52 - False, Defamatory, and Threatening Statements in the 91-page document authored by George Gollin and the University of Illinois - Urbana.........................132

Exhibit 53 - False, Defamatory, and Threatening Statements in the document authored by Alan Contreras and the ODA......133

Exhibit 54 – False, Defamatory, and Threatening Statements in the document authored by Brad Schwartz and the University of Illinois College of Medicine................................134

# Exhibit A – Members of the Class-Action

| No. | Name | Country/State |
|-----|------|---------------|
| 1 | Dr. Robert S. Farmer, Jr | Maryland |
| 2 | Suleiman Adekunle Omipidan | Nigeria |
| 3 | Pauline Ugochi Chilaka | Nigeria |
| 4 | Raymond Y Ofori | United Kingdom |
| 5 | Dr. Muhammed A.S.M. Al-Anzi | Saudi Arabia |
| 6 | Dr. Sid R. Rogers | Colorado |
| 7 | Dr. Karriem S. Watson | Illinois |
| 8 | Dr Emmanuel Okoye | Canada |
| 9 | Dr. Keith Patrick Steinhurst | Texas |
| 10 | Dr. David Belshaw | California |
| 11 | Linda Halisky | New York |
| 12 | Joseph Aiyegbusi | Nigeria |
| 13 | Ken Jordon | South Carolina |
| 14 | Larry Lammers | Michigan |
| 15 | Dr. O. B. G. Nmorsi | Nigeria |
| 16 | Dr. Gbenga Gbayesola | Nigeria |
| 17 | Dr. Pius Ndubisi | Nigeria |
| 18 | Dr. Godwin Okonkwo | Nigeria |
| 19 | Dr. Chijioke Ejiogu | Nigeria |
| 20 | Steve Monday | Nigeria |
| 21 | Dr. Robin Ellsworth | Illinois |
| 22 | Dr. Miklos Major, III | Texas |
| 23 | Dr. Amin Sain | United Kingdom |
| 24 | John Toluwani Oladele | Nigeria |
| 25 | (Redacted) | Georgia |
| 26 | Darlington Esemuze | South Africa |
| 27 | Victoria Ofele | Nigeria |
| 28 | Dr. Mary Hulve | New Jersey |
| 29 | Dr. Michael Hejazi | New Jersey |
| 30 | Dr. Peter Kolosky | Conneticut |

| No. | Name | Country/State |
|-----|------|---------------|
| 31 | Dr. Laurie Berg Kolosky | Conneticut |
| 32 | Dervanna Troy Mckoy | New York |
| 33 | Armand Dixon | Tennesee |
| 34 | Carroll Braddy | Georgia |
| 35 | Christopher Sauda | Nigeria |
| 36 | Chukwuyem Obia | Nigeria |
| 37 | Dr. David Fyles | United Kingdom |
| 38 | Debrah Berger | New York |
| 39 | Felicia Jatto | Nigeria |
| 40 | Robert Hayes | Kentucky |
| 41 | Dr. James Kyle | Ohio |
| 42 | Robert Irving | Kentucky |
| 43 | Dr. Jason Payor | Florida |
| 44 | Dr. Jerry Charles | Kentucky |
| 45 | (Redacted) | Florida |
| 46 | M. C. K. Madubuike | Georgia |
| 47 | (Redacted) | Florida |
| 48 | (Redacted) | Maryland |
| 49 | (Redacted) | Illinois |
| 50 | Rebecca Hopkins | New York |
| 51 | (Redacted) | France |
| 52 | (Redacted) | Michigan |
| 53 | Dr. Yuri Soyferman | California |
| 54 | Dr. Antwi Boakye | Maryland |
| 55 | Dr. Astara Burlingame | Washington |
| 56 | (Redacted) | Texas |
| 57 | Dr. Joan Nielsen | North Carolina |
| 58 | Withdrawn | |
| 59 | Dr. Mathew Skaria | California |
| 60 | Dr. Peace Jessa | Kentucky |
| 61 | Dr. Rita Patangia | Arkansas |
| 62 | Does 1 - 100 | Various state and nations |

# LIST OF EXHIBITS

## Table of Contents

LIST OF EXHIBITS.................................................................................................1

Exhibit 1 – W.H.O. Letter from Ministry of Health, August 2000................................4

