JUAN C. BASOMBRIO (CA#150703)
basombrio.juan@dorsey.com
DORSEY & WHITNEY LLP
600 Anton Blvd., Suite 2000
Costa Mesa, CA  92626
Telephone:  (714) 800-1400
Facsimile:  (714) 800-1499

Attorneys for Defendant
NATIONAL  ACCREDITATION BOARD
OF THE REPUBLIC OF GHANA

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST. LUKE SCHOOL OF MEDICINE-GHANA, et al., <br><br> Plaintiff, <br><br> v. <br><br> REPUBLIC OF LIBERIA, et al., <br><br> Defendants. | NO.:  CV:11-CV-06322-RGK(SHx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NATIONAL ACCREDITATION BOARD OF THE REPUBLIC OF GHANA'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> HEARING: <br><br> DATE: July 23, 2012. <br> TIME: 9:00 a.m. <br> COURTROOM 850 |

# **TABLE OF CONTENTS**

PAGE

I. INTRODUCTION ........................................................................................ 1

II. FACTUAL BACKGROUND .................................................................... 2

III. ARGUMENT .......................................................................................... 7

    a.    THERE IS A LACK OF SUBJECT MATTER JURISDICTION. ......................... 7

        i.    LEGAL STANDARD UNDER FSIA. ...................................... 8

        ii.    GHANA NAB HAS FOREIGN SOVEREIGN IMMUNITY. ................... 8

        iii.    NONE OF THE FSIA EXCEPTIONS APPLY. ...................................... 10

            1.    WAIVER EXCEPTION DOES NOT APPLY. ........................... 10

            2.    TORT EXCEPTION DOES NOT APPLY. ................................. 11

            3.    COMMERCIAL ACTIVITY EXCEPTION DOES NOT APPLY. ........................................................................ 11

                a.    NO COMMERCIAL ACTIVITY BY GHANA NAB. ........................................................................ 12

                b.    NO COMMERCIAL ACTIVITY IN THE U.S. .............. 12

                c.    NO ACT BY GHANA NAB IN THE U.S. ..................... 13

                d.    NO DIRECT EFFECT IN THE U.S. ............................. 13

    b.    THERE IS A LACK OF PERSONAL JURISDICTION. ..................................... 14

    c.    THE ACT OF STATE DOCTRINE APPLIES. ................................................. 16

    d.    INCONVENIENT FORUM DISMISSAL IS APPROPRIATE. ........................ 17

        i.    GHANA IS AN ADEQUATE ALTERNATIVE FORUM. .................... 17

        ii.    PUBLIC INTEREST FACTORS FAVOR DISMISSAL. ..................... 17

        iii.    PRIVATE INTEREST FACTORS FAVOR DISMISSAL. .................... 18

    e.    DISMISSAL ON COMITY GROUNDS IS APPROPRIATE. ............................ 18

    f.    THE FAC IS BARRED BY THE LITIGATION PRIVILEGE............................ 19

IV. CONCLUSION .................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

A.R. Int'l Anti-Fraud Sys. Inc. v. Pretoria Nat'l Cent.,
634 F. Supp. 2d 1108 (E.D. Cal. 2009) ........................................................ 14

Af-Cap, Inc. v. Chevron Overseas Ltd.,
475 F.3d 1080 (9th Cir. 2007) ..................................................................... 10

Agyenkwa v. Am. Motors Corp.,
622 F. Supp. 242 (E.D.N.Y. 1985) .............................................................. 17

Amorrortu v. Republic of Peru,
570 F. Supp. 2d 916 (S.D. Tex. 2008) ........................................................ 10

Antares Aircraft L.P. v. Fed. Republic of Nigeria,
999 F.2d 33 (2d Cir. 1993) .......................................................................... 14

Argentine Republic v. Amerada Hess Shipping Corp.,
488 U.S. 428 (1989) ................................................................................ 8, 11

Australian Gov't Aircraft Factories v. Lynne,
743 F.2d 672 (9th Cir. 1984) ....................................................................... 14

Bahsoon v. Pezetel, Ltd.,
768 F. Supp. 507 (E.D.N.C. 1991) .............................................................. 10

Banco Nacional de Cuba v. Sabbatino,
376 U.S. 398 (1964) ..................................................................................... 16

Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,
223 F.3d 1082 (9th Cir. 2000) ..................................................................... 15

Beroiz v. Wahl,
84 Cal. App. 4th 485, 100 Cal. Rptr. 2d 905 (2001) ................................... 19

Bokkelen v. Grumman Aerospace Corp.,
432 F. Supp. 329 (E.D.N.Y. 1977) .............................................................. 16

Brennen v. Phyto-Riker Pharm., Ltd.,
2002 WL 1349742 (S.D.N.Y. 2002) ........................................................... 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Burnett v. Al Baraka Invest. & Dev. Corp.,
    292 F. Supp. 2d 9 (D.D.C. 2003) ................................................................ 10

Cal. Dept. of Water Res. v. Powerex Corp.,
    533 F.3d 1087 (9th Cir. 2008) .................................................................... 9

Cassirer v. Kingdom of Spain,
    580 F.3d 1048 (9th Cir. 2009) (rev'd on other grounds en banc, 616 F.3d
    1019 (9th Cir. 2010) ................................................................................ 8

City School of Detroit v. Government of France,
    1990 U.S. Dist. LEXIS 19577 (E.D. Mich. 1990) ...................................... 12

Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T
    Respect,
    89 F.3d 650 (9th Cir. 1996) ...................................................................... 10

Corzo v. Banco Cent. de Reserva del Peru,
    243 F.3d 519 (9th Cir. 2001) .................................................................... 14

Doe v. Holy See,
    557 F.3d 1066, 1073 (9th Cir. 2009) ........................................................ 8

E. & J. Gallo Winery v. Andina Licores S.A.,
    2006 WL 1817097 (E.D.Cal. 2006) .......................................................... 19

Easter v. Am. Western Fin.,
    381 F.3d 948 (9th Cir. 2004) .................................................................... 14

Foremost-McKesson, Inc. v. Islamic Rep. of Iran,
    905 F.2d 438 (D.C. Cir. 1990) ................................................................ 10

Gibbons v. Rep. of Ireland,
    532 F. Supp. 668 (D.D.C. 1982) .............................................................. 10

