Larry Walls, SBN 64696
Attorney at Law
3250 Wilshire Blvd, Suite 708
Los Angeles, CA 90010
Telephone:(213) 480-6220
Facsimile: (213) 480-6225
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST. LUKE SCHOOL OF MEDICINE-GHANA, et al, <br><br> Plaintiff, <br><br> vs. <br><br> REPUBLIC OF LIBERIA, et al, <br><br> Defendant | Case No.: 11-CV-06322- RGK (SHx) <br><br> PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT NATIONAL ACCREDITATION BOARD'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(2)&(6) <br><br> DATE: AUGUST 23, 2012 <br> TIME: 9:00 AM <br> CRT: 850 <br> JUDGE: Honorable R. Gary Klausner |

## Table of Contents

Cases........................................................3

STATUTES.....................................................5

OTHER AUTHORITIES............................................5

List of Exhibits............................................5

I. INTRODUCTION.............................................7

  a. THERE IS SUBJECT MATTER JURISDICTION....................7

II. FACTUAL BACKGROUND.....................................10

III. ARGUMENT................................................14

a. THERE IS SUBJECT MATTER JURISDICTION......................14

i. LEGAL EXCEPTIONS TO FSIA.................................15

ii. GHANA NAB DOES NOT HAVE FOREIGN SOVEREIGN IMMUNITY.......17

iii. FSIA EXCEPTIONS APPLY...................................18

1. WAIVER EXCEPTION DOES NOT APPLY..........................18

2. TORT EXCEPTION DOES APPLY................................18

3. COMMERCIAL ACTIVITY EXCEPTION DOES APPLY.................19

Cause of action under customary international law...........20

Tort of Outrage/Infliction of Emotional Distress...........21

a. COMMERCIAL ACTIVITY BY GHANA NAB........................22

b. COMMERCIAL ACTIVITY IN THE U.S..........................24

c. ACTS BY GHANA NAB IN THE U.S...........................24

d. DIRECT EFFECT IN THE U.S................................25

b. THERE IS PERSONAL JURISDICTION..........................26

c. THE ACT OF STATE DOCTRINE DOES NOT APPLY.................26

d. INCONVENIENT FORUM DISMISSAL IS NOT APPROPRIATE..........27

i. GHANA IS NOT AN ADEQUATE ALTERNATIVE FORUM...............28

ii. PUBLIC INTEREST FACTORS DO NOT FAVOR DISMISSAL..........28

iii. PRIVATE INTEREST FACTORS DO NOT FAVOR DISMISSAL........29

e. DISMISSAL ON COMITY GROUNDS IS NOT APPROPRIATE...........30

f. THE FAC IS NOT BARRED BY THE LITIGATION PRIVILEGE........30

IV. CONCLUSION.............................................31

1
2
3

# Cases

Af-Cap, Inc. v. Chevron Overseas Ltd., 475 F.3d 1080 (9th Cir. 2007) …..................... 18

Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428 (1989) …......... 13, 18

Bahsoon v. Pezetel, Ltd., 768 F. Supp. 507 (E.D.N.C. 1991) …...................................... 17

Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 (1964)  …...................................... 26

Bokkelen v. Grumman Aerospace Corp., 432 F. Supp. 329 (E.D.N.Y. 1977) …........... 26

Burnett v. Al Baraka Invest. & Dev. Corp., 292 F. Supp. 2d 9 (D.D.C. 2003)  …........... 17

Cal. Dept. of Water Res. v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008) …............... 16

Cassirer v. Kingdom of Spain, 580 F.3d 1048 (9th Cir. 2009) (rev'd on other grounds en

banc, 616 F.3d 1019 (9th Cir. 2010)  …........................................................................... 14

City School of Detroit v. Government of France, 1990 U.S. Dist. LEXIS 19577 (E.D.

Mich. 1990) …................................................................................................ 22

Corzo v. Banco Cent. de Reserva del Peru, 243 F.3d 519 (9th Cir. 2001)  …................. 24

Foremost-McKesson, Inc. v. Islamic Rep. of Iran, 905 F.2d 438 (D.C. Cir. 1990) .. 19, 20

Gibbons v. Rep. of Ireland, 532 F. Supp. 668 (D.D.C. 1982) …...................................... 17

Gould, Inc. v. Mitsui Mining & Smelting Co., 947 F.2d 218 (6th Cir. 1991) …............. 23

Kensington Int'l ltd. v. Itoua, 505 F.3d 147 (2d Cir. 2007)  …........................................ 23

Loya v. Starwood Hotels & Resorts Worldwide, Inc., 583 F.3d 656 (9th Cir. 2009)  .. 27

Lueck v. Sundstrand Corp., 236 F.3d 1137 (9th Cir. 2001)  …................................... 27, 28

O'Bryan v. Holy See, 556 F.3d 361, 379 (6th Cir. 2009)  …........................................... 21

Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083,1088 (9th Cir.

2009)  …............................................................................................................. 26

Republic of Argentina v. Weltover, Inc., 504 U.S. 607 (1992) …................................... 14

Saudi Arabia v. Nelson, 507 U.S. 349 (1993)  …............................................... 14, 21, 23

Sec. Pac. Nat. Bank v. Derderian, 872 F.2d 281 (9th Cir. 1989)  …................................ 17

# STATUTES

28 U.S.C. § 1603(b)

28 U.S.C. § 1605(a)(2)

Cal. Civ. Code § 47

Foreign Sovereign Immunities Act, 28 U.S.C. §§1602 et seq. ("FSIA")  passim

28 USC § 1350 - ALIEN'S ACTION FOR TORT

# OTHER AUTHORITIES

F. R. Civ. P. 12(b)(1)

F. R. Civ. P. 12(b)(2)

F. R. Civ. P. 12(b)(6)

# List of Exhibits

| Exhibit No. | Title |
|---|---|
| A | First 5 Pages of Gollin's 91-paged document |
| B | Ministry of Foreign Affair Letter Dated November 20, 2009 (faxed copy) |
| C | Ministry of Foreign Affair Letter Dated November 20, 2009 |
| D | Threatening Letter from Alan Contreras Dated October 30, 2009 (faxed copy) |
| E | Threatening Letter from Alan Contreras Dated October 30, 2009 |
| F | Threatening Letter from Brad Schwartz Dated November 16, 2009 |
| G | NAB False Report Table |

| | | |
|---|---|---|
| H | | SLSOM-MDC response |
| I | | THE_ROADMAP -2006 |
| J | | NATIONAL ACCREDITATION BOARD ACT 2007 |
| K | | Migration by Doctors |
| L | | Gollin's 91-paged document (entire, Obtained through dltruth.com) |
| M | | False Statements in Gollin's 91-paged document |

