Larry Walls, SBN 64696
Attorney at Law
3250 Wilshire Blvd, Suite 708
Los Angeles, CA 90010
Telephone:(213) 480-6220
Facsimile: (213) 480-6225
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST. LUKE SCHOOL OF MEDICINE-GHANA, et al, <br> Plaintiff, <br> vs. <br> REPUBLIC OF LIBERIA, et al, <br> Defendant | Case No.: 11-CV-06322- RGK (SHx) <br><br> PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT NATIONAL ACCREDITATION BOARD'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(2)&(6) <br><br> DATE: AUGUST 23, 2012 <br> TIME: 9:00 AM <br> CRT:  850 <br> JUDGE: Honorable R. Gary Klausner |

## Table of Contents

Cases................................................................................2
STATUTES.............................................................................3
OTHER AUTHORITIES....................................................................3
List of Exhibits....................................................................3
I. INTRODUCTION.....................................................................4
    a. THERE IS SUBJECT MATTER JURISDICTION..........................................4
II. FACTUAL BACKGROUND..............................................................5
III. ARGUMENT.......................................................................8
    a. THERE IS SUBJECT MATTER JURISDICTION..........................................8
    i. LEGAL EXCEPTIONS TO FSIA......................................................8
    ii. NAB DOES NOT HAVE FOREIGN SOVEREIGN IMMUNITY.................................9
    iii. FSIA EXCEPTIONS APPLY......................................................10
    1. TORT EXCEPTION DOES APPLY....................................................11
    2. COMMERCIAL ACTIVITY EXCEPTION DOES APPLY.....................................11
    3. Cause of action under customary international law............................12
    4. Tort of Outrage/Infliction of Emotional Distress............................13
        a.  COMMERCIAL ACTIVITY BY NAB..............................................14
        b. COMMERCIAL ACTIVITY IN THE U.S...........................................14
        d.  DIRECT EFFECT IN THE U.S................................................15
        e. Deceit and misrepresentation.............................................16
        f. THERE IS PERSONAL JURISDICTION...........................................16
        G. THE ACT OF STATE DOCTRINE DOES NOT APPLY.................................17

```
    h. INCONVENIENT FORUM DISMISSAL IS NOT APPROPRIATE...........................17
    i. GHANA IS NOT AN ADEQUATE ALTERNATIVE FORUM..............................18
    ii. PUBLIC INTEREST FACTORS DO NOT FAVOR DISMISSAL........................18
    iii. PRIVATE INTEREST FACTORS DO NOT FAVOR DISMISSAL......................18
    e. DISMISSAL ON COMITY GROUNDS IS NOT APPROPRIATE.........................19
    f. THE FAC IS NOT BARRED BY THE LITIGATION PRIVILEGE......................20
  IV. CONCLUSION...............................................................21
```

**Cases**

Af-Cap, Inc. v. Chevron Overseas Ltd., 475 F.3d 1080 (9th Cir. 2007) ...................................... 9

Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428 (1989) ......... ............ 7, 10

Bahsoon v. Pezetel, Ltd., 768 F. Supp. 507 (E.D.N.C. 1991) ................................................. 10

Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 (1964) ................................................ 16

Burnett v. Al Baraka Invest. & Dev. Corp., 292 F. Supp. 2d 9 (D.D.C. 2003) ......................... 9

Cal. Dept. of Water Res. v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008) ................. ........ 20

Cassirer v. Kingdom of Spain, 580 F.3d 1048 (9th Cir. 2009) (rev'd on other grounds en banc, 616 F.3d 1019 (9th Cir. 2010) ............................................................................. 7

Corzo v. Banco Cent. de Reserva del Peru, 243 F.3d 519 (9th Cir. 2001) ............................. 15

Foremost-McKesson, Inc. v. Islamic Rep. of Iran, 905 F.2d 438 (D.C. Cir. 1990) ............ 11, 12

Gibbons v. Rep. of Ireland, 532 F. Supp. 668 (D.D.C. 1982) ............................................... 10

Gould, Inc. v. Mitsui Mining & Smelting Co., 947 F.2d 218 (6th Cir. 1991) .......................... 14

Kensington Int'l ltd. v. Itoua, 505 F.3d 147 (2d Cir. 2007) .................................................. 14

Loya v. Starwood Hotels & Resorts Worldwide, Inc., 583 F.3d 656 (9th Cir. 2009) .............. 17

Lueck v. Sundstrand Corp., 236 F.3d 1137 (9th Cir. 2001) ................................................. 17

O'Bryan v. Holy See, 556 F.3d 361, 379 (6th Cir. 2009) .................................................... 13

Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083,1088 (9th Cir. 2009) .... 16

Republic of Argentina v. Weltover, Inc., 504 U.S. 607 (1992) ............................................... 7

Saudi Arabia v. Nelson, 507 U.S. 349 (1993) .............................................. 7, 13, 14

Sec. Pac. Nat. Bank v. Derderian, 872 F.2d 281 (9th Cir. 1989) .......................................... 9