Exhibit 2 - PERMIT TO OPERATE ISSUED SEPTEMBER 2002 ................................5

Exhibit 3 - PRESIDENT SIGNS SLSOM CHARTER ACT AUGUST 2003..................6

Exhibit 4 - LIBERIA EMBASSY WEBSITE DISCLAIMER........................................7

Exhibit 5 - 18 Jan 2005 NCHE letter to Madame Carole Bede, ECFMG.......................9

Exhibit 6 - Adverse Letter from Madame Carole Bede, ECFMG.................................12

Exhibit 7 - ATTESTATION FROM NCHE, March 2005............................................15

Exhibit 8 - 12 March 2005 NCHE Letter to Madame Carole Bede...............................16

Exhibit 9 – Receipt for Payment of LMB's Inspection Fee.........................................19

Exhibit 10 – Liberian Medical Board Assessment of SLSOM Campus.........................20

Exhibit 12 - TEXT OF SLSOM "WRIT OF PROHIBITION" PETITION......................27

Exhibit 13 - Madame Carole Bede's Denial of NCHE Request to Restore SLSOM's IMED Listing
......................................................................................................................33

Exhibit 14 - Liberia Supreme Court 'Stay Order' and Hearing Issued July 22, 2005........35

......................................................................................................................35

Exhibit 15 - Liberia Supreme Court 'Conference' Scheduled on Aug 4, for Aug 10, 2005.....36

Exhibit 16 - Liberia Supreme Court Restores SLSOM's Accreditation on Aug 10, 2005 Order.....37

Exhibit 17 - Liberia Government Defaults-Liberia Supreme Court Issues Default Certificate to
SLSOM...........................................................................................................38

Exhibit 18 - NCHE Requests ECFMG-IMED to Restore SLSOM's Previous Status in IMED......39

Exhibit 19 - NCHE Second Request for ECFMG-IMED to Restore SLSOM's Previous Status in
IMED.............................................................................................................40

Exhibit 20  - Benson Barh Fired by President Sirleaf for Corruption.............................41

Exhibit 21 - SLSOM's Civil Law Court Petition...........................................................................44

Exhibit 22 - Ministry of Health & Social Welfare Answer to SLSOM's "Damages for Wrong" Complaint.......................................................................................................................................48

Exhibit 23 - Ministry of Education Answer to SLSOM's "Damages for Wrong" Complaint..........53

Exhibit 24 - SLSOM's REPLY TO CO-DEFENDANT MINISTRY OF EDUCATION ANSWER 56

Exhibit 25 - SLSOM FILES RESPONDENT'S RESISTANCE.......................................................61

Exhibit 26 - SLSOM FILES REQUEST FOR SUMMARY JUDGMENT......................................66

Exhibit 27 - MINISTRY OF EDUCATION WITHDRAWAL........................................................69

Exhibit 28 - SLSOM REQUEST FOR CLERK'S CERTIFICATE" (Default Certificate)...............70

Exhibit 29 - SLSOM FILES MOTION FOR BARE DENIAL........................................................72

Exhibit 30 - Liberia Government Defaults-Liberia Civil Law Court Issues Default Certificate to SLSOM.........................................................................................................................................76

Exhibit 31  - LEGISLATIVE ENACTMENT................................................................................77

Exhibit 32 - Pictures of the SLSOM Gaye Town Campus before Renovation, November 2004.....82

Exhibit 33 - Pictures of SLSOM Gaye Town Campus after Renovation, Circa March 2005...........88

Exhibit 34 - Partial Transcript of Ministry of Health Letter to India Consulate General.................92

Exhibit 35 – SLSOM Invitation to the LMB for Inspection of its Campus.....................................93

Exhibit 36 – SLSOM Curriculum.................................................................................................94

Exhibit 37 – LMB Press Release, March 2005............................................................................107

Exhibit 38 – Benson Barh Contract with SLSOM from 2004.......................................................112

Exhibit 39 – Benson Barh Receipt of Payment from 2004 (reserved)...........................................113

Exhibit 40 - "Secret Letter" sent by Benson Barh to W.H.O., the National Accreditation Board, and Medical and Dental Council of Ghana (reserved)........................................................................114

Exhibit 41 – George Gollin's Power Point Presentation that is Linked at Least 7 Times On the Internet (reserved)......................................................................................................................115

Exhibit 42 – The First 5 Pages of the 91-page Document George Gollin Sent to the Ghana National Accreditation Board.....................................................................................................................116