Gould, Inc. v. Mitsui Mining & Smelting Co.,
    947 F.2d 218 (6th Cir. 1991) .................................................................... 13

Gregorian v. Izvestia,
    871 F.2d 1515 (9th Cir. 1989) .................................................................. 14

Hilton v. Guyot,
    159 U.S. 113 (1895) ................................................................................ 19

iii

International Shoe v. Washington,
   326 U.S. 310 (1945) .................................................................. 14, 16

JP Morgan etc. v. Altos Hornos de Mexico,
   412 F.3d 418 (2d Cir. 2005) .............................................................. 19

Kensington Int'l ltd. v. Itoua,
   505 F.3d 147 (2d Cir. 2007) .............................................................. 13

Loya v. Starwood Hotels & Resorts Worldwide, Inc.,
   583 F.3d 656 (9th Cir. 2009) ............................................................. 17

Lueck v. Sundstrand Corp.,
   236 F.3d 1137 (9th Cir. 2001)....................................................... 17, 18

O'Bryan v. Holy See,
   556 F.3d 361, 379 (6th Cir. 2009) ..................................................... 12

Peterson v. Islamic Republic of Iran,
   627 F.3d 1117 (9th Cir. 2010)............................................................. 8

Pravin Assoc., Ltd. v. Banco Popular,
   109 F.3d 850 (2nd Cir. 1997)............................................................. 19

Provincial Gov't of Marinduque v. Placer Dome, Inc.,
   582 F.3d 1083,1088 (9th Cir. 2009) .................................................. 16

Republic of Argentina v. Weltover, Inc.,
   504 U.S. 607 (1992) .......................................................................... 8

Saudi Arabia v. Nelson,
   507 U.S. 349 (1993) ............................................................... 8, 12, 13

Sea Search Armada v. Republic of Colombia,
   821 F.Supp.2d 268 (D.D.C. 2011) ..................................................... 20

Sec. Pac. Nat. Bank v. Derderian,
   872 F.2d 281 (9th Cir. 1989)............................................................. 10

Siderman de Blake v. Republic of Argentina,
   965 F.2d 699 (9th Cir. 2002)......................................................... 8, 14

Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct.,
   482 U.S. 522 (1987) .......................................................................... 19

iv

Strategic Tech. Pte. v. Republic of China,
    2007 WL 1378492 (D. D.C. 2007) ................................................................. 10

Theo H. Davies & Co., Ltd. v. Rep. of Marshall Islands,
    174 F.3d 969 (9th Cir. 1999) ............................................................... 14, 15

STATUTES

28 U.S.C. § 1603(b) ................................................................................................. 9

28 U.S.C. § 1605(a)(2) ................................................................................ 11, 12, 13

Cal. Civ. Code § 47 ............................................................................................ 2, 19

Foreign Sovereign Immunities Act, 28 U.S.C. §§1602 et seq. ("FSIA") .......... passim

OTHER AUTHORITIES

F. R. Civ. P. 12(b)(1) ............................................................................................... 7

F. R. Civ. P. 12(b)(2) ............................................................................................... 7

F. R. Civ. P. 12(b)(6) ............................................................................................. 19

# I. **INTRODUCTION**

Plaintiffs, St. Luke School of Medicine-Ghana, St. Luke School of Medicine-Liberia, Dr. Jerroll Dolphin, and Robert Farmer on behalf of an alleged class filed a First Amended Complaint ("FAC") on February 8, 2012 against various defendants, including the National Accreditation Board of the Republic of Ghana ("Ghana NAB").  Ghana NAB moves to dismiss all claims in the First Amended Complaint against it based on the following, alternative grounds:

First, the FAC against Ghana NAB must be dismissed because the Court lacks subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§1602 et seq. ("FSIA").  Ghana NAB is an instrumentality of the Republic of Ghana and, as such, is entitled to FSIA immunity.  No exception to immunity applies:  (1) Ghana NAB has not waived immunity; (2) the commercial activity exception does not apply because Ghana NAB has not engaged in commercial activity but in governmental acts; and (3) the tort exception does not apply because no tort is alleged to have been committed by Ghana NAB in the United States.

Second, the FAC against Ghana NAB must be dismissed because there is a lack of personal jurisdiction over it.  Ghana NAB lacks minimum contacts with California, and it would be unreasonable to subject it to jurisdiction here.  The claims against Ghana NAB related to its lack of accreditation of St. Luke School of Medicine-Ghana, an entity formed in Ghana.  Plaintiffs complain that Ghana NAB submitted in a Ghana lawsuit letters it received from American institutions stating that St. Luke School of Medicine-Ghana should not receive accreditation in Ghana.

Third, the FAC against Ghana NAB should be dismissed under the Act of State Doctrine.  Ghana NAB acted as a governmental agency and U.S. courts do not sit in judgment of public acts of a sovereign state within its own territory.

Fourth, the FAC against Ghana NAB should be dismissed based on inconvenient forum grounds.  Prior to filing this action, St. Luke School of Medicine-Ghana filed suit against Ghana NAB in Ghana courts claiming it should

have been accredited.  The lawsuit is pending.  The claims in the Ghana lawsuit are intertwined with the claims asserted here.  Plaintiffs are suing because of certain evidence that Ghana NAB presented in the Ghana litigation.  Thus, this action should be dismissed in favor of the Ghana judicial forum.

Fifth, the FAC against Ghana NAB should be dismissed based on international comity grounds.  California has no interest in this action.  The Republic of Ghana has a strong interest in regulating the practice of medicine in Ghana, which is the issue at the heart of this action.

And sixth, the FAC against Ghana NAB is barred by the litigation privilege, Cal. Civ. Code § 47.  The FAC against Ghana NAB is based on actions that Ghana NAB took within a judicial proceeding in Ghana.  Because the litigation privilege applies to foreign actions, the FAC fails to state a claim.