# I. INTRODUCTION

### a. THERE IS SUBJECT MATTER JURISDICTION

First, the FAC against Ghana NAB should stand because the Court has subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§1602 et seq. ("FSIA"). Additionally, SLSOM-Liberia, SLSOM-Ghana, and approximately one third of the Class are foreigners and are entitled to file suit under 28 USC § 1350 - ALIEN'S ACTION FOR TORT

Second, the FAC against Ghana NAB should stand because the court has personal jurisdiction over it. Ghana NAB does indeed have minimum contacts with California, and it would be reasonable to subject it to jurisdiction here. Opposite of what the Defendant claims, the claims against Ghana NAB have nothing to do with the NAB's lawful opposition to the accreditation of St. Luke School of Medicine-Ghana, an entity formed in Ghana.

    a.    Plaintiffs complain that Ghana NAB conspired with George Gollin, Schwartz and the University of Illinois-Urbana, and Alan Contreras and the Office of Degree Authorization, to publicly libel the Plaintiffs, each and all, and as a result of that conspiracy submitted in a Ghana lawsuit letters it solicited and received from the above Defendants stating that St. Luke School of Medicine-Ghana should not receive accreditation in Ghana. The submission of the documents in the Court of Appeal in Ghana was the go-ahead signal for Gollin to publish those documents on his University of Illinois-Urbana website, on degreediscussion.com, dltruth.com and other interactive websites.

    b.    The Plaintiffs assert that the NAB conspired with the other Defendants, supra, to Interfere with the Business advantage of SLSOM-Ghana so as to smear its reputation before the courts of Ghana and further delay its accreditation, and consequently punish the Plaintiffs economically. Defendant, NAB, knew the information contained in the documents it received from the other Defendants was

false and fabricated, inadmissible hearsay evidence from the Internet, which is not permitted in the Courts of Ghana, and that the documents and letters it received from Gollin, Schwartz, and Contreras had no facts or official documentation of any kind.

c.      The Plaintiffs also assert the the NAB conspired with the other Defendants, supra, to Intentionally and Negligently Inflict Emotional Distress on the Plaintiffs, each and all, to hurt and distress the Plaintiffs in order to subject Dr. Jerroll Dolphin and SLSOM-Ghana owners to give up their long quest for accreditation in Ghana.

Third, the FAC against the NAB should stand because the conspiracy undertaken by the NAB and the other Defendants, supra, to defeat the honest efforts of Plaintiffs, is not a function of the legal operation of a governmental agency, also neither by George Gollin, Schwartz, the University of Illinois-Urbana, Alan Contreras, nor the Office of Degree Authorization, each governmental employees or agencies.  The NAB officials were angry at SLSOM-Ghana and Dr. Jerroll Dolphin because they refused to tribute (bribes) to them, which will be apparent from the time-line of events.  The conspiracy between the Defendants did not occur only in Ghana. It was illegal, and it is not subject to immunity.

Fourth, the FAC against Ghana NAB should not be dismissed based on inconvenient forum grounds. It is a ridiculous claim of the Defendant.  The Plaintiffs never asked this honorable court to intervene on the pending appeal of the NAB in Ghana.  The Plaintiffs causes of action are for Libel, Interference With Business Advantage, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress.  These claims are based on the publication of the 91-paged document authored by George Gollin that was solicited by corrupt NAB officials.  The same 91-paged document was published by George Gollin on his University of Illinois-Urbana website, and was published at least on three other interactive websites.  The 91-paged document is virtually all hearsay, double hearsay, and factitious statements that are not

admissible in any court of law.  There is no intertwining of issues or claims between the Ghana lawsuit and this lawsuit.  In Ghana, it is the NAB appealing the decision in favor of SLSOM-Ghana.

Fifth, the FAC against Ghana NAB should not be dismissed based on international comity grounds. International comity is not applicable in this case.  As stated previously, the Plaintiffs are not asking this honorable court to review the decisions made in the High Court of Ghana (in SLSOM-Ghana's favor) nor in the appeal of that decision by the NAB.  This is an action based on conspiracy of the Defendants to defame the Plaintiffs, interfere with the business opportunities worldwide, including California, and inflict emotional and economic distress to the Plaintiffs.  The Plaintiffs are not asking this federal court to regulate the practice of medicine in Ghana, which is not germane to this lawsuit.  The NAB and the Ghana Medical and Dental Council, hereinafter "MDC", have known that SLSOM-Liberia position in Liberia was sustained by the the Supreme Court of Liberia, and had receive from Dr. Jerroll Dolphin pertinent documentation pertaining thereto.  It was unreasonable to consider that Gollin, Schwartz, and Contreras, who had never been to either Ghana nor Liberia, could have more information about the Plaintiffs, than the Plaintiffs themselves.

And sixth, the FAC against Ghana NAB is not barred by the litigation privilege, Cal. Civ. Code § 47.  CCP §§ 47c states " (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."  The 91-paged document does not fit the qualification for a communication "without malice", "innocent".  If the 91-paged document was requested by the NAB, it proves that the Defendants did, indeed, conspire against the Plaintiffs and purposefully committed the causes of actions, named, supra.   Next, CCP 47 (d-1), "(d) (1) By a fair and true report in, or a communication to, a public journal, of (A) a judicial, (B) legislative, or (C) other public official proceeding.  The 91-paged

document is virtually all falsehood, lies, and fabrications, and therefore does not fit the definition of a "fair and true report".. See Exhibits 43, 46, 49, 50, 51, 52, and 53 of the FAC. The Defendant has not submitted any evidence that the 91-paged document nor the letters of Brad Schwartz or Alan Contreras are true or fair and therefore their request for dismissal based on litigation privilege should be denied. Subsequently the 91-paged document does not qualify for litigation privilege. The claims made by the Plaintiffs are sufficient and true.