**STATUTES**

28 U.S.C. § 1603(b)

28 U.S.C. § 1605(a)(2)

Cal. Civ. Code § 47

Foreign Sovereign Immunities Act, 28 U.S.C. §§1602 et seq. ("FSIA")  passim

28 USC § 1350 - ALIEN'S ACTION FOR TORT

**OTHER AUTHORITIES**

F. R. Civ. P. 12(b)(1)

F. R. Civ. P. 12(b)(2)

F. R. Civ. P. 12(b)(6)

**List of Exhibits**

| Exhibit No. | Title |
|---|---|
| A | First 5 Pages of Gollin's 91-paged document |

| B | Ministry of Foreign Affair Letter Dated November 20, 2009 (faxed copy) |
| C | Ministry of Foreign Affair Letter Dated November 20, 2009 |
| D | Threatening Letter from Alan Contreras Dated October 30, 2009 (faxed copy) |
| E | Threatening Letter from Alan Contreras Dated October 30, 2009 |
| F | Threatening Letter from Brad Schwartz Dated November 16, 2009 |
| G | NAB False Report Table |
| H | SLSOM-MDC response |
| I | THE_ROADMAP -2006 |
| J | NATIONAL ACCREDITATION BOARD ACT 2007 |
| K | Migration by Doctors |
| L | Gollin's 91-paged document (entire, Obtained through dltruth.com) |
| M | False Statements in Gollin's 91-paged document |

## I. INTRODUCTION

### a. THERE IS SUBJECT MATTER JURISDICTION

**First**, the FAC against Ghana National Accreditation Board, hereinafter "NAB", should stand because the Court has subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§1602 et seq. ("FSIA").  Additionally, SLSOM-Liberia, SLSOM-Ghana, and approximately one third of the Class are foreigners and are entitled to file suit under 28 USC § 1350 - ALIEN'S ACTION FOR TORT. **Second**, the FAC against NAB should stand because the court has personal jurisdiction over it. NAB does indeed have minimum contacts with California, and it would be reasonable to subject it to jurisdiction here. Plaintiffs complain that NAB conspired with George Gollin, Hereinafter "GG", Brad Schwartz, hereinafter "BS" and the University of Illinois-Urbana, hereinafter "UI" , and Alan Contreras,, hereinafter "AC", and the Oregon Office of Degree Authorization, hereinafter "ODA" to publicly libel the Plaintiffs, each and all. The Plaintiffs assert that the NAB conspired with the other Defendants, supra, to Interfere with the Business advantage of SLSOM-Ghana so as to smear its reputation before the courts of Ghana and further delay its accreditation, and consequently punish the Plaintiffs economically.  The Plaintiffs also assert the the NAB conspired with the other Defendants, supra,

to Intentionally and Negligently Inflict Emotional Distress on the Plaintiffs, each and all, to hurt and distress them. **Third**, the FAC against the NAB should stand because the conspiracy undertaken by the NAB and the other Defendants, supra, to defeat the honest efforts of Plaintiffs, is not a function of the legal operation of a governmental agency, also neither by GG, BS, the UI, AC, nor the ODA, each governmental employees or agencies. **Fourth**, the FAC against NAB should not be dismissed based on inconvenient forum grounds. **Fifth**, the FAC against NAB should not be dismissed based on international comity grounds. International comity is not applicable in this case. **Sixth**, the FAC against NAB is not barred by the litigation privilege,

## II. FACTUAL BACKGROUND

Plaintiffs allege that  between October 19, 2009 and October 30, 2001, the NAB solicited a 91-paged document, hereinafter "91-pd" from Defendant  "GG", Professor of Physics at UI, and solicited and received letters from BS, Dean of the UI, and AC, of the State of Oregon ODA. (FAC at ¶¶ 2; 282; 287.) Plaintiffs attach copies of these letters to the FAC as Exhibits 46, 50 and 51. Plaintiffs allege that the 91-PD authored by GG, and the letters authored by BS and AC contained defamatory statements about Plaintiffs and their medical school (FAC at ¶ 287), and that the Defendant NAB, knew the statements were false.  (FAC at Exhibits 50, 51.) Plaintiffs further allege that NAB forwarded these letters to the Ghana Attorney-General and/or the Ghana High Court, hereinafter "HC", in December 2009 in connection with a pending lawsuit in Ghana. (FAC at ¶¶ 290-295 and Exhibit 47.) Further alleged that the NAB, and GG conspired to publish these documents and further embarrass the plaintiffs, particularly Dr. Jerroll Dolphin, hereinafter "JD"  and his wife, Susanna, in the eyes of the public in Ghana and elsewhere.  Plaintiffs sue NAB for: (1) "Conspiracy to Violate Civil Rights" (6th Cause of Action ("COA")); (2) "Libel" (7th COA); (3) "Trade Libel and Interference in Business Advantage" (13th COA); (4) "Intentional Infliction of Emotional Distress" (17th COA); and (5) "Negligent Infliction of Emotional Distress" (18th COA).