Exhibit 43 – The 91-page Document George Gollin Published on his University of Illinois Website (reserved)...................................................................................................................................117

Exhibit 44 – "Exhibit 1" from the Previous Lawsuit CV-01791-RGK...........................................118

Exhibit 45 – "Exhibit 1" George Gollin Published on his University of Illinois Website (reserved) ..................................................................................................................................................119

Exhibit 46 – List of False Statements made in the 91-page document authored by George Gollin (reserved)...............................................................................................................................120

Exhibit 47 – Letter from National Accreditation Board to the Attorney General of Republic of Ghana submitted to Court of Appeal................................................................................121

Exhibit 48 – Caution Letter from Ministry of Foreign Affairs, Republic of Ghana as a Result of Office of Degree Authorization Letter,  submitted to Court of Appeal...........................................123

Exhibit 49 – Defamation Letter from Alan Contreras to Republic of Ghana (faxed version) Submitted to Ghana Court of Appeals...........................................................................126

Exhibit 50 – Defamation Letter from Alan Contreras to Republic of Ghana (mail version) Submitted to Ghana Court of Appeals...........................................................................128

Exhibit 51 – Defamation Letter from Brad Schwartz to Republic of Ghana (mail version) Submitted to Ghana Court of Appeals...........................................................................130

# Exhibit 1 – W.H.O. Letter from Ministry of Health, August 2000

FROM : LIBTELCO MONROVIA                PHONE NO. : 231 227 808        AUG. 19 2000 11:06AM P1



## REPUBLIC OF LIBERIA
# MINISTRY OF HEALTH & SOCIAL WELFARE
### P.O. BOX 10-9009
### 1000 MONROVIA, 10 LIBERIA
### WEST AFRICA

OFFICE OF THE MINISTER

MH&SW/GOL/PSC-M/1255/'00/RL                                    August 15, 2000

Ms. Sandra Dumaont
HDP ASU/HQ
World Health Organization
CH-1211, Geneva 27
Switzerland

Dear Madam:

This is to certify that the Government of Liberia has accredited the St. Luke School of Medicine to operate within the Republic of Liberia. This Medical School will grant four-year Doctor of Medicine (MD) and is regulated through the Ministry of Health.

The date of accreditation is effective August 1, 2000.

It is our hope that this information will be useful and that all necessary courtesies will be accorded the above mentioned medical school.

Kind regards.

Sincerely yours,

Peter B. Coleman, MD, MS, FWACS
M I N I S T E R

# Exhibit 2 - PERMIT TO OPERATE ISSUED SEPTEMBER 2002

ST. LUKE SCHOOL OF MEDICINE     PHONE NO. : 1 310 419 3904     Oct. 07 200

FROM : LTC TRAFFIC DEPT     PHONE NO. : 231 227 614     OCT. 24 2002 04:51



**Republic of Liberia**
**NATIONAL COMMISSION OF HIGHER EDUCATION**
P. O. Box 9014;Tel: 225460
Monrovia, Liberia, West Africa

FFICE OF THE EXECUTIVE DIRECTOR

September 17, 2002

### TEMPORARY PERMIT TO OPERATE
### ST. LUKE SCHOOL OF MEDICINE IN THE
### REPUBLIC OF LIBERIA

Having met the Minimum Criteria set for by the National Commission of Higher Education to operate a higher education institution in the Republic of Liberia, the St. Luke School of Medicine is hereby granted this Temporary permit to operate in the City of Monrovia, Montserrado County. In the Republic of Liberia.

This Temporary Permit of operation is valid for a period of two calendar years (September 2002 - September 2004).

Renewable September 17, 2004

Approved: _____
Lawrence S. Bestman, Ph. D.
**EXECUTIVE DIRECTOR**

Motto: Promotion Quality and Equal Higher Educational Opportunities

# Exhibit 3 - PRESIDENT SIGNS SLSOM CHARTER ACT AUGUST 2003

Please note the "Act to Incorporate SLSOM" is on the same bill that includes the raw diamond, "blood diamond", legislation that lifted United Nations sanctions from Liberia in August 2003.



# REPUBLIC OF LIBERIA

OFFICE OF THE PRESIDENT

August 7, 2003

The Honorable
The Liberian Senate (IN-SESSION)
Capitol Building
Monrovia

Ladies and Gentlemen,

I have the honor to inform that the following Acts of Legislature entitled:

"AN ACT AMENDING THE NEW MINERALS AND MINING LAW PART I ENTITLED 23, 1CR, BY ADDING THERETO A NEW CHAPTER 40 PROVIDING FOR CONTROL ON THE EXPORT AND IMPORT AND TRANSIT OF ROUGH DIAMOND".