## II.  FACTUAL BACKGROUND

The allegations in the FAC that related specifically to Ghana NAB are sparse.  Plaintiffs allege that Ghana NAB received letters from Defendants Dr. Brad Schwartz, Dean of the University of Illinois-Urbana Champaign, and Alan Contreras, of the State of Oregon Office of Degree Authorization.  (FAC at ¶¶ 2; 282; 287.)  Plaintiffs attach copies of these letters to the FAC as Exhibits 50 and 51.  Plaintiffs allege that the letters contained defamatory statements about Plaintiffs and their medical school (FAC at ¶ 287), mainly that Ghana NAB should not approve or accredit St. Luke School of Medicine-Ghana.  (FAC at Exhibits 50, 51.)  Plaintiffs further allege that Ghana NAB forwarded these letters to the Ghana Attorney-General and/or the Ghana High Court in December 2009 in connection with a pending lawsuit in Ghana.  (FAC at ¶¶ 290-295 and Exhibit 47.)  Plaintiffs sue Ghana NAB for: (1) "Conspiracy to Violate Civil Rights" (6th Cause of Action ("COA")); (2) "Libel" (7th COA); (3) "Trade Libel and Interference in Business Advantage" (13th COA); (4) "Intentional Infliction of Emotional Distress" (17th COA); and (5) "Negligent Infliction of Emotional Distress" (18th COA).

As discussed below, when a foreign sovereign defendant (indeed, Ghana NAB is an instrumentality of the Republic of Ghana) moves to dismiss based on foreign sovereign immunity grounds, the factual allegations in a complaint are not assumed to be true. Rather, the Court engages in factual determinations. Ghana NAB submits the Declarations of Richard K. Adjei, Head of the Accreditation Department of the Ghana NAB ("Adjei Decl."), and Amma A. Gaisie, the Ghana Solicitor General ("Gaisie Decl."), which set forth the relevant factual background.

Ghana NAB is an instrumentality of the Republic of Ghana created by operation of law. It is a public institution empowered to evaluate whether medical schools may receive accreditation to operate within Ghana. Ghana NAB has the responsibility to protect the public and ensure that graduates of medical schools in Ghana are qualified to practice the profession. Adjei Decl. at ¶ 2.

The St. Luke School of Medicine ("SLSOM"), with Dr. Jerroll Dolphin as its President and C.E.O., submitted an application to establish a St. Luke School of Medicine in Cape Coast, Ghana in November 1998. SLSOM was granted Interim Authority in January 1999 to establish the school, under these conditions:

> *The School can only advertise for students after the National Accreditation Board has given it explicit permission to do so after due consideration of reports submitted to the National Accreditation Board by appropriate panels appointed by NAB to assess the physical, financial, human and other relevant resources for the proper operation of the proposed Medical School.*

Adjei Decl. at ¶ 3.

Disregarding the conditions of the Interim Authority, SLSOM advertised as having been established in 1998 and having been accredited in 1999, which was incorrect. Ghana NAB drew SLSOM's attention to this infraction in a 2001, but did not hear from SLSOM until 2004, only after SLSOM had applied for use of the Valley View University campus for their programmes, and Ghana NAB referred SLSOM to Ghana NAB's earlier 2001 letter. Adjei Decl. at ¶ 4.

3

1   Ghana NAB also learned that SLSOM had gotten listed by the World Health

2   Organization in its periodical *Towards Unity for Health* in 2000 and had

3   improperly begun issuing Doctor of Medicine degrees in 2001.  Adjei Decl. at ¶ 5.

4   On October 6, 2000, the Foundation for Advancement of International

5   Medical Education and Research ("FAIMER") of Philadelphia, wrote to the Ghana

6   Minister of Education, to enquire about the status of St. Luke School of Medicine

7   in Ghana.  FAIMER is a non-profit foundation of the Educational Commission for

8   Foreign Medical Graduates (ECFMG).  According to the letter:

9
10   *FAIMER has listed St. Luke School of Medicine at Cape Coast
     in the **International Medical Education Directory**, based on a*
11   *prior listing by the World Health Organization in their periodical*
     ***Towards Unity for Health*** *in October 2000.  The listing in stated*
12   *instruction had begun at the medical school in September 1999.*
     *ECFMG has received applications for examinations for students*
13   *from St. Luke School of Medicine, and also has received copies of*
     *Doctor of Medicine degrees issued from the medical school in*
14   *August 2001.  Recently, however, we have received information*
     *that St. Luke School of Medicine may not be registered or accredited*
15   *as a medical school on Ghana.*
16

17   Adjei Decl. at ¶ 6.

18   Following expiration of its Interim Authority, SLSOM reapplied in 2004.

19   An Interim Authority was again granted in 2005 for SLSOM to continue its

20   preparations for accreditation.  Adjei Decl. at ¶ 7.  Thereafter, SLSOM began

21   submitting information to Ghana NAB (like proposed arrangements for affiliation

22   between SLSOM and clinical centers) but the information was only part of that

23   required for accreditation.  Id. at ¶ 8.  An application for accreditation was finally

24   submitted by SLSOM in late 2007.  The Accreditation Panel concluded that: "On

25   the basis of the information provided … we do not think the St. Luke's School of

26   Medicine is ready for accreditation as a Medical School."  Id. at ¶ 9.

27   This conclusion was challenged by SLSOM, prompting the Accreditation

28   Committee to set up an ad hoc committee in March 2008 to review, which decision

4

1    was conveyed to SLSOM in May 2008.  SLSOM replied contending that it had met

2    all requirements.  The Accreditation Committee met with SLSOM in June 2008.

3    SLSOM was asked to provide further evidence: (1) documentary evidence of

4    affiliation with a recognized institution; (2) approval from the Ghana Medical and

5    Dental Council; and (3) documentary evidence of facilities where clinical and

6    practical work would be performed.  Adjei Decl. at ¶ 10.

7         Documentary evidence of affiliation with a recognized institution:  SLSOM

8    submitted a letter from the University of Science Arts & Technology, Montserrat

9    ("USAT"), British West Indies, with regard to SLSOM's application for affiliation.

10   Ghana NAB noted that this letter was non-committal, especially in the award of

11   degrees to graduates.  Ghana NAB also noted that SLSOM changed its name to "St

12   Luke University College of Medicine," a different name from that under which it

13   had been granted Interim Authorization and without notification to Ghana NAB.

14   Ghana NAB was concerned about this as the proprietors of the school had ignored

15   the conditions of Interim Authorization and improperly gotten listed by the WHO

16   as an 'accredited' school of medicine, training medical doctors in Ghana.  Ghana

17   NAB also learned that USAT had not been granted Provisional Accreditation status

18   by the Caribbean Accreditation Authority of Medicine.  Adjei Decl. at ¶ 11.