# II. FACTUAL BACKGROUND

Plaintiffs allege that between October 19, 2009 and October 30, 2001, the Ghana NAB solicited a 91-paged document from Defendant George Gollin, Professor of Physics at University of Illinois-Urbana Champaign, and solicited and received letters from Dr. Brad Schwartz, Dean of the University of Illinois-Urbana Champaign, and Alan Contreras, of the State of Oregon Office of Degree Authorization. (FAC at ¶¶ 2; 282; 287.) Plaintiffs attach copies of these letters to the FAC as Exhibits 46, 50 and 51. Plaintiffs allege that the 91-paged document authored by Gollin, and the letters authored by Schwartz and Contreras contained defamatory statements about Plaintiffs and their medical school (FAC at ¶ 287), and that the Defendant NAB, knew the statements were false. (FAC at Exhibits 50, 51.) Plaintiffs further allege that Ghana NAB forwarded these letters to the Ghana Attorney-General and/or the Ghana High Court in December 2009 in connection with a pending lawsuit in Ghana. (FAC at ¶¶ 290-295 and Exhibit 47.) Further alleged that the NAB, and George Gollin conspired to publish these documents and further embarrass the plaintiffs, particularly Dr. Jerroll Dolphin and his wife, Susanna, in the eyes of the public in Ghana and elsewhere. Plaintiffs sue Ghana NAB for: (1) "Conspiracy to Violate Civil Rights" (6th Cause of Action ("COA")); (2) "Libel" (7th COA); (3) "Trade Libel and Interference in Business Advantage" (13th COA); (4) "Intentional Infliction of Emotional Distress" (17th COA); and (5) "Negligent Infliction of Emotional Distress" (18th COA).

The Declarations of Richard K. Adjei, Head of the Accreditation Department of the Ghana NAB ("Adjei Decl."), and Amma A. Gaisie, the Ghana Solicitor General ("Gaisie Decl."), which set forth the a biased and perverted factual background.  Ghana NAB is an instrumentality of the Republic of Ghana created by operation of law. It is not a public institution empowered to evaluate whether medical schools may receive accreditation to operate within Ghana. The purpose of the NAB, according to its own current website, nab.gov.gh/index.php?option=com_content&view=article&id=53&Itemid=182  is:

- Accredit both public and private (tertiary) institutions with regard to the contents and standards of their programmes.
- Determine, in consultation with the appropriate institution or body, the programme and requirements for the proper operation of that institution and the maintenance of acceptable levels of academic or professional standards;
- Determine the equivalences of diplomas, certificates and other qualifications  awarded by institutions in Ghana or elsewhere.
- Publish as it considers appropriate the list of accredited public and private institutions at the beginning of the calendar year.
- Advise the President on the grant of a Charter to a private tertiary institution.
- Perform any other functions determined by the Minister.

Ghana NAB does not have the responsibility to protect the public and ensure that graduates of medical schools in Ghana are qualified to practice the profession. Adjei Decl. At ¶ 2.

The St. Luke School of Medicine ("SLSOM"), with Dr. Jerroll Dolphin as its President and C.E.O., submitted an application to establish a St. Luke School of Medicine in Cape Coast, Ghana in November 1998. SLSOM was granted Interim Authority in January 1999 to establish the school, Adjei Decl. At ¶ 3.  Dr. Jerroll Dolphin and SLSOM-Ghana admitted to having made mistakes regarding its interpretation of the interim authority granted by the NAB in 1999, and did issue a written apology to the NAB for its misunderstanding and misdeeds in 2003 and 2004.  SLSOM-Ghana did request from the NAB that another opportunity to establish SLSOM-Ghana be granted

and accordingly paid the required fees for inspection in November 2004.  Interim

Authority to establish SLSOM-Ghana was granted in or about April 2005.

    SLSOM-Ghana  was not made privy to any communications between the W.H.O.

Or the Educational Commission For Foreign Medical Graduates, regarding inquires as to

its accreditation in Ghana and therefore cannot comment on those issues.  Dr. Jerroll

Dolphin does not know of any student who has applied for sitting at the USMLE

examinations, Step 1 or Step 2, under the authority of SLSOM-Ghana.

    "Following expiration of its Interim Authority, SLSOM reapplied in 2004. An

Interim Authority was again granted in 2005 for SLSOM to continue its preparations for

accreditation. Adjei Decl. at ¶ 7. Thereafter, SLSOM began submitting information to

Ghana NAB the information was only part of that required for accreditation. All

documentation required by the NAB Roadmap, Exhibit A, was submitted in or about

August 2007.  An application for accreditation was finally submitted by SLSOM in June

2007.  The Accreditation Panel concluded that: "On the basis of the information provided

… we do not think the St. Luke's School of Medicine is ready for accreditation as a

Medical School." Id. At ¶ 9."  However, the MTD left out very important information.

Fees of $6000 were paid for a physical inspection of SLSOM-Ghana campus on

Koowulu Street, Laterbiokorshie, Accra, Ghana, between June and November 2007.  The

inspection report was replete with falsehoods, contradictions, and libelous opinions.

Exhibit G. In fact, the writers of the report did not follow the standard grading

requirements of the report. Exhibit C , of Gaisie declaration, ¶ 74 - 97.  SLSOM-Ghana

replied with a 150-page detailed objection in January 2008, which was included as part of

the Ghana High Court lawsuit.

    At every turn the NAB presented new requirements for accreditation, none of

which were required by the accreditation laws of the Republic of Ghana, or by the, then

or current Roadmap to Accreditation.

    However, the defendant, NAB, MTD is asking this court to retrial of the Ghana

High Court's decision (decided in SLSOM's favor). The Plaintiffs are not seeking to have

this honorable court retrial SLSOM-Ghana's lawsuit against the NAB, nor do the Plaintiffs desire this court to preempt the appeal ruling to be made in Ghana's Court of Appeal.

The Plaintiffs are seeking damages for Conspiracy to Violate Civil Rights, Libel, Interference With Business Advantage, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress based on the Internet publishing of 91-paged document on gg's website, xxx; degreediscussion.com (an interactive website), and

The  Ghana NAB's strategy was solely to delay and financially ruin SLSOM-Ghana.   The NAB would not consider the facts, but instead choose to focus on their own false reports of SLSOM-Liberia, and on the Internet.  On October 27, 2008, SLSOM filed a lawsuit against Ghana NAB before the Ghana High Court (local trial court).  The case is entitled: In the Matter of an Application by St. Luke School of Medicine Ghana Limited for Accreditation by the Ghana National Accreditation Board and In the Matter of the Application by St. Luke School of Medicine Ghana Limited for Judicial Review, Etc., in the Superior Court of Judicature, High Court of Justice, Accra – A.D. 2008, case no. AP 12/2009 (the "Ghana Action"). Adjei Decl. at ¶ 15; Gaisie Decl. At ¶ 4.