The Declarations of Richard K. Adjei, Head of the Accreditation Department of the NAB ("Adjei Decl."), and Amma A. Gaisie, the Ghana Solicitor General ("Gaisie Decl."), which set

forth the a biased and perverted information.  NAB is not a public institution empowered to evaluate whether medical schools may receive accreditation to operate within Ghana. The purpose of the NAB, according to its own current website, nab.gov.gh/index.php? option=com_content&view=article&id=53&Itemid=182  is:

> *Accredit both public and private (tertiary) institutions with regard to the contents and standards of their programmes; Determine, in consultation with the appropriate institution or body, the programme and requirements for the proper operation of that institution and the maintenance of acceptable levels of academic or professional standards; Determine the equivalences of diplomas, certificates and other qualifications  awarded by institutions in Ghana or elsewhere; Publish as it considers appropriate the list of accredited public and private institutions at the beginning of the calendar year; Advise the President on the grant of a Charter to a private tertiary institution; Perform any other functions determined by the Minister."*

 NAB does not have the responsibility to protect the public and ensure that graduates of medical schools in Ghana are qualified to practice the profession. Adjei Decl. At ¶ 2.

The St. Luke School of Medicine ("SLSOM"), with JD as its President and C.E.O., submitted an application to establish a SLSOM in Cape Coast, Ghana in November 1998. SLSOM was granted Interim Authority in January 1999 to establish the school, Adjei Decl. At ¶ 3.  Dr. JD and SLSOM-Ghana admitted to having made mistakes regarding its interpretation of the interim authority granted by the NAB in 1999, and did issue a written apology to the NAB for its misunderstanding and misdeeds in 2003 and 2004.

"Following expiration of its Interim Authority, SLSOM reapplied in 2004. An Interim Authority was again granted in 2005 for SLSOM to continue its preparations for accreditation. Adjei Decl. at ¶ 7. An application for accreditation was finally submitted by SLSOM in June 2007.  The Accreditation Panel concluded that: "On the basis of the information provided … we do not think the St. Luke's School of Medicine is ready for accreditation as a Medical School." Id. At ¶ 9."  However, the MTD left out very important information.  Fees of $6000 were paid for a physical inspection of SLSOM-Ghana campus on Koowulu Street, Laterbiokorshie, Accra, Ghana, between June and November 2007.  The NAB inspection report of SLSOM-Ghana was replete with falsehoods, contradictions, and libelous opinions.  Plaintiffs' Exhibit G and Exhibit H.  In fact, the writers of the report did not follow the standard grading requirements of the report. Exhibit C , of Gaisie declaration, ¶ 74 - 97.  SLSOM-Ghana replied with a 150-page detailed objection in January 2008, which was included as part of the Ghana HC lawsuit.

At every turn the NAB presented new requirements for accreditation, none of which were required by the accreditation laws of the Republic of Ghana, or by the, then or current Roadmap to Accreditation.  However, it is the defendant, NAB, MTD is asking this court to retrial of the Ghana HC's decision (decided in SLSOM's favor). The  NAB's strategy was solely to delay and financially ruin SLSOM-Ghana.   The NAB would not consider the facts, but instead choose to focus on their own false reports of SLSOM-Liberia, and on the Internet.  On October 27, 2008, SLSOM filed a lawsuit against NAB before the Ghana HC (local trial court).  The case is entitled: In the Matter of an Application by SLSOM Ghana Limited for Accreditation by the Ghana National Accreditation Board, hereinafter "NAB",and In the Matter of the Application by SLSOM Ghana Limited for Judicial Review, Etc., in the Superior Court of Judicature, HC of Justice, Accra – A.D. 2008, case no. AP 12/2009 (the "Ghana Action"). Adjei Decl. at ¶ 15; Gaisie Decl. At ¶ 4.

The Plaintiffs accept Exhibit A, B, and C of the Defendant's MTD.  The Ghana Action is a petition for mandamus against NAB seeking to order it to grant accreditation to SLSOM. Please note that there are no facts stated in the NAB's opposition, only naked accusations, hearsay and rumor.  Additionally, the NAB did not include any part of the 91-PD by GG, nor the letters it solicited and received from AC and BS.  On October 19, 2009, the Ghana HC Judge ruled in favor of SLSOM in the Ghana Action, holding that the NAB should have accredited the school for the training of medical practitioners. Gaisie Decl. at ¶ 6 and Exhibit D.

In December 2009, the NAB filed an appeal of the HC's decision in favor of SLSOM-Ghana.  On March 9, 2012, NAB filed a motion to stay execution of the Ghana HC's Ruling. The Ghana Court of Appeal granted the stay on March 24, 2010. The appeal is pending. Gaisie Decl. At ¶ 10.  Plaintiffs' claims are based on NAB's use, in the Ghana lawsuit, of libelous documents and letters from GG, BS, AC, and their institutions that insult JD, his wife Susana, SLSOM-Ghana, SLSOM-Liberia, and members of the class, all of which are false and factitious.  The use of GG's Internet-base 91-PD in a court of law was only for the purpose of libel, so that GG could place the same documents on the Internet to further ridicule the Plaintiffs.  The NAB and the Attorney General of Ghana are aware of the non-admissibility of the 91-PD not only in the HC,

but also in the Court of Appeal.  The courts of the Republic of Ghana do not allow evidence obtained from the Internet to make decisions, nor does it allow decisions of Government agencies to used information obtained from the Internet for  the  disqualification of companies or persons for any reason, as it is mere hearsay and there is no sworn testimony or authentication of its truth or reliability.