"AN ACT CREATING THE CITY OF FOYA WITHIN FOYA ADMINISTRATIVE DISTRICT, LOFA COUNTY, R.L".

"AN ACT TO INCORPORATE ST. LUKE SCHOOL OF MEDICINE (SLSOM) OF THE CITY OF MONROVIA, MONTSERRADO COUNTY, REPUBLIC OF LIBERIA, AND TO GRANT SLSOM A CHARTER".

"AN ACT CREATING MBOO STATUTORY DISTRICT WITHIN MARGIBI COUNTY WHICH CONTAINS THREE COUNTY DISTRICTS, MAMBAHN FAAMINGTON, KARBAI AND FIVE CHIEFDOMS RESPECTIVELY WITH A PROVISIONAL MONTHLY AND PROBATE COURT MAJESTERIAL AREA AND PROVIDING FOR SAME".

have today received Executive Approval

Cordially,



# Exhibit 4 - LIBERIA EMBASSY WEBSITE DISCLAIMER

**REPUBLIC OF LIBERIA**

**NATIONAL COMMISSION OF HIGH EDUCATION**

**Fourth Floor, Room 407**

**MINISTRY OF EDUCATION**

**P. O. Box 9014**

**Monrovia , Liberia , West Africa**

URGENT DISCLAIMER ON THE ILLEGAL ESTABLISHMENT AND RECOGNITION OF HIGHER EDUCATION INSTITUTIONS IN THE REPUBLIC OF LIBERIA

In order to establish a Higher Education Institution in Liberia , there are two sets of requirements: One set of requirements relates to obtaining a charter to operate from the National Legislature. The other set of requirements has to do with conformity to policies as set by the National Commission on High Education. One stipulation in these policies is that institutions seeking to be established in Liberia must meet the requirements as set out in the policy, prior to obtaining charters from the National Legislature. The policy clearly provides guidelines regarding the establishment and operation of high education institutions in the Republic of Liberia . These policy guidelines are currently available at the Commission's Secretariat.

On the contrary, the National Commission on High Education has observed with dismay that some colleges or universities have been established without going through the proper channels. For one thing charters have been granted institutions without prior clearance from the National Commission on High Education. In other cases, several institutions appear to have obtained operational permits or statements of recognition to establish and operate in the country. However, some of these documents were exclusively signed by the former Executive Director of the past administration without the approval of the Commission. Hence, the Permit signed without the approval of the Chairperson is considered invalid, and any institution in possession of such permit is not recognized by the appropriate authorities of the Commission.

Particular references are made to the St. Regis University and St. Luke Medical College that fall in this category. The St. Regis University has publicly made known to the World that it has a legal status to operate in Liberia through the permission of the Commission on High Education. This is not true. Evidence suggests that whatever documents the University claims to have obtained from the Commission were never approved by the Commission and do not bear the signature of the Chairperson. Further, these two institutions are considered Distance Education Institutions and according to the Commission's policy:

*Institutions that are distance education-related and that have approached the National Commission on Higher Education for the operation in Liberia are being processed. Since this is a new area of exploration for the Commission, the public is advised that any decisions already reached reference these Institutions are tentative and that the Commission is continuing its deliberations on these Institutions to final conclusions vis-à-vis their place in the Liberian Higher*

*Education System.*

Accordingly, the National Commission on Higher Education, Republic of Liberia , hereby declares **null** and **void** whatever documents St. Regis University may claim to possess emanating from the Commission until at such time when authorities of the Institution can go through the proper procedures for accreditation.

As regards the St. Luke Medical College, evidence also shows that no such college exists in Liberia ; therefore, it cannot claim to have obtained accreditation from the Commission. The Commission also nullifies the existence of such an institution in Liberia , until such time as all pertinent requirements as noted above are met. It therefore goes without saying that similar notice is being sent our to all institutions which are making claims similar to St. Regis and St. Luke that have not met the requirements as herein noted.

Signed: Isaac Roland, Ed,D. **(DIRECTOR GENERAL)**

Approved: D. Evelyn S. Kandakai, Ed,D. **(CHAIRPERSON)**

Feedback | © 2004 Embassy of Liberia, Washington DC