19        Approval from the Ghana Medical and Dental Council to recognize the

20   program:  No approval was obtained from the Medical and Dental Council.

21   SLSOM disputed that approval was necessary.  However, the Council is the

22   regulatory body that registers medical officers in Ghana.  Adjei Decl. at ¶ 12.

23        Documentary evidence of facilities for clinical work:  SLSOM indicated that

24   the Ghana Health Service was willing to put hospital facilities at the school's

25   disposal for clinicals.  However, the subject hospitals were overstretched and could

26   not support the training of medical officers, or the hospitals were non-committal.

27   Further, teaching hospitals for clinicals have to be approved by the Medical and

28   Dental Council, and there was no such approval.  Adjei Decl. at ¶ 13.

5

During its investigation of St. Luke School of Medicine, Ghana NAB also received notifications from the Oregon Student Assistance Commission Office of Degree Authorization and the University of Illinois College of Medicine about the allegedly illegitimate status of the school.  Adjei Decl. at ¶ 17.

Before Ghana NAB could consider SLSOM's appeal, on October 27, 2008, SLSOM filed a lawsuit against Ghana NAB before the Ghana High Court (local trial court), which is pending.  The case is entitled:  <u>In the Matter of an Application by St. Luke School of Medicine Ghana Limited for Accreditation by the Ghana National Accreditation Board and In the Matter of the Application by St. Luke School of Medicine Ghana Limited for Judicial Review, Etc.</u>, in the Superior Court of Judicature, High Court of Justice, Accra – A.D. 2008, case no. AP 12/2009 (the "Ghana Action").  Adjei Decl. at ¶ 15; Gaisie Decl. at ¶ 4.

The Ghana Action is a petition for mandamus against Ghana NAB seeking to order it to grant accreditation to SLSOM.  Attached as Exhibit A to the Gaisie Decl. is a copy of the Notice of Motion and supporting Affidavit filed by the Applicant, SLSOM in the Ghana Action.  Attached as Exhibit B is a copy of the Written Statement of the case filed by SLSOM.  And, attached as Exhibit C is a copy of the Affidavit in Opposition filed by the Respondent, Ghana NAB.  These pleadings describe the parties' contentions. Gaisie Decl. at ¶ 5.

On October 19, 2009, the Ghana High Court Judge ruled in favor of SLSOM in the Ghana Action, holding that the Ghana NAB should have accredited the school for the training of medical practitioners.  Gaisie Decl. at ¶ 6 and Exhibit D (attaching a copy of the trial court Ruling in the Ghana Action).

Ghana NAB has appealed the Ruling to the Ghana Court of Appeals.  Gaisie Decl. at ¶ 7.  The grounds for the appeal are:  (a) The trial court judgment is against the weight of evidence.  (b) The Judge erred in holding that Ghana NAB had divested itself of decision-making authority by requesting approval by the Ghana Medical and Dental Council.  (c) The Judge erred in holding that there was

1  unreasonable delay by Ghana NAB which necessitated mandamus.  (d) The Judge

2  erred in ruling that SLSOM satisfied all statutory requirements for accreditation.

3  (e) The Judge erred in holding that SLSOM has been "refused" accreditation.

4  Gaisie Decl. at ¶ 8 and Exhibit E (attaching a copy of the Notice of Appeal filed by

5  Ghana NAB in the Ghana Action).  The position of Ghana NAB is that SLSOM

6  has not been refused accreditation.  Rather, SLSOM that has not satisfied the

7  requirements for accreditation as directed by the Ghana NAB, which required

8  SLSOM to provide certain evidence to Ghana NAB.  Id. at ¶ 9.

9         On March 9, 2012, Ghana NAB filed a motion to stay execution of the

10  Ghana High Court's Ruling.  The Ghana Court of Appeal granted the stay on

11  March 24, 2010.  The appeal is pending.  Gaisie Decl. at ¶ 10.

12         There are pending legal proceedings in Ghana between SLSOM and Ghana

13  NAB which will resolve whether SLSOM was entitled to accreditation in Ghana.

14  Gaisie Decl. at ¶ 12.  Ghana NAB has not granted accreditation because, in its

15  judgment, SLSOM has not satisfied the requirements for accreditation.  Adjei

16  Decl. at ¶ 20.  Ghana NAB is a public institution that has responsibility to maintain

17  standards in the medical profession and protect the public interest.  Id. at ¶ 21.  The

18  Republic of Ghana has a strong interest in seeing that these matters are resolved

19  and adjudicated in Ghana.  Id. at ¶ 22.  Plaintiffs' claims are based on Ghana

20  NAB's use, in the Ghana lawsuit, of letters that relate to whether SLSOM was

21  worthy of accreditation.  Plaintiffs' claims are intertwined, then, with the Ghana

22  judicial proceedings which Plaintiffs filed first in Ghana.

### III.  ARGUMENT

24         Pursuant to F. R. Civ. P. 12(b)(1) and 12(b)(2), and the Court's inherent

25  powers, the Ghana NAB moves to dismiss the FAC, on these grounds:

### a.  THERE IS A LACK OF SUBJECT MATTER JURISDICTION.

27         The Foreign Sovereign Immunities Act, 28 U.S.C. §§1602 et seq. ("FSIA")

28  is the "sole basis for obtaining jurisdiction over a foreign state" in United States

7

1   courts.  <u>Argentine Republic v. Amerada Hess Shipping Corp.</u>, 488 U.S. 428, 434

2   (1989).  Under the FSIA, a foreign state enjoys full immunity from suit and courts

3   lack subject matter jurisdiction over a claim against the state unless an exception to

4   sovereign immunity applies.  <u>Id.</u>; <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 355

5   (1993); <u>Cassirer v. Kingdom of Spain</u>, 580 F.3d 1048, 1055 (9th Cir. 2009) (rev'd

6   on other grounds en banc, 616 F.3d 1019 (9th Cir. 2010).

7              **i.   LEGAL STANDARD UNDER FSIA.**

8        The FSIA "establishes a comprehensive framework for determining whether

9   a court in this country, state or federal, may exercise jurisdiction over a foreign

10  state." <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S. 607, 610 (1992).  The

11  FSIA "creates a 'statutory presumption that a foreign state is immune from suit.'"

12  <u>Peterson v. Islamic Republic of Iran</u>, 627 F.3d 1117, 1124-1125 (9th Cir. 2010).