The Plaintiffs accept Exhibit A, B, and C of the Defendant's MTD.  The Ghana Action is a petition for mandamus against Ghana NAB seeking to order it to grant accreditation to SLSOM.  Please note that there are no facts stated in the NAB's opposition, only naked accusations, hearsay and rumor.  Additionally, the NAB did not include any part of the 91-paged document by George Gollin, nor the letters it solicited and received from Alan Contreras and Schwartz.

On October 19, 2009, the Ghana High Court Judge ruled in favor of SLSOM in the Ghana Action, holding that the Ghana NAB should have accredited the school for the training of medical practitioners. Gaisie Decl. at ¶ 6 and Exhibit D.

On March 9, 2012, Ghana NAB filed a motion to stay execution of the Ghana High Court's Ruling. The Ghana Court of Appeal granted the stay on March 24, 2010. The appeal is pending. Gaisie Decl. At ¶ 10.

Plaintiffs' claims are based on Ghana NAB's use, in the Ghana lawsuit, of libelous documents and letters from Gollin, Schwartz, Contreras, and their institutions that insult Dr. Jerroll Dolphin, his wife Susana, SLSOM-Ghana, SLSOM-Liberia, and members of the class, all of which are false and factitious.  The use of Gollin's Internet-base 91-paged document in a court of law was only for the purpose of libel, so that Gollin could place the same documents on the Internet to further ridicule the Plaintiffs.  The National Accreditation Board and the Attorney General of Ghana are aware of the non-admissibility of the 91-paged document not only in the High Court, but also in the Court of Appeal.  The courts of the Republic of Ghana do not allow evidence obtained from the Internet to make decisions, nor does it allow decisions of Government agencies to used information obtained from the Internet for  the  disqualification of companies or persons for any reason, as it is mere hearsay and there is no sworn testimony or authentication of the truth or reliability.  It is the Defendant, National Accreditation Board, that is trying to intermingle the Ghana lawsuit, to make it appear that SLSOM was not worthy of accreditation. Plaintiffs' claims are not intertwined with the Ghana judicial proceedings which Plaintiffs filed first in Ghana.

# III. ARGUMENT

Pursuant to F. R. Civ. P. 12(b)(1) and 12(b)(2), and the Court's inherent powers, the Ghana NAB moves to dismiss the FAC, on these grounds:

## a. THERE IS SUBJECT MATTER JURISDICTION.

The Foreign Sovereign Immunities Act, 28 U.S.C. §§1602 et seq. ("FSIA") is not the "sole basis for obtaining jurisdiction over a foreign state" in United States courts. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989). Under the FSIA, a foreign state enjoys full immunity from suit and courts lack subject matter jurisdiction over a claim against the state unless an exception to

sovereign immunity applies. Id.; Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); Cassirer v. Kingdom of Spain, 580 F.3d 1048, 1055 (9th Cir. 2009) (rev'd on other grounds en banc, 616 F.3d 1019 (9th Cir. 2010).

*i. LEGAL EXCEPTIONS TO FSIA.*

In Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 610 (1992), Argentina made two primary arguments as to why the FSIA commercial activity exception should not apply: (1) the issuance of sovereign debt to investors was not a "commercial" activity and (2) their alleged default could not be considered to have had a "direct effect" in the United States. In a unanimous opinion, written by Justice Antonin Scalia, the Supreme Court held that Argentina was not entitled to sovereign immunity. Reasoning that "when foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial,'" the Court concluded that Argentina's issuance of the bonds was of a commercial character. As for the "direct effect" in the U.S., the Court rejected the suggestion that under the FSIA the effect in the U.S. necessarily needed to be "substantial" or "foreseeable" and instead concluded that in order to be "direct," the effect need only "follow as an immediate consequence" of the defendant's activity. Because New York was the place where payment was supposed to be made, the Court concluded that the effect was direct, notwithstanding the fact that none of the plaintiffs were situated in New York.  Notwithstanding, the NAB is not relying on the laws of the Republic of Ghana as to the accreditation of schools, particularly, as to the accreditation of SLSOM-Ghana, and is, therefore not acting to regulate, only to interfere with the economic interests of the Plaintiffs.  The NAB is acting as a player by not subjecting their four accredited government operated medical schools to the competition that SLSOM would present to them.  Those government operated medical schools were not even subjected to inspections of their laboratories and libraries, as was SLSOM-Ghana.  Dr. Jerroll Dolphin, visited the University of Kumasi Medical School in 2007, and noticed that there was not a book printed after 1984, the

Library was way below the SLSOM's library, which had virtually all new and up tot date books.

Similarly, there needn't be "substantial" or "foreseeable" effects in the U.S., or California.  However, California, was the state where the registered owner of SLSOM-Ghana resided, corporately and personally, there is a direct effect of NAB's actions.  Next, the NAB has a stake in maintaining accreditation in the USA.  There are more Ghanaian doctors working in the USA than in Ghana itself, 1400 in the USA and 900 in Ghana.  With the accreditation of SLSOM-Ghana in Ghana, the Oregon Office of Degree Authorization threatened to "ban the use of all Ghanaian degrees if St. Luke is approved." Plaintiffs' Exhibit D and E, attached.  There are more than 10,000 Ghanaians with degrees from Ghanaian universities in the USA.  The loss of revenue in Ghana would represent a loss of more than $200,000,000 of annual revenue from money not sent to their families, not including the money that Ghanaian-American professionals spend on businesses they maintain in Ghana.

Furthermore, the reaction of the Minister of Foreign Affairs is extraordinary. Plaintiffs'  Exhibit B and C.  However, there is no letter from the NAB, and Exhibits B and C show that the letters from Alan Contreras and Brad Schwartz were written on or about October 30, 2009 and November 16, 2009 and received by the "Mission" in Washington DC (Embassy) on or about November 7, 2009.  This is clearly after SLSOM's favorable decision in the Ghana High Court on October 19, 2009.  The court may note the date of Gollin's 91-paged document, October 31, 2009.  The dates of the writings of the documents clearly demonstrate conspiracy.