## III. ARGUMENT

Pursuant to F. R. Civ. P. 12(b)(1) and 12(b)(2), and the Court's inherent powers, the NAB moves to dismiss the FAC, on these grounds:

### a. THERE IS SUBJECT MATTER JURISDICTION.

The Foreign Sovereign Immunities Act, 28 U.S.C. §§1602 et seq. ("FSIA") is not the "sole basis for obtaining jurisdiction over a foreign state" in United States courts. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989), Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); Cassirer v. Kingdom of Spain, 580 F.3d 1048, 1055 (9th Cir. 2009) (rev'd on other grounds en banc, 616 F.3d 1019 (9th Cir. 2010).

### i. LEGAL EXCEPTIONS TO FSIA.

In Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 610 (1992), In a unanimous opinion, written by Justice Antonin Scalia, the Supreme Court held that Argentina was not entitled to sovereign immunity. Reasoning that "when foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial,'" the Court concluded that Argentina's issuance of the bonds was of a commercial character. As for the "direct effect" in the U.S., the Court rejected the suggestion that under the FSIA the effect in the U.S. necessarily needed to be "substantial" or "foreseeable" and instead concluded that in order to be "direct," the effect need only "follow as an immediate consequence" of the defendant's activity. Because New York was the place where payment was supposed to be made, the Court concluded that the effect was direct, notwithstanding the fact that none of the plaintiffs were situated in New York.  Notwithstanding, the NAB is not relying on

the laws of the Republic of Ghana as to the accreditation of schools, particularly, as to the accreditation of SLSOM-Ghana, and is, therefore not acting to regulate, only to interfere with the economic interests of the Plaintiffs. Those government operated medical schools were not even subjected to inspections of their laboratories and libraries, as was SLSOM-Ghana.

Similarly, there needn't be "substantial" or "foreseeable" effects in the U.S. or California. However, California, was the state where the registered owner of SLSOM-Ghana resided, both corporately and personally, there is a direct effect of NAB's actions.  Next, the NAB has a stake in maintaining accreditation in the USA.  There are more Ghanaian doctors working in the USA than in Ghana itself, 1400 in the USA and 900 in Ghana.  With the accreditation of SLSOM-Ghana in Ghana, the Oregon ODA threatened to "ban the use of all Ghanaian degrees if St. Luke is approved." Plaintiffs' Exhibit D and E, attached.  There are more than 10,000 Ghanaians with degrees from Ghanaian universities in the USA.  The loss of revenue in Ghana would represent a loss of more than $200,000,000 of annual revenue from money not sent to their families, not including the money that Ghanaian-American professionals spend on businesses they maintain in Ghana.  Exhibit K. Exhibit B and Exhibit C show that the letters from AC and BS were written on or about October 30, 2009 and November 16, 2009 and received by the "Mission" in Washington DC (Embassy) on or about November 7, 2009.  This is clearly after SLSOM's favorable decision in the Ghana HC on October 19, 2009.  The court may note the date of GG's 91-PD, October 31, 2009.  The dates of the writings of the documents clearly demonstrate conspiracy. There was no advertising of the HC's decision in SLSOM-Ghana's favor, nor was there any newspaper coverage, or information on the Internet concerning SLSOM-Ghana's decision.  The Plaintiffs assert that officials of the NAB solicited the false and threats from Defendants GG, AC, and BS, and asks this court for the opportunities of discovery to demonstrate theirs and the NAB's conspiracy.  Without the solicitation, it is highly unlikely that the Ghanaian Embassy in Washington DC would have received "documents" from American universities and agencies, within a few weeks after the HC's decision in favor of SLSOM-Ghana.

***ii. NAB DOES NOT HAVE FOREIGN SOVEREIGN IMMUNITY.***

"State law, not federal common law, governs whether an officer's or employee's action is within the scope of employment in determining the applicability of the FSIA." Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 173 (5th Cir. 1994).  for alleged conduct to be considered within the scope of employment "the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." Osborne v. Payne, 31 S.W.3d 911, 915 (Ky. 2000).NAB is not entitled to sovereign immunity solely because it is an agency or instrumentality of a foreign state. The actions taken against JD, SLSOM-Ghana, SLSOM-Liberia, and the Class by officials of the NAB were outside their scope of employment of the NAB.  See Exhibit I and Exhibit J, NAB Act, 2007 Act 744 and Roadmap to Accreditation, respectively.   "An entity is an organ of a foreign state … if it 'engages in a public activity on behalf of the foreign government.'" Cal. Dept. of Water Res. v. Powerex Corp., 533 F.3d 1087, 1098 (9th Cir. 2008).  Certainly the actions of the NAB with regard to SLSOM-Ghana were outside of the scope of the NAB Act of 2007, and outside the scope of the Roadmap.