13  "Once the court has determined that the defendant is a foreign state, 'the burden of

14  production shifts to the plaintiff to offer evidence that an exception applies.'"  <u>Id.</u>

15       "This burden-shifting scheme, which puts most of the weight on the

16  plaintiff, is partly motivated by the fact that federal jurisdiction does not exist

17  unless one of the exceptions to immunity from suit applies." <u>Peterson</u>, 627 F.3d at

18  1125.  Indeed, a motion to dismiss under the FSIA is fact-based, and allegations in

19  the complaint are not assumed to be true.  <u>Doe v. Holy See</u>, 557 F.3d 1066, 1073 n.

20  9 (9th Cir. 2009) ("no presumptive truthfulness attaches to plaintiff's allegations").

21  Plaintiff must overcome the presumption of immunity by "going forward with the

22  evidence by offering proof that one of the FSIA exemptions applies." <u>Siderman de</u>

23  <u>Blake v. Republic of Argentina</u>, 965 F.2d 699, 708 (9th Cir. 2002).

24             **ii.   GHANA NAB HAS FOREIGN SOVEREIGN IMMUNITY.**

25       Ghana NAB is entitled to sovereign immunity because it is an agency or

26  instrumentality of a foreign state.  The FSIA defines an "agency or instrumentality

27  of a foreign state" as any entity:  "(l) which is a separate legal person, corporate or

28  otherwise, and (2) which is an organ of a foreign state or political subdivision

                              8

1   thereof, or a majority of whose shares or other ownership interest is owned by a

2   foreign state or political subdivision thereof, and (3) which is neither a citizen of a

3   State of the United States as defined in section 1332(c) and (e) of this title, nor

4   created under the laws of any third country." 28 U.S.C. § 1603(b).

5          Ghana NAB meets the first and third prongs of Section 1603(b), since it is a

6   separate legal person and is not a citizen of the United States or created under laws

7   of a third country. Ghana NAB is an instrumentality of the Republic of Ghana

8   created by operation of law on 20th August 2007, by the National Accreditation

9   Board Act, 2007, Act 744. Adjei Decl. at ¶ 2; Gaisie Decl. at ¶ 2. Ghana NAB

10  also meets the requirements of the second prong of Section 1603(b), in two

11  different ways. Ghana NAB is a political subdivision of the Republic of Ghana for

12  it was created by operation of law through a legal decree. In the alternative, Ghana

13  NAB also may be considered to be an organ of the Republic of Ghana.

14         "An entity is an organ of a foreign state … if it 'engages in a public activity

15  on behalf of the foreign government.'" <u>Cal. Dept. of Water Res. v. Powerex Corp.</u>,

16  533 F.3d 1087, 1098 (9th Cir. 2008). Courts examine "circumstances surrounding

17  the entity's creation, the purpose of its activities, its independence from the

18  government, the level of government financial support, its employment policies,

19  and its obligations and privileges under state law." <u>Id.</u> "Consistent with

20  Congress's intent, this court defines 'organ' 'broadly,' mindful that 'agency or

21  instrumentality of a foreign state could assume a variety of forms ...'" <u>Id.</u>

22         Ghana NAB is and organ of the Republic of Ghana because it is a public

23  institution empowered by the Republic to evaluate whether medical schools may

24  receive accreditation to operate in Ghana. The functions of Ghana NAB are

25  governmental in nature. Ghana NAB is charged with responsibility to protect the

26  public and ensure that graduates of medical schools in Ghana are qualified to

27  practice the profession. Adjei Declaration at ¶ 2; Gaisie Decl. at ¶ 2. Ghana NAB

28  invokes its foreign sovereign immunity in this action.

9

### iii.   NONE OF THE FSIA EXCEPTIONS APPLY.

No FSIA exception applies here.  FSIA exceptions are narrowly construed.  Sec. Pac. Nat. Bank v. Derderian, 872 F.2d 281, 285 (9th Cir. 1989) (commercial activity exception "is given a very restrictive interpretation"); Af-Cap, Inc. v. Chevron Overseas Ltd., 475 F.3d 1080, 1087 (9th Cir. 2007) (waiver exception interpreted narrowly); Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 19 (D.D.C. 2003) (same as to tort exception).  Immunity is "the general rule and must be adhered to by the court unless it is clearly shown that an exception applies."  Bahsoon v. Pezetel, Ltd., 768 F. Supp. 507, 510 (E.D.N.C. 1991); Gibbons v. Rep. of Ireland, 532 F. Supp. 668, 671 (D.D.C. 1982).

### 1.   WAIVER EXCEPTION DOES NOT APPLY.

Section 1605(a)(1) of the FSIA sets forth the "waiver" exception:  "(a) A foreign state shall not be immune from the jurisdiction of courts of the United States … (1) in which the foreign state has waived its immunity …"

There must be "strong evidence," Foremost-McKesson, Inc. v. Islamic Rep. of Iran, 905 F.2d 438, 444 (D.C. Cir. 1990), that a state "actually intended" to waive immunity, Strategic Tech. PTE v. Republic of China, 2007 WL 1378492 at *2 (D.D.C. 2007).  Ghana NAB has not expressly waived its immunity because it has invoked it in this action.  Amorrortu v. Republic of Peru, 570 F. Supp. 2d 916, 921 (S.D. Tex. 2008) (state did not waive sovereign immunity, since "it has explicitly objected to the Court's jurisdiction in every filing it has made to date").

Further, "[i]mplicit waivers are ordinarily found" only where "(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity."  Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect, 89 F.3d 650, 655 (9th Cir. 1996).  None of these three situations apply here, so there also has been no implied waiver of immunity.

## 2.  TORT EXCEPTION DOES NOT APPLY.

Section 1605(a)(5) of the FSIA sets forth the "tort" exception:  "(a) A foreign state shall not be immune from the jurisdiction of courts of the United States … (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States …"

Section 1605(a)(5) is "limited" to "cases in which the damage or loss of property occurs in the United States." <u>Amerada Hess</u>, 488 U.S. at 439.  "The noncommercial tort exception applies only where both the tort and injury take place within the territorial jurisdiction of the United States."  <u>Id.</u>, at 440-441.