There was no advertising of the High Court's decision in SLSOM-Ghana's favor, nor was there any newspaper coverage, or information on the Internet concerning SLSOM-Ghana's decision.  The Plaintiffs assert that officials of the NAB solicited the false and threats from Defendants Gollin, Alan Contreras, and Brad Schwartz, and asks this court for the opportunities of discovery to demonstrate theirs and the National Accreditation Board's conspiracy.  Without the solicitation, it is highly unlikely that the

Ghanaian Embassy in Washington DC would have received "documents" from American universities and agencies, within a few weeks after the High Court's decision in favor of SLSOM-Ghana.

### ii. GHANA NAB DOES NOT HAVE FOREIGN SOVEREIGN IMMUNITY.

"State law, not federal common law, governs whether an officer's or employee's action is within the scope of employment in determining the applicability of the FSIA." Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 173 (5th Cir. 1994).  for alleged conduct to be considered within the scope of employment "the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." Osborne v. Payne, 31 S.W.3d 911, 915 (Ky. 2000).

Ghana NAB is not entitled to sovereign immunity solely because it is an agency or instrumentality of a foreign state. The actions taken against Dr. Jerroll Dolphin, SLSOM-Ghana, SLSOM-Liberia, and the Class by officials of the NAB were outside their scope of employment of the NAB.  See Exhibit I and J, National Accreditation Board Act, 2007 Act 744 and Roadmap to Accreditation, respectively.

"An entity is an organ of a foreign state … if it 'engages in a public activity on behalf of the foreign government.'" Cal. Dept. of Water Res. v. Powerex Corp., 533 F.3d 1087, 1098 (9th Cir. 2008).  Certainly the actions of the NAB with regard to SLSOM-Ghana were outside of the scope of the NAB Act of 2007, and outside the scope of the Roadmap.  There is nowhere in either document that authorizes falsification of documents and reports, as was done by NAB officials, deliberate delaying accreditation, and conspiring with other Defendants Gollin, Contreras, and Schwartz to harm the Plaintiffs.

Again, the Ghana NAB is not empowered by the Republic to evaluate whether medical schools may receive accreditation to operate in Ghana, supra.  Ghana NAB is not charged with responsibility to protect the public and ensure that graduates of medical schools in Ghana are qualified to practice the profession. Adjei Declaration at ¶ 2; Gaisie

Decl. at ¶ 2. It is the function of the Ghana Medical and Dental Council, not the Ghana NAB, to ensure that graduates of medical schools in Ghana are qualified to practice medicine.  "The Medical and Dental Council is the Statutory Governmental Agency that regulates standards of training and practice of medicine and dentistry in Ghana. It was established under the Medical and Dental Decree, 1972 (NRCD 91), as amended by the Medical and Dental (Amendment) Decree, 1979 (NRCD 91), and Medical and Dental (Amendment) Decree, 1979 (AFRCD 8)"

### *iii. FSIA EXCEPTIONS APPLY.*

FSIA exceptions do apply here. FSIA exceptions are narrowly construed.  See Pac. Nat. Bank v. Derderian, 872 F.2d 281, 285 (9th Cir. 1989) (commercial activity exception "is given a very restrictive interpretation"); Af-Cap, Inc. v. Chevron Overseas Ltd., 475 F.3d 1080, 1087 (9th Cir. 2007) (waiver exception interpreted narrowly); Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2D 9, 19 (D.D.C. 2003) (same as to tort exception). Immunity is "the general rule and must be adhered to by the court unless it is clearly shown that an exception applies." Bahsoon v. Pezetel, Ltd., 768 F. Supp. 507, 510 (E.D.N.C. 1991); Gibbons v. Rep. of Ireland, 532 F. Supp. 668, 671 (D.D.C. 1982).

### *1. WAIVER EXCEPTION DOES NOT APPLY.*

Section 1605(a)(1) of the FSIA sets forth the "waiver" exception: "(a) A foreign state shall not be immune from the jurisdiction of courts of the United States … (1) in which the foreign state has waived its immunity …"  However, the waiver exception is not the only exception of the FSIA.

### *2. TORT EXCEPTION DOES APPLY.*

Section 1605(a)(5) of the FSIA sets forth the "tort" exception: "(a) A foreign state shall not be immune from the jurisdiction of courts of the United States … (5) not

otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States …"

Section 1605(a)(5) is "limited" to "cases in which the damage or loss of property occurs in the United States." Amerada Hess, 488 U.S. at 439. "The noncommercial tort exception applies only where both the tort and injury take place within the territorial jurisdiction of the United States." Id., at 440-441.

Plaintiffs allege that Ghana NAB received letters from the University of Illinois-Urbana Champaign and State of Oregon Office of Degree Authorization, which contained defamatory statements about the Plaintiffs and their school, mainly that the school should not be accredited. (FAC at ¶¶ 2; 282; 287, and FAC Exhibits 50, 51.)  Plaintiffs never claimed that Ghana NAB committed torts when it forwarded these letters to the Ghana Attorney-General and Ghana High Court in connection with the Ghana lawsuit. (FAC at ¶ 290 and Exhibit 47.) The tortious activity by Ghana NAB is alleged to have taken place in USA, as a result of their conspiracy. As such, the tort exception does apply.


**3. COMMERCIAL ACTIVITY EXCEPTION DOES APPLY.**

Section 1605(a)(2) of the FSIA sets forth the "commercial activity" exception: "(a) A foreign state shall not be immune from the jurisdiction of courts of the United States … (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." The act of publishing the false and fabricated information on Gollin's website, on dltruth.com, degreediscussion.com, and other interactive websites could be "justified" if the documents were used in a court of law. However, Cal. Civ. Code § 47.  CCP §§ 47c

states " (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."  The documents published by Gollin on the above named websites do not meet any of the criteria for exception to CCP 47c.

Ghana NAB was seeking to assist the MDC and Ghana medical schools to reduce their competition by undermining the reputation and respectability of the Plaintiffs, thus performing commercial activities.  Since the 2007, several of the government medical schools have adopted policies proposed by SLSOM-Ghana in its accreditation documents.