Again, the NAB is not empowered by the Republic to evaluate whether medical schools may receive accreditation to operate in Ghana, supra.  "The Medical and Dental Council is the Statutory Governmental Agency that regulates standards of training and practice of medicine and dentistry in Ghana. It was established under the Medical and Dental Decree, 1972 (NRCD 91), as amended by the Medical and Dental (Amendment) Decree, 1979 (NRCD 91), and Medical and Dental (Amendment) Decree, 1979 (AFRCD 8)"

***iii. FSIA EXCEPTIONS APPLY.***

FSIA exceptions do apply here. FSIA exceptions are narrowly construed.  See Pac. Nat. Bank v. Derderian, 872 F.2d 281, 285 (9th Cir. 1989) (commercial activity exception "is given a very restrictive interpretation"); Af-Cap, Inc. v. Chevron Overseas Ltd., 475 F.3d 1080, 1087 (9th Cir. 2007) (waiver exception interpreted narrowly); Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2D 9, 19 (D.D.C. 2003) (same as to tort exception). Immunity is "the general rule and must be adhered to by the court unless it is clearly shown that an exception applies."

Bahsoon v. Pezetel, Ltd., 768 F. Supp. 507, 510 (E.D.N.C. 1991); Gibbons v. Rep. of Ireland, 532 F. Supp. 668, 671 (D.D.C. 1982).

## 1. TORT EXCEPTION DOES APPLY.

Section 1605(a)(5) of the FSIA sets forth the "tort" exception: "(a) A foreign state shall not be immune from the jurisdiction of courts of the United States … (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States …" Section 1605(a)(5) is "limited" to "cases in which the damage or loss of property occurs in the United States." Amerada Hess, 488 U.S. at 439. "The noncommercial tort exception applies only where both the tort and injury take place within the territorial jurisdiction of the United States." Id., at 440-441. Plaintiffs allege that NAB received letters from the UI and State of Oregon ODA, which contained defamatory statements about the Plaintiffs and their school, mainly that the school should not be accredited. (FAC at ¶¶ 2; 282; 287, and FAC Exhibits 50, 51.) Plaintiffs claimed that NAB committed torts when it forwarded these letters to the Ghana Attorney-General and Ghana HC in connection with the Ghana lawsuit, as a result of their conspiracy.. (FAC at ¶ 290 and Exhibit 47.) The tortious activity by NAB, that harmed the Plaintiffs, is alleged to have taken place in USA, as a result of the NAB conspiracy. As such, the tort exception does apply.

## 2. COMMERCIAL ACTIVITY EXCEPTION DOES APPLY.

Section 1605(a)(2) of the FSIA sets forth the "commercial activity" exception: "(a) A foreign state shall not be immune from the jurisdiction of courts of the United States … (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." The act of publishing the false and fabricated information on GG's

website, on dltruth.com, degreediscussion.com, and other interactive websites could be "justified" if the documents were used in a court of law. However, Cal. Civ. Code § 47.  CCP §§ 47c states " (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."  The documents published by GG on the above named websites do not meet any of the criteria for exception to CCP 47c.

NAB was seeking to assist the MDC and Ghana medical schools to reduce their competition by undermining the reputation and respectability of the Plaintiffs, thus performing commercial activities.  Since the 2007, several of the government medical schools have adopted policies proposed by SLSOM-Ghana in its accreditation documents.

### 3. Cause of action under customary international law

On November 20, 2009, the U.S. District Court for the District of Columbia  issued its decision in long-running litigation arising from a claim that Iran expropriated property belonging to an American company during the 1979  Revolution. McKesson Corp. v. Islamic Republic of Iran, 2009 U.S. Dist. LEXIS  109368 (D.D.C. 2009). McKesson originally brought suit in 1982 alleging  that Iran had unlawfully expropriated its dividends and interests in Pak  Dairy, an Iranian dairy company. In 2008 the U.S. Court of Appeals for the  District of Columbia Circuit held that McKesson did not have a cause of  action under the U.S.–Iran Treaty of Amity, Economic Relations, and  Consular Rights, Aug. 15, 1955, 8 U.S.T. 899, 903 ("Treaty of Amity") and  remanded the case to the district court to address three issues: (1) whether McKesson had a cause of action under Iranian law; (2) whether, in light of  Sosa v. Alvarez-Machain, 542 U.S. 692 (2004), McKesson had a cause of  action under customary international law; and (3) whether the act of state  doctrine applied. McKesson Corp. v. Islamic Republic of Iran, 539 F.3d 485  (D.C. Cir. 2008). The D.C. Circuit also held that the district court properly found jurisdiction under the commercial activity exception of of the FSIA, 28  U.S.C. § 1605(a) (2). Id. For additional background on the litigation, see  Digest 2002 at 219–26 and 519–22;

Digest 2003 at 258–67; and Digest  2008 at 155–58. The United States  recommended that the court find that "a plaintiff may not maintain a federal common law cause of action based on customary international law in a suit  where jurisdiction is premised on the commercial activities exception within  the FSIA." The U.S. Statement of Interest is available at state.gov/s/l/c8183.htm. In its November 2009 decision, the D.C. District Court disagreed with the United States and held that McKesson had "an implied cause of action  under customary international law for expropriation." McKesson Corp. v.  Islamic Republic of Iran, 2009 U.S. Dist. LEXIS 109368, at *19. In reaching  that conclusion the court stated, "Congress enacted the commercial  activities exception [of the FSIA] on an understanding that courts would  apply causes of action based on customary international law." Id. at *13.  The court also held that McKesson had a cause of action under Iranian law  and that the act of state doctrine did not apply. Id. at *19. As of the end of  2009, further proceedings remained ongoing before the district court.