Plaintiffs allege that Ghana NAB received letters from the University of Illinois-Urbana Champaign and State of Oregon Office of Degree Authorization, which contained defamatory statements about them and their school, mainly that the school should not be accredited.  (FAC at ¶¶ 2; 282; 287, and Exhibits 50, 51.)  Plaintiffs claim that Ghana NAB committed torts when it forwarded these letters to the Ghana Attorney-General and Ghana High Court in connection with the Ghana lawsuit.  (FAC at ¶ 290 and Exhibit 47.)  The tortious activity by Ghana NAB is alleged to have taken place in Ghana.  As such, the tort exception does not apply.

## 3.  COMMERCIAL ACTIVITY EXCEPTION DOES NOT APPLY.

Section 1605(a)(2) of the FSIA sets forth the "commercial activity" exception:  "(a) A foreign state shall not be immune from the jurisdiction of courts of the United States … (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

11

### a. NO COMMERCIAL ACTIVITY BY GHANA NAB.

A "state engages in commercial activity … where it exercises only those powers that can only be exercised by private citizens, as district from those powers peculiar to sovereigns." Nelson, 507 U.S. at 360.  "[T]he activity must be of the type in which private individuals engage; if the activities in question are not private, but sovereign in nature, then the commercial activity exception will not apply."  O'Bryan v. Holy See, 556 F.3d 361, 379 (6th Cir. 2009).

Here, Plaintiffs claim that SLSOM was improperly denied accreditation by Ghana NAB.  Plaintiffs claim that it was tortious for Ghana NAB to submit letters critical of the school in connection with the Ghana Action, the subject of which was accreditation in Ghana.  As such, the claims relate to actions taken by Ghana NAB as a state actor, and that relate to its accreditation position regarding SLSOM and its defense of that position in litigation initiated by SLSOM against Ghana NAB in the Ghana courts, which is still pending.  The acts of Ghana NAB, therefore, are not commercial activity.

Precisely, in City School of Detroit v. Government of France, 1990 U.S. Dist. LEXIS 19577 (E.D. Mich. 1990), the court held the commercial activity exception did not apply for "granting of accreditation to a private school by a foreign government is by its very nature a sovereign function, incapable of being performed by a private individual … the welfare and education of its citizenry is … an area where sovereign activity is typically asserted."  Id. at **9-10.

Because the claims are not based upon any commercial activity by Ghana NAB, the commercial activity exception (and each of its three clauses – each of which require commercial activity) clearly cannot apply to Ghana NAB.

### b. NO COMMERCIAL ACTIVITY IN THE U.S.

"The first clause of section 1605(a)(2) of the [FSIA] provides that a foreign state shall not be immune from the jurisdiction of United States courts in any cause 'in which the action is based upon a commercial activity carried on in the United

12

States by the foreign state.'" Nelson, 507 U.S. at 356.  "The Act defines such activity as commercial activity carried on by such state."  Id.  Plaintiff's claim must "arise[] from" the defendant's "commercial activity in the United States." Gould, Inc. v. Mitsui Mining & Smelting Co., 947 F.2d 218, 221 (6th Cir. 1991). Plaintiffs do not allege that Ghana NAB has engaged in any commercial activity in the U.S.; thus, the first clause cannot apply.

### c.  NO ACT BY GHANA NAB IN THE U.S.

"The second [clause] of the commercial activity exception applies if the plaintiff's action is 'based … upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere.'  28 U.S.C. § 1605(a)(2).  This clause "is generally understood to apply to non-commercial acts in the United States that relate to commercial acts abroad."  Kensington Int'l ltd. v. Itoua, 505 F.3d 147, 157 (2d Cir. 2007) (quotations omitted).

This clause does not apply because no "commercial activity" in the U.S. is attributed to Ghana NAB by Plaintiffs.  Plaintiffs allege no acts of Ghana NAB in the United States upon which their claims are based.  Rather, Plaintiffs complain that Ghana NAB presented as evidence in Ghana court proceedings letters that it received from American institutions.  It is the activity in Ghana, not in the United States, that is the basis of the Plaintiff's claims.  Nelson, 507 U.S. at 358-359 (held that although Nelson was recruited in the U.S. to work at a Saudi hospital, the facts that gave rise to the claims (Nelson's torture by officials in Saudi Arabia), did not occur in the U.S. and, hence, the commercial activity exception did not apply).

### d.  NO DIRECT EFFECT IN THE U.S.

The third clause of Section 1605(a)(2) applies when the claim is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2). The third clause also does not apply because there is no "direct effect" in the United States.

13

The fact that Plaintiffs may be Americans does not create a sufficient nexus to the United States for purposes of the FSIA.  If "loss to an American individual … resulting from a foreign tort were sufficient standing alone to satisfy the direct effect requirement, the commercial activity exception would in large part eviscerate the FSIA's provision of immunity for foreign states."  Antares Aircraft L.P. v. Fed. Republic of Nigeria, 999 F.2d 33, 36 (2d Cir. 1993); Australian Gov't Aircraft Factories v. Lynne, 743 F.2d 672, 673-676 (9th Cir. 1984).

Further, the third clause "requires a nexus between the activity of the foreign sovereign and the plaintiff's cause of action" in the nature of minimum contacts. Corzo v. Banco Cent. de Reserva del Peru, 243 F.3d 519, 525-526 (9th Cir. 2001). The allegedly tortious conduct by Ghana NAB occurred in Ghana.  The submission of the letters to courts in Ghana does not establish minimum contacts with the U.S.

For these reasons, the commercial activities exception does not apply.  The FAC against Ghana NAB must be dismissed for lack of subject matter jurisdiction.

### b.  THERE IS A LACK OF PERSONAL JURISDICTION.

In the Ninth Circuit, the Due Process prong of the personal jurisdiction analysis under International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), applies to foreign states and their instrumentalities.  The FSIA acts as a federal long-arm statute under the first prong of the personal jurisdiction analysis, but the second prong (Due Process) also must be satisfied.  Theo H. Davies & Co., Ltd. v. Rep. of Marshall Islands, 174 F.3d 969, 974 (9th Cir. 1999); Siderman de Blake, 965 F.2d at 705 n. 4 (exercise of personal jurisdiction under FSIA "must comport with the constitutional requirement of due process"); Gregorian v. Izvestia, 871 F.2d 1515, 1529 (9th Cir. 1989) (same); A.R. Int'l Anti-Fraud Sys. Inc. v. Pretoria Nat'l Cent., 634 F. Supp. 2d 1108, 1117 n. 5 (E.D. Cal. 2009) (same).