### Cause of action under customary international law

On November 20, 2009, the U.S. District Court for the District of Columbia issued its decision in long-running litigation arising from a claim that Iran expropriated property belonging to an American company during the 1979 Revolution. McKesson Corp. v. Islamic Republic of Iran, 2009 U.S. Dist. LEXIS 109368 (D.D.C. 2009). McKesson originally brought suit in 1982 alleging that Iran had unlawfully expropriated its dividends and interests in Pak Dairy, an Iranian dairy company. In 2008 the U.S. Court of Appeals for the District of Columbia Circuit held that McKesson did not have a cause of action under the U.S.–Iran Treaty of Amity, Economic Relations, and Consular Rights, Aug. 15, 1955, 8 U.S.T. 899, 903 ("Treaty of Amity") and remanded the case to the district court to address three issues: (1) whether McKesson had a cause of action under Iranian law; (2) whether, in light of Sosa v. Alvarez-Machain, 542 U.S. 692 (2004), McKesson had a cause of action under customary international law; and (3) whether the act of state doctrine applied. McKesson Corp. v. Islamic Republic of Iran, 539 F.3d 485 (D.C. Cir. 2008). The D.C. Circuit also held that the district court properly found jurisdiction under the commercial activity exception of of the FSIA, 28 U.S.C. §

1605(a)(2). Id. For additional background on the litigation, see  Digest 2002 at 219–26 and 519–22; Digest 2003 at 258–67; and Digest  2008 at 155–58.

On September 28, 2009, at the request of the court, the United States  filed a Statement of Interest in the case. Noting the FSIA's legislative history  and the text of the commercial activities exception, the United States  recommended that the court find that "a plaintiff may not maintain a federal  common law cause of action based on customary international law in a suit  where jurisdiction is premised on the commercial activities exception within  the FSIA." The U.S. Statement of Interest is available at state.gov/s/l/c8183.htm.

In its November 2009 decision, the D.C. District Court disagreed with  the United States and held that McKesson had "an implied cause of action  under customary international law for expropriation." McKesson Corp. v.  Islamic Republic of Iran, 2009 U.S. Dist. LEXIS 109368, at *19. In reaching  that conclusion the court stated, "Congress enacted the commercial  activities exception [of the FSIA] on an understanding that courts would  apply causes of action based on customary international law." Id. at *13. The court also held that McKesson had a cause of action under Iranian law  and that the act of state doctrine did not apply. Id. at *19. As of the end of  2009, further proceedings remained ongoing before the district court.


***Tort of Outrage/Infliction of Emotional Distress***

Tort of Outrage/Infliction of Emotional Distress . . . .   This claim does survive against the NAB as it pertains to the  conduct of its employees who violated the terms of the relevant international laws through their tortious supervisory conduct over the allegedly abusive employees. We next turn to considering whether the surviving theories of liability, as outlined above,  are precluded by the other exception to the tortious act exception: whether they arise out of  misrepresentation or deceit.

In contrast to Cabiri and Kozorowski, plaintiffs' claims are best characterized as stemming directly from the misinformation disseminated by the NAB.. Instead, plaintiffs' claims are more akin to claims of negligent supervision as employees of the NAB are alleged to have provided inadequate supervision over those under its care. In this way, these claims resemble other negligent supervision claims more than they resemble claims brought by the plaintiffs in Cabiri and Kozorowski. We therefore conclude that the plaintiffs' claims of violation of customary international law of human rights, negligence, and breach of fiduciary duty should not be dismissed for "arising out of . . . misrepresentation [or] deceit." See 28 U.S.C. § 1605(a)(5)(B).

### a. COMMERCIAL ACTIVITY BY GHANA NAB.

A "state engages in commercial activity … where it exercises only those powers that can only be exercised by private citizens, as district from those powers peculiar to sovereigns." Nelson, 507 U.S. at 360. "[T]he activity must be of the type in which private individuals engage; if the activities in question are not private, but sovereign in nature, then the commercial activity exception will not apply." O'Bryan v. Holy See, 556 F.3d 361, 379 (6th Cir. 2009).

Here, again, the Plaintiffs did claim that SLSOM was improperly denied accreditation by Ghana NAB and they sued in Ghana High Court for such. Now, due to the available evidence, Plaintiffs claim that the NAB conspired with Gollin, Schwartz, and Contreras to produce, send, receive, and filed the documents in the Court of Appeal's of Ghana. The defendants, each and all, were aware that the documents were fabrications, replete with false and unsupported statements. The plaintiffs assert that this act was only done by the NAB so that Gollin would have the excuse he needed to publish these falsified documents on his internet website at the University of Illinois. Those same documents were reproduced on many interactive websites such as degreediscussion.com and dltruth.com. Conspiracy, Interference with Business

Advantage, Libel, Infliction of Emotional Distress are not state functions, but are private acts.  Furthermore, the Foreign Secretary of Ghana moved to protect the business reputation of Ghanaian educational institutions when it was threaten by George Gollin, Alan Contreras and Brad Schwartz blackmail.  Exhibit B and C.  In other words, the Republic of Ghana, and the NAB were going to submit to blackmail threats of Gollin, Contreras and Schwartz, and not stand for the judgment of the Ghanaian courts regarding SLSOM's accreditation.  However, the documents published by Gollin were part of the conspiracy of the defendants.  This is why the documents were sent to the Ghana Mission is Washington DC, and not to the NAB, itself, in Accra, Ghana, to panic and alarm Ghanaian Embassy officials.   The acts of Ghana NAB, therefore, are commercial activity.  The publishing and conspiracy was in the United States and was tortious.

Again, the defendant is attempting to introduce the false premise that the Plaintiffs are asking this court to re-try the Ghana lawsuit.  What is the Plaintiff's interest in re-trying a lawsuit that they already won?  The Plaintiffs will wait on the decision of the Ghana Court of Appeal.  City School of Detroit v. Government of France, 1990 U.S. Dist. LEXIS 19577 (E.D. Mich. 1990), the court held the commercial activity exception did not apply for "granting of accreditation to a private school by a foreign government is by its very nature a sovereign function, incapable of being performed by a private individual … the welfare and education of its citizenry is … an area where sovereign activity is typically asserted." However, the plaintiffs are not suing the NAB (in this court) for its performance or lack of performance regarding SLSOM's accreditation.  So again, the defendant's premise is false.

Because the claims are based upon commercial activity by Ghana NAB, the commercial activity exception clearly applies to Ghana NAB.

**b. COMMERCIAL ACTIVITY IN THE U.S.**

"The first clause of section 1605(a)(2) of the [FSIA] provides that a foreign state shall not be immune from the jurisdiction of United States courts in any cause 'in which the action is based upon a commercial activity carried on in the United States by the foreign state.'" Nelson, 507 U.S. at 356. "The Act defines such activity as commercial activity carried on by such state." Id. Plaintiff's claim must "arise[] from" the defendant's "commercial activity in the United States." Gould, Inc. v. Mitsui Mining & Smelting Co., 947 F.2d 218, 221 (6th Cir. 1991). Plaintiffs do allege that Ghana NAB has engaged in any commercial activity in the U.S.; thus, the first clause does apply.