### 4. Tort of Outrage/Infliction of Emotional Distress

Tort of Outrage/Infliction of Emotional Distress . . . .   This claim does survive against the NAB as it pertains to the conduct of its employees who violated the terms of the relevant international laws through their tortious supervisory conduct over the allegedly abusive employees. We next turn to considering whether the surviving theories of liability, as outlined above,  are precluded by the other exception to the tortious act exception: whether they arise out of  misrepresentation or deceit.  In contrast to Cabiri and Kozorowski, plaintiffs' claims are  best characterized as stemming directly from the misinformation disseminated by the NAB.. Instead, plaintiffs' claims are more akin to claims of negligent supervision as employees of the NAB are alleged to have provided inadequate supervision over those under its care. In this way, these claims resemble other negligent supervision claims more than they resemble claims brought by the plaintiffs in Cabiri and Kozorowski.  We therefore conclude that the plaintiffs' claims of violation of customary international law of human rights, negligence, and breach of fiduciary

duty should not be dismissed for "arising out of . . . misrepresentation [or] deceit." See 28 U.S.C. § 1605(a)(5)(B).

**a. COMMERCIAL ACTIVITY BY NAB.**

A "state engages in commercial activity … where it exercises only those powers that can only be exercised by private citizens, as district from those powers peculiar to sovereigns." Nelson, 507 U.S. at 360. "[T]he activity must be of the type in which private individuals engage; if the activities in question are not private, but sovereign in nature, then the commercial activity exception will not apply." O'Bryan v. Holy See, 556 F.3d 361, 379 (6th Cir. 2009). Now, due to the available evidence, Plaintiffs claim that the NAB conspired with GG, BS, and AC to produce, send, receive, and file the documents in the Court of Appeal's of Ghana. The defendants, each and all, were aware that the documents were fabrications, replete with false and unsupported statements. The plaintiffs assert that this act was only done by the NAB so that GG would have the excuse he needed to publish these falsified documents on his internet website at the University of Illinois. Those same documents were reproduced on many interactive websites such as degreediscussion.com and dltruth.com. Conspiracy, Interference with Business Advantage, Libel, Infliction of Emotional Distress are not state functions, but are private acts. Furthermore, the Foreign Secretary of Ghana moved to protect the business reputation of Ghanaian educational institutions when it was threaten by GG, AC and BS blackmail. Exhibit B and C. In other words, the Republic of Ghana, and the NAB were going to submit to blackmail threats of GG, AC and BS, and not stand for the judgment of the Ghanaian courts regarding SLSOM's accreditation. The acts of NAB, therefore, are commercial activity. The publishing and conspiracy was in the United States and was tortious. Again, the defendant is attempting to introduce the false premise that the Plaintiffs are asking this court to re-try the Ghana lawsuit. What is the Plaintiff's interest in re-trying a lawsuit that they already won? So again, the defendant's premise is false. Because the claims are based upon commercial activity by NAB, the commercial activity exception clearly applies to NAB.

**b. COMMERCIAL ACTIVITY IN THE U.S.**

"The first clause of section 1605(a)(2) of the [FSIA] provides that a foreign state shall not be immune from the jurisdiction of United States courts in any cause 'in which the action is based upon a commercial activity carried on in the United States by the foreign state.'" Nelson, 507 U.S. at 356. "The Act defines such activity as commercial activity carried on by such state." Id. Plaintiff's claim must "arise[] from" the defendant's "commercial activity in the United States." Gould, Inc. v. Mitsui Mining & Smelting Co., 947 F.2d 218, 221 (6th Cir. 1991). Plaintiffs do allege that NAB has engaged in any commercial activity in the U.S.; thus, the first clause does apply.c.   ACTS BY NAB IN THE U.S.   "The second [clause] of the commercial activity exception applies if the plaintiff's action is 'based … upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere.' 28 U.S.C. § 1605(a)(2). This clause "is generally understood to apply to non-commercial acts in the United States that relate to commercial acts abroad." Kensington Int'l ltd. v. Itoua, 505 F.3d 147, 157 (2d Cir. 2007) (quotations omitted).  This clause does apply because NAB is responding to the blackmail threat of AC, Oregon ODA, to destroy the reputation and acceptability of Ghanaian college and university degrees.  The defendant's reaction is to its "commercial activity" in the U.S. and abroad, where there would be a substantial loss of future income of Ghanaians abroad, if SLSOM is accredited in Ghana. Plaintiffs do allege acts of NAB occurred in the United States, the Ghanaian Embassy in Washington, DC, as part of the NAB's collaborative conspiracy with GG, BS, and AC, to regulate the marketplace by eliminating SLSOM as an acceptable medical school, recognized in the USA and elsewhere, upon which the plaintiffs' claims are based.