First, there is no general personal jurisdiction over Ghana NAB.  "A defendant is subject to general jurisdiction only where the defendant's contacts with a forum are substantial or continuous and systematic."  Easter v. Am. Western

Fin., 381 F.3d 948, 960 (9th Cir. 2004).  This standard "is fairly high" and approximates "physical presence."  Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).  Even "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders."  Id. at 1086.  There is no general jurisdiction over Ghana NAB because it has no employees, offices or accounts in the United States, including in California.  Ghana NAB conducts no business in the United States, including in California.  Adjei Decl. at ¶ 23.

Second, there is also no specific personal jurisdiction.  The factors relevant to this analysis are:  "(1) the extent of the defendant's purposeful interjection into the forum state ...; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."  Theo H. Davies, 174 F.3d at 975.  These factors support finding a lack of specific personal jurisdiction over Ghana NAB.  Ghana NAB conducts no business in the United States, including California, so it has not interjected itself into this forum.  It would be unduly burdensome, and would result in undue and great expense, for Ghana NAB to have to defend this action in the United States.  SLSOM applied for establishment of a medical school in Ghana, and it would be subject to Ghana law and regulations, not to the laws or regulations of the United States or California.  Adjei Decl. at ¶ 23.  The Republic of Ghana has a strong interest in seeing that these matters are resolved by the courts in Ghana, because the dispute between SLSOM and Ghana NAB involves an important state interest of the Republic; that is, protection of the public and ensuring that graduates of medical schools in Ghana are qualified to practice the profession.  Gaisie Decl. at ¶ 13.  And, the Ghana courts are clearly available.  Plaintiffs filed a prior, pending action in Ghana.

15

In sum, there is no basis for Ghana NAB to have reasonably concluded that it would be hauled into court in California.  As are result, under <u>International Shoe</u>, there is a lack of personal jurisdiction over Ghana NAB.

### c.  THE ACT OF STATE DOCTRINE APPLIES.

The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." <u>Banco Nacional de Cuba v. Sabbatino</u>, 376 U.S. 398, 401 (1964); <u>Provincial Gov't of Marinduque v. Placer Dome, Inc.</u>, 582 F.3d 1083,1088 (9th Cir. 2009) ("A long-standing common law principle, the act of state doctrine precludes courts from evaluating the validity of actions that a foreign government has taken within its own borders").

In <u>Bokkelen v. Grumman Aerospace Corp.</u>, 432 F. Supp. 329  (E.D.N.Y. 1977), the court held:  "In our case the decision of the Brazilian government to deny import licenses is within the powers normally exercised by a sovereign. The control of foreign trade, like the expropriation of oil wells, involves a decision of a government acting within its own territory.  As such the decision here was of type covered by the act of state doctrine." <u>Id.</u>, at 333.

The decision of Ghana NAB with respect to accreditation of SLSOM is a governmental function and an act of state.  Ghana NAB is an instrumentality of the Republic of Ghana created by law.  As explained in the Declaration of Mr. Adjei, Ghana NAB is a public institution empowered by the Republic of Ghana to evaluate whether medical schools may receive accreditation to operate within Ghana.  The functions of Ghana NAB are, therefore, governmental in nature. Gaisie Decl. at ¶ 2.  The claims in this lawsuit are intertwined with the governmental functions of Ghana NAB.  The FAC is based, precisely, on the submittal of evidence by Ghana NAB in the Ghana Action related to the issue of accreditation of SLSOM.  As such, even if it had jurisdiction (which it does not), this Court should abstain in this action based on the act of state doctrine.

### d.  INCONVENIENT FORUM DISMISSAL IS APPROPRIATE.

The FAC should be dismissed based on the forum non conveniens doctrine.

A party seeking dismissal of an action on <u>forum non conveniens</u> grounds "must show two things: (1) the existence of an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal."  <u>Loya v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 583 F.3d 656, 664 (9th Cir. 2009).

### i.  GHANA IS AN ADEQUATE ALTERNATIVE FORUM.

An "alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum."  <u>Lueck v. Sundstrand Corp.</u>, 236 F.3d 1137, 1143  (9th Cir. 2001).  Ghana NAB is amenable to service of process in Ghana, and there is a prior action pending there against it.  The judicial forum in Ghana is obviously available and has jurisdiction over the parties.

Further, the Republic of Ghana has been deemed an "adequate alternative forum" by previous courts.  <u>See</u> <u>Agyenkwa v. Am. Motors Corp.</u>, 622 F. Supp. 242, 245-246 (E.D.N.Y. 1985) ("the courts of Ghana provide an adequate alternative forum for this litigation"); <u>Brennen v. Phyto-Riker Pharm., Ltd.</u>, 2002 WL 1349742 at *2-5 (S.D.N.Y. 2002).  Indeed, Ghana's Constitution establishes a system similar to the U.S., with three branches of government.  The judiciary is independent, and Plaintiffs can receive a just adjudication of their claims in Ghana. As noted, the trial court ruled in favor of SLSOM in the Ghana Action.  While Ghana NAB disputes the correctness of that ruling, the fact that the ruling was in favor of SLSOM shows that the courts will not favor a government party over a private party.  Gaisie Decl. at ¶ 17.

### ii.  PUBLIC INTEREST FACTORS FAVOR DISMISSAL.

The public interest factors to be considered include:  "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum."  <u>Lueck</u>, 236 F.3d at 1147.

17

1        The public interest factors weigh in favor of the Ghana forum.  The Republic

2    of Ghana and Ghana NAB have a strong interest in seeing that these matters are

3    resolved by the courts in Ghana, because the dispute between SLSOM and Ghana

4    NAB involves an important state interest of the Republic; that is, protection of the

5    public and to ensure that graduates of medical schools in Ghana are duly qualified

6    to practice the profession.  Gaisie Decl. at ¶ 2.

7            **iii.    PRIVATE INTEREST FACTORS FAVOR DISMISSAL.**

8        The private interest factors to be considered include:  "(1) the residence of

9    the parties and the witnesses; (2) the forum's convenience to the litigants; (3)

10   access to physical evidence and other sources of proof; (4) whether unwilling

11   witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6)

12   enforceability of the judgment; and (7) all other practical problems that make trial

13   of a case easy, expeditious and inexpensive."  <u>Lueck</u>, 236 F.3d at 1145.