**c.  ACTS BY GHANA NAB IN THE U.S.**

"The second [clause] of the commercial activity exception applies if the plaintiff's action is 'based … upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere.' 28 U.S.C. § 1605(a)(2). This clause "is generally understood to apply to non-commercial acts in the United States that relate to commercial acts abroad." Kensington Int'l ltd. v. Itoua, 505 F.3d 147, 157 (2d Cir. 2007) (quotations omitted).

This clause does apply because Ghana NAB is responding to the blackmail threat of Alan Contreras, Oregon Office of Degree Authorization, to destroy the reputation and acceptability of Ghanaian college and university degrees.  The defendant's reaction is to its "commercial activity" in the U.S. and abroad, where there would be a substantial loss of future income of Ghanaians abroad, if SLSOM is accredited in Ghana. Plaintiffs do allege acts of Ghana NAB occurred in the United States, the Ghanaian Embassy in Washington, DC, as part of the NAB's collaborative conspiracy with Gollin, Schwartz, and Contreras, to regulate the marketplace by eliminating St. Luke School of Medicine as an acceptable medical school, recognized in the USA and elsewhere,upon which the plaintiffs' claims are based.  Plaintiffs do not complain that Ghana NAB presented as

evidence in Ghana court proceedings letters that it received from the other defendants, but, the NAB knew the information was false and fabricated, and was used by the defendant George Gollin to justify its publishing on interactive internet sites in the United States. It is the conspiracy and subsequent activity and damages in the United States that is the basis of the Plaintiff's claims.

### d. *DIRECT EFFECT IN THE U.S.*

The third clause of Section 1605(a)(2) applies when the claim is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The third clause also does apply because there is a "direct effect" in the United States.

Further, the third clause "requires a nexus between the activity of the foreign sovereign and the plaintiff's cause of action" in the nature of minimum contacts. Corzo v. Banco Cent. de Reserva del Peru, 243 F.3d 519, 525-526 (9th Cir. 2001). The conspiracy was done by the NAB, Gollin, Schwartz, and Contreras. The submission of the fabricated and false documents to the Ghana Court of Appeals was just the signal for Gollin to publish the same documents on the Internet. The reception of the documents by the Ghanaian Embassy in Washington DC does establish minimal contacts in the USA. The letters from Contreras and Schwartz, to which the Attorney General and Foreign Minister react to threats of non-recognition of Ghanaian colleges and universities certainly confirm more than minimal contact and association to the USA. For these reasons, the commercial activities exception does apply. The FAC against Ghana NAB should stand due to subject matter jurisdiction.

### e. Deceit and misrepresentation

Courts generally have looked to the definition of misrepresentation in the FTCA as a guide for defining the term under the FSIA, relying on the legislative history of the FSIA for such comparison. *See, e.g.*, *Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193, 200 n.4 (2d Cir.1999). Indeed, the Ghana NAB has been very deceitful and has, and is, misrepresenting numerous facts. Exhibit A, G, I and H.

### f. THERE IS PERSONAL JURISDICTION.

*Petrol Shipping,* 360 F.2d at 107. In its discussion, the court emphasized the distinction between the personal jurisdiction and sovereign immunity questions. It stated: The fact that one party is a branch of a foreign sovereign does not affect the conclusion that by entering into an arbitration agreement containing a submission such as here, the sovereign becomes amenable to suit. The question of immunity does not bear on the question of amenability, or personal jurisdiction. What *Farr and Orion compelled is that the Kingdom be treated as if it is physically present.*

28 U.S.C. § 1330 (1976). This section states, in pertinent part: (a) The district courts shall have original jurisdiction without regard to amount in controversy of any non jury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement. (b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title. *Id. See* Victory Transport v. Commiserii Gen., 336 F.2d 354 (2d Cir. 1964), *cert. denied,* 381 U.S. 934 (1965).

Appropriate service was made the the Defendant NAB. Consequently, in accordance with 28 U.S.C. § 1330, if this court holds that the NAB is not entitled to immunity, then it has personal jurisdiction.

***G. THE ACT OF STATE DOCTRINE DOES NOT APPLY.***

Again, the defendant is trying to assert that the plaintiffs are trying to get this court to overturn a Ghanaian High Court's decision.  No, not so.  The plaintiffs are suing the NAB for Conspiracy, Libel, Interference with Business Advantage, Intentional Affliction of Emotional Distress, and Negligent Infliction of Emotional Distress.  The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401 (1964); Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083,1088 (9th Cir. 2009) ("A long-standing common law principle, the act of state doctrine precludes courts from evaluating the validity of actions that a foreign government has taken within its own borders").

Again, the Defendant is asking this court to re-try the Ghana High Court's decision.  The  Plaintiffs are not asking that.  The Plaintiffs feel that there is are opportunities for justice in Ghana.

In Bokkelen v. Grumman Aerospace Corp., 432 F. Supp. 329 (E.D.N.Y. 1977), the court held: "In our case the decision of the Brazilian government to deny import licenses is within the powers normally exercised by a sovereign. The control of foreign trade, like the expropriation of oil wells, involves a decision of a government acting within its own territory. As such the decision here was of type covered by the act of state doctrine." Id., at 333.  Similarly, Ghanaian courts will handle justice in Ghana.  The Plaintiffs are asking this court for justice based on the allegations in the FAC regarding conspiracy, libel, interference with business advantage, intentional infliction of emotional distress, and negligent infliction of emotional distress.

The claims in this lawsuit are not intertwined with the governmental functions of Ghana NAB. Again, contrary to the Defendant's claim, the FAC is not based on the submission of false evidence by Ghana NAB in the Ghana Action related to the issue of accreditation of SLSOM.

### h. INCONVENIENT FORUM DISMISSAL IS NOT APPROPRIATE.

The FAC should not be dismissed based on the forum non conveniens doctrine. A party seeking dismissal of an action on forum non conveniens grounds "must show two things: (1) the existence of an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." Loya v. Starwood Hotels & Resorts Worldwide, Inc., 583 F.3d 656, 664 (9th Cir. 2009).