**d.  DIRECT EFFECT IN THE U.S.**

The third clause of Section 1605(a)(2) applies when the claim is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The third clause also does apply because there is a "direct effect" in the United States. Further, the third clause "requires a nexus between the activity of the foreign sovereign and the plaintiff's

cause of action" in the nature of minimum contacts. Corzo v. Banco Cent. de Reserva del Peru, 243 F.3d 519, 525-526 (9th Cir. 2001). The conspiracy was done by the NAB, GG, BS, and AC in the United States.  The submission of the fabricated and false documents to the Ghana Court of Appeals was just the signal for GG to publish the same documents on the Internet.  The reception of the documents by the Ghanaian Embassy in Washington DC does establish minimal contacts in the USA.  The letters from AC and BS, to which the Attorney General and Foreign Minister react to threats of non-recognition of Ghanaian colleges and universities certainly confirm more than minimal contact and association to the USA. For these reasons, the commercial activities exception does apply. The FAC against NAB should stand due to subject matter jurisdiction.

**e. Deceit and misrepresentation**

Courts generally have looked to the definition of misrepresentation in the FTCA as a guide for defining the term under the FSIA, relying on the legislative history of the FSIA for such comparison. *See, e.g.*, *Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193, 200 n.4 (2d Cir.1999).  Indeed, the NAB has been very deceitful and has, and is, misrepresenting numerous facts.  Exhibit  A, G, I and H.

**f. THERE IS PERSONAL JURISDICTION.**

     *Petrol Shipping,* 360 F.2d at 107. In its discussion, the court emphasized the distinction between the personal jurisdiction and sovereign immunity questions. It stated: The fact that one party is a branch of a foreign sovereign does not affect the conclusion that by entering into an arbitration agreement containing a submission such as here, the sovereign becomes amenable to suit. The question of immunity does not bear on the question of amenability, or personal jurisdiction. What *Farr and Orion compelled is that the Kingdom be treated as if it is physically present.*  28 U.S.C. § 1330 (1976). This section states, in pertinent part: (a) The district courts shall have original jurisdiction without regard to amount in controversy of any non jury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in

personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement. (b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title. *Id. See* Victory Transport v. Commiserii Gen., 336 F.2d 354 (2d Cir. 1964), *cert. denied,* 381 U.S. 934 (1965).  Appropriate service was made the the Defendant NAB.  Consequently, in accordance with 28 U.S.C. § 1330, if this court holds that the NAB is not entitled to immunity, then it has personal jurisdiction.

## G. THE ACT OF STATE DOCTRINE DOES NOT APPLY.

Again, the defendant is trying to assert that the plaintiffs are trying to get this court to overturn a Ghanaian HC's decision.  No, not so.  The plaintiffs are suing the NAB for Conspiracy, Libel, Interference with Business Advantage, Intentional Affliction of Emotional Distress, and Negligent Infliction of Emotional Distress.  The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401 (1964); Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083,1088 (9th Cir. 2009) ("A long-standing common law principle, the act of state doctrine precludes courts from evaluating the validity of actions that a foreign government has taken within its own borders"). The Plaintiffs feel that there is are opportunities for justice in Ghana.

The Plaintiffs are asking this court for justice based on the allegations in the FAC regarding conspiracy, libel, interference with business advantage, intentional infliction of emotional distress, and negligent infliction of emotional distress.  The claims in this lawsuit are not intertwined with the governmental functions of NAB.

## h. INCONVENIENT FORUM DISMISSAL IS NOT APPROPRIATE.

The FAC should not be dismissed based on the forum non conveniens doctrine. A party seeking dismissal of an action on forum non conveniens grounds "must show two things: (1) the

existence of an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." Loya v. Starwood Hotels & Resorts Worldwide, Inc., 583 F.3d 656, 664 (9th Cir. 2009).

**i. GHANA IS NOT AN ADEQUATE ALTERNATIVE FORUM.**

An "alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1143 (9th Cir. 2001). NAB is amenable to service of process in Ghana.  There is a prior action pending there against it. That action is for a writ of mandamus, which was filed in 2008 and decided in SLSOM-Ghana;s favor in 2009, and appealed by the NAB in December 2009, a stay of execution was granted 2010.  That lawsuit was before the recent actions of the Defendants to harm the Plaintiffs in the United States and elsewhere.  The actions of the Defendant NAB took place after the decision of the Ghana HC, October 19, 2009 and therefore, it has nothing to do with the Ghanaian forum.