14       The private interest factors also favor dismissal.  It would be unduly

15   burdensome, and would result in undue and great expense, for Ghana NAB to have

16   to defend this action in the U.S.  SLSOM applied for establishment of a medical

17   school in Ghana, and it would be subject to Ghana law and regulations, not the

18   laws or regulations of the U.S. or California.  This matter is governed by Ghana

19   law.  The relevant witnesses and information is located primarily in Ghana.  If this

20   case was to proceed in the U.S., it may also be impossible to subpoena witnesses in

21   Ghana for examination in U.S. courts.  The fact that SLSOM filed a prior-pending

22   action in Ghana also favors the Ghana forum.  Gaisie Decl. at ¶ 15.

23       Based on the foregoing, the FAC should be dismissed based on inconvenient

24   forum grounds.  Plaintiff should assert their claims in Ghana, as they can do.

25           **e.  DISMISSAL ON COMITY GROUNDS IS APPROPRIATE.**

26       International comity is the "recognition which one nation allows within its

27   territory to the legislative, executive or judicial acts of another nation, having due

28   regard both to international duty and convenience, and to the rights of its own

1   citizens or other persons who are under the protection of its laws." <u>Hilton v.</u>

2   <u>Guyot</u>, 159 U.S. 113, 164 (1895).   Courts defer to the interests of another country

3   and decline to exercise jurisdiction.  <u>Societe Nationale Industrielle Aerospatiale v.</u>

4   <u>U.S. Dist. Ct.</u>, 482 U.S. 522, 544 n. 27 (1987).  "[C]ourts in this country have long

5   recognized the principles of international comity and have advocated them in order

6   to promote cooperation and reciprocity with foreign lands."  <u>Pravin Assoc., Ltd. v.</u>

7   <u>Banco Popular</u>, 109 F.3d 850, 854 (2d Cir. 1997).  "International comity is clearly

8   concerned with maintaining amicable working relationships between nations."  <u>JP</u>

9   <u>Morgan etc. v. Altos Hornos de Mexico</u>, 412 F.3d 418, 422 (2d Cir. 2005).

10          The Republic of Ghana has a strong interest in the regulation of medical

11   schools operating in Ghana and, thus, in the subject matter of the dispute in this

12   action.  California has no interest in this dispute.  Plaintiffs complain of acts by

13   Ghana NAB that occurred in Ghana.  Even if this Court had subject matter and

14   personal jurisdiction, it should abstain and dismiss the case based on international

15   comity principles, particularly since there is a prior pending action in Ghana.

16          **f.   THE FAC IS BARRED BY THE LITIGATION PRIVILEGE.**

17          Pursuant to F. R. Civ. P. 12(b)(6), Ghana NAB also moves to dismiss the

18   FAC for failure to state a claim.  The FAC against Ghana NAB is barred by the

19   litigation privilege, Cal. Civ. Code § 47.

20          <u>E. & J. Gallo Winery v. Andina Licores S.A.</u>, 2006 WL 1817097 (E.D. Cal.

21   2006), is on point.  Cal. Civ. Code § 47 establishes the "litigation privilege."  It

22   "precludes liability for communications made in any proceeding of a legislative,

23   judicial, or official nature, and in proceedings where a writ of mandate is sought."

24   <u>Id.</u> at *4.  In <u>E. & J. Gallo Winery</u>, the court held that the litigation privilege

25   applied to bar a claim brought pursuant to actions undertaken by the defendant

26   within an action it had filed in Ecuador against the plaintiff.  The court held that

27   the litigation privilege applies to foreign actions.  <u>Id.</u> at *4-10 (citing <u>Beroiz v.</u>

28   <u>Wahl</u>, 84 Cal. App. 4th 485, 100 Cal. Rptr. 2d 905 (2001)).

1    Plaintiff's complaint against Ghana NAB is based on actions that Ghana

2  NAB took within a judicial proceeding in Ghana.  Again, Plaintiffs allege that

3  Ghana NAB received letters from the University of Illinois-Urbana Champaign

4  and State of Oregon Office of Degree Authorization.  (FAC at ¶¶ 2; 282; 287.)

5  Plaintiffs allege that the letters contained defamatory statements about them and

6  their medical school (FAC at ¶ 287), that Ghana NAB should not accredit the St.

7  Luke School of Medicine.  (FAC at Exhibits 50, 51.)  Plaintiffs' complaint against

8  Ghana NAB is based on the fact that Ghana NAB filed these letters in connection

9  with the pending Ghana Action.  (FAC at ¶¶ 290-295 and Exhibit 47.)

10    Because the litigation privilege applies to foreign actions, the FAC fails to

11  state a claim against Ghana NAB, and amendment should be denied because it

12  would be futile.  The FAC should be dismissed with prejudice at to Ghana NAB,

13  and the Court may do so without first having to decide the foreign sovereign

14  immunity defense.  <u>Sea Search Armada v. Republic of Colombia</u>, 821 F. Supp. 2d

15  268, 272 (D.D.C. 2011) (court dismissed action with prejudice for failure to state a

16  claim, noting that "it need not wade into the trickier waters of immunity" because

17  the statute of limitations issue raised in the motion to dismiss plainly supported the

18  defendant).  Here too, Section 47 clearly bars the FAC as to Ghana NAB.

## IV.  CONCLUSION

20    For the foregoing reasons, the Ghana National Accreditation Board requests

21  that the Court grant this motion and dismiss the Plaintiff's FAC.

22                    Respectfully submitted,

23  DATED: June 11, 2012.          DORSEY & WHITNEY LLP

25                    BY:/s/ Juan C. Basombrio
                     JUAN C. BASOMBRIO
26                    Attorneys for Defendant National
                     Accreditation Board of the Republic of
                     Ghana

1

## <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that a true and correct copy of the foregoing document was

3 served on counsel of record via ECF Notice of Electronic Filing in accordance with

4 the Federal Rules of Civil Procedure and Local Rule 5-3.3

5

6                              <u>/s/ Juan C. Basombrio</u>
                                Juan C. Basombrio

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CASE NO. CV:11-06322-RGK(SHx)