### i. GHANA IS NOT AN ADEQUATE ALTERNATIVE FORUM.

An "alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1143 (9th Cir. 2001). Ghana NAB is amenable to service of process in Ghana.  There is a prior action pending there against it.  That action is for a writ of mandamus, which was filed in 2008 and decided in SLSOM-Ghana;s favor in 2009, and appealed by the NAB in December 2009, a stay of execution was granted 2010.  That lawsuit was before the recent actions of the Defendants to harm the Plaintiffs in the United States and elsewhere.  The actions of the Defendant NAB took place after the decision of the Ghana High Court, and therefore, it has nothing to do with the Ghanaian forum.

### ii. PUBLIC INTEREST FACTORS DO NOT FAVOR DISMISSAL.

The public interest factors to be considered include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." Lueck, 236 F.3d at 1147.

The public interest factors weigh in favor of the USA forum. The defendants Gollin, Schwartz, and Contreras are all American, and they would have

to be deposed, and they should be summonsed for documents for discovery. A Ghana forum is of no consequence to them, as they have never been to Ghana, and they would have no interest at putting themselves at risk for criminal consequences of their actions (after all, they did threaten to blackmail the Republic of Ghana) in a Ghanaian trial.

The Ghana NAB does not have an interest in seeing that these matters are resolved by the courts in Ghana. Again, the Defendant mistakes its mission which is not to " ensure that graduates of medical schools in Ghana are duly qualified to practice the profession". Gaisie Decl. At ¶ 2. That is the function of the Medical and Dental Council.

### iii. PRIVATE INTEREST FACTORS DO NOT FAVOR DISMISSAL.

The private interest factors to be considered include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." Lueck, 236 F.3d at 1145.

The private interest factors do not favor dismissal. It would be unduly burdensome, and would result in undue and great expense, for the Plaintiffs to pursue this action in Ghana, when the conspiracy took place in the United States. When the Ghana NAB conspired with Gollin, Schwartz and Contreras, they knew they were to have to defend this action in the U.S.A., if they were caught. The fact is that none of the Defendants, no not one, thought that the Plaintiffs would come to court seeking justice.

Again, the Defendant, NAB, is attempting to mislead this court. The Plaintiffs are not asking to re-trial or preemption of the Ghanaian appeal. This

matter is governed by United States and California law. The relevant witnesses and information is located primarily in the United States. If this case was to proceed in the Ghana, it may also be impossible to subpoena witnesses in United States for examination in Ghanaian courts. The prior-pending action in Ghana has nothing to do with this case. Gaisie Decl. at ¶ 15. Based on the foregoing, the FAC should be sustained and the MTD based on inconvenient forum grounds should be dismissed.

### e. DISMISSAL ON COMITY GROUNDS IS NOT APPROPRIATE.

The Defendant's statements concerning International comity are misleading. Again, the Defendant is attempting to mislead this court by insinuating that the Plaintiffs' claims of Conspiracy, Libel, Interference in Business Advantage, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress is somehow related to the ongoing Ghana appeal.  SLSOM-Ghana's lawsuit did not mention in any way the above stated causes of action.  It is the Defendant who wants this court to believe that the Plaintiffs are abusing the federal process by attempting to have a trial of the same actions in two countries.  Their statements concerning this are not true and misleading.

California has interest in this dispute. Plaintiffs complain of acts by Ghana NAB, and other Defendants that occurred in the United States. This Court should sustain the Plaintiffs' FAC and dismiss the Defendant's MTD based on the Defendant's misstatements  The case in Ghana is not at all related to the case before this court.

### f. THE FAC IS NOT BARRED BY THE LITIGATION PRIVILEGE.

Plaintiff's complaint against Ghana NAB is not based on actions that Ghana NAB took within a judicial proceeding in Ghana. Again, Plaintiffs allege that Ghana NAB received letters from the University of Illinois-Urbana Champaign and State of Oregon Office of Degree Authorization. (FAC at ¶¶ 2; 282; 287.)

Plaintiffs allege that the letters contained defamatory statements about them and their medical school (FAC at ¶ 287), that Ghana NAB should not accredit the St. Luke School of Medicine. (FAC at Exhibits 50, 51.) Plaintiffs' complaint against Ghana NAB is based on the fact that Ghana NAB conspired with the other Defendants Gollin, Schwartz, and Contreras to further defame and embarrass the Plaintiffs.  Gollin subsequently published these fabricated, unfair, and defamatory documents using the fact that they were filed these letters in connection with the pending Ghana Action. (FAC at ¶¶ 290-295 and Exhibit 47.)

The FAC against Ghana NAB is not barred by the litigation privilege, Cal. Civ. Code § 47.   " (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."  The 91-paged document does not fit the qualification for a communication "without malice", "innocent".  If the 91-paged document was requested by the NAB, it proves that the Defendants did, indeed, conspire against the Plaintiffs and purposefully committed the causes of actions, named, supra.   Next, CCP 47 (d-1), "(d) (1) By a fair and true report in, or a communication to, a public journal, of (A) a judicial, (B) legislative, or (C) other public official proceeding.  The 91-paged document is virtually all falsehood, lies, and fabrications, and therefore does not fit the definition of a "fair and true report"..  See Exhibits 43, 46, 49, 50, 51, 52, and 53 of the FAC.  The Defendant has not submitted any evidence that the 91-paged document nor the letters of Brad Schwartz or Alan Contreras are true or fair and therefore their request for dismissal based on litigation privilege should be denied.  Subsequently the 91-paged document does not qualify for litigation privilege.  The claims made by the Plaintiffs are sufficient and true.

Because the litigation privilege applies to foreign actions, the FAC does state a claim against Ghana NAB, and amendment, if necessary should not be denied. The FAC

should be sustained because Section 47 clearly does not permit litigation privilege for documentation written in malice and prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Plaintiffs, Dr Jerroll Dolphin, St. Luke School of Medicine – Ghana, St. Luke School of Medicine – Liberia, and the Class request that this honorable Court deny this motion,  accept the Plaintiff's FAC, and sanction the Defendant National Accreditation Board.


Respectfully submitted,
DATED: July 1, 2012.




By Larry D. Walls
Attorney for the Plaintiffs

1

**CERTIFICATE OF SERVICE**

2   I hereby certify that a true and correct copy of the foregoing document was served on

3   counsel of record via ECF Notice of Electronic Filing in accordance with the Federal

4   Rules of Civil Procedure and Local Rule 5-3.3

5

6

7

8

9

10

11   Larry D. Walls

12   Attorney for the Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28