**ii. PUBLIC INTEREST FACTORS DO NOT FAVOR DISMISSAL.**

The public interest factors to be considered include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." Lueck, 236 F.3d at 1147. The public interest factors weigh in favor of the USA forum. The defendants GG, BS, and AC are all American, and they would have to be deposed, and they should be summonsed for documents for discovery.  Where a Ghana forum is of no consequence to them, as they have never been to Ghana, and they would have no interest at putting themselves at risk for criminal consequences of their actions (after all, they did threaten to blackmail the Republic of Ghana) in a Ghanaian trial.  The NAB does not have an interest in seeing that these matters are resolved by the courts in Ghana.

**iii. PRIVATE INTEREST FACTORS DO NOT FAVOR DISMISSAL.**

The private interest factors to be considered include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and

other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." Lueck, 236 F.3d at 1145.

The private interest factors do not favor dismissal. It would be unduly burdensome, and would result in undue and great expense, for the Plaintiffs to pursue this action in Ghana, when the conspiracy took place in the United States.  When the NAB conspired with GG, BS and AC, they knew they were to have to defend this action in the U.S.A. if they were caught.  The fact is that none of the Defendants, no not one, thought that the Plaintiffs would come to court seeking justice.  Again, the Defendant, NAB, is attempting to mislead this court.  The Plaintiffs are not asking to re-trial or preemption of the Ghanaian appeal.   This matter is governed by United States and California law. The relevant defendants, witnesses and information is located primarily in the United States. If this case was to proceed in the Ghana, it may also be impossible to subpoena witnesses in United States for examination in Ghanaian courts. Based on the foregoing, the FAC should be sustained and the MTD based on inconvenient forum grounds should be dismissed.

**e. DISMISSAL ON COMITY GROUNDS IS NOT APPROPRIATE.**

The Defendant's statements concerning International comity are misleading. Again, the Defendant is attempting to mislead this court by insinuating that the Plaintiffs' claims of Conspiracy, Libel, Interference in Business Advantage, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress is somehow related to the ongoing Ghana appeal.  SLSOM-Ghana's lawsuit did not mention in any way the above stated causes of action.  It is the Defendant who wants this court to believe that the Plaintiffs are abusing the federal process by attempting to have a trial of the same actions in two countries.  Their statements concerning this are not true and misleading.  California has interest in this dispute. Plaintiffs complain of acts by NAB, and other Defendants that occurred in the United States. This Court should sustain the Plaintiffs' FAC and dismiss the Defendant's MTD based on the Defendant's misstatements  The case in Ghana is not at all related to the case before this court.

**f. THE FAC IS NOT BARRED BY THE LITIGATION PRIVILEGE.**

Plaintiff's complaint against NAB is not based on actions that NAB took within a judicial proceeding in Ghana. Again, Plaintiffs allege that NAB received letters from the UI and State of Oregon ODA. (FAC at ¶¶ 2; 282; 287.)

Plaintiffs allege that the letters contained defamatory statements about them and their medical school (FAC at ¶ 287), that NAB should not accredit the SLSOM. (FAC at Exhibits 50, 51.) Plaintiffs' complaint against NAB is based on the fact that NAB conspired with the other Defendants GG, BS, and AC to further defame and embarrass the Plaintiffs. GG subsequently published these fabricated, unfair, and defamatory documents using the fact that they were filed these letters in connection with the pending Ghana Action. (FAC at ¶¶ 290-295 and Exhibit 47.)

The FAC against NAB is not barred by the litigation privilege, Cal. Civ. Code § 47.  " (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."  The 91-PD does not fit the qualification for a communication "without malice", "innocent".  Also, if the 91-PD was requested by the NAB, it proves that the Defendants did, indeed, conspire against the Plaintiffs and purposefully committed the causes of actions, named, supra.   Next, CCP 47 (d-1), "(d) (1) By a fair and true report in, or a communication to, a public journal, of (A) a judicial, (B) legislative, or (C) other public official proceeding.  The 91-PD is virtually all falsehood, lies, and fabrications, and therefore does not fit the definition of a "fair and true report"..  See Exhibits 43, 46, 49, 50, 51, 52, and 53 of the FAC.  The Defendant has not submitted any evidence that the 91-PD nor the letters of BS or AC are true or fair and therefore their request for dismissal based on litigation privilege should be denied.  Subsequently the 91-PD does not qualify for litigation privilege.  The claims made by the Plaintiffs are sufficient and true.

Because the litigation privilege applies to foreign actions, the FAC does state a claim against NAB, and amendment, if necessary should not be denied. The FAC should be sustained

because Section 47 clearly does not permit litigation privilege for documentation written in malice and prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiffs, Dr Jerroll Dolphin, St. Luke School of Medicine – Ghana, St. Luke School of Medicine – Liberia, and the Class request that this honorable Court deny this motion,  accept the Plaintiff's FAC, and sanction the Defendant NAB.

Respectfully submitted,

DATED: July 1, 2012.


By Larry D. Walls

Attorney for the Plaintiffs

---

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on counsel of record via ECF Notice of Electronic Filing in accordance with the Federal Rules of Civil Procedure and Local Rule 5-3.3



Larry D. Walls

Attorney for the Plaintiffs