Larry Walls, SBN 64696
Attorney at Law
3250 Wilshire Blvd, Suite 708
Los Angeles, CA 90010
Telephone:(213) 480-6220
Facsimile: (213) 480-6225
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

ST. LUKE SCHOOL OF
MEDICINE-GHANA, et al,
            Plaintiff,
        vs.
REPUBLIC OF LIBERIA, et al,
        Defendant

Case No.: 11-CV-06322- RGK (SHx)

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO DEFENDANT REPUBLIC
OF LIBERIA'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED
COMPLAINT PURSUANT TO F.R.C.P. 12(B)
(2)&(6)

Hearing

Date: September 9, 2012

Time: 9:00 a.m.

Judge: Hon. R. Gary Klausner

## Table of Contents

Cases.............................................................................2

STATUTES.........................................................................3

OTHER AUTHORITIES................................................................3

List of Exhibits................................................................3

 I. INTRODUCTION.................................................................3

   a. THERE IS SUBJECT MATTER JURISDICTION.....................................3

II. FACTUAL BACKGROUND..........................................................4

III. ARGUMENT...................................................................6

a. THERE IS SUBJECT MATTER JURISDICTION.............................................6

i. LEGAL EXCEPTIONS TO FSIA...........................................................6

ii. LIBERIA DOES NOT HAVE FOREIGN SOVEREIGN IMMUNITY BASED ON ITS EMPLOYEES ACTIONS.

.......................................................................................7

iii. FSIA EXCEPTIONS APPLY.............................................................8

1. TORT EXCEPTION DOES APPLY..........................................................8

2. COMMERCIAL ACTIVITY EXCEPTION DOES APPLY...........................................9

3. Cause of action under customary international law..................................9

4. Tort of Outrage/Infliction of Emotional Distress.................................10

  a.  COMMERCIAL ACTIVITY BY LIBERIA.................................................11

  b. COMMERCIAL ACTIVITY IN THE U.S.................................................12

  d.  DIRECT EFFECT IN THE U.S.......................................................12

  e. Deceit and misrepresentation...................................................13

  f. THERE IS PERSONAL JURISDICTION.................................................13

  G. THE ACT OF STATE DOCTRINE DOES NOT APPLY......................................14

  h. INCONVENIENT FORUM DISMISSAL IS NOT APPROPRIATE..............................14

  i. LIBERIA IS NOT AN ADEQUATE ALTERNATIVE FORUM..................................15

  ii. PUBLIC INTEREST FACTORS DO NOT FAVOR DISMISSAL..............................15

  iii. PRIVATE INTEREST FACTORS DO NOT FAVOR DISMISSAL............................15

  e. DISMISSAL ON COMITY GROUNDS IS NOT APPROPRIATE...............................16

  f. THE FAC IS NOT BARRED BY THE LITIGATION PRIVILEGE............................16

  G. DR. JERROLL DOLPHIN WAS TORTURED BY LIBERIAN OFFICIALS.......................17

  g. THE FAC IS NOT TIME BARRED BY STATUTE OF LIMITATIONS.........................17

IV. CONCLUSION........................................................................18

**Cases**

Af-Cap, Inc. v. Chevron Overseas Ltd., 475 F.3d 1080 (9th Cir. 2007) ................................... 9
Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428 (1989) .......... ............. 7, 10
Bahsoon v. Pezetel, Ltd., 768 F. Supp. 507 (E.D.N.C. 1991) …................................................ 10
Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 (1964)  …................................................ 16
Burnett v. Al Baraka Invest. & Dev. Corp., 292 F. Supp. 2d 9 (D.D.C. 2003)  …....................... 9

Cal. Dept. of Water Res. v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008) …................ ......... 20
Cassirer v. Kingdom of Spain, 580 F.3d 1048 (9th Cir. 2009) (rev'd on other grounds en banc,
616 F.3d 1019 (9th Cir. 2010) …................................................................................................ 7
Corzo v. Banco Cent. de Reserva del Peru, 243 F.3d 519 (9th Cir. 2001) …............................... 15
Foremost-McKesson, Inc. v. Islamic Rep. of Iran, 905 F.2d 438 (D.C. Cir. 1990) …........... 11, 12
Gibbons v. Rep. of Ireland, 532 F. Supp. 668 (D.D.C. 1982) …................................................. 10
Gould, Inc. v. Mitsui Mining & Smelting Co., 947 F.2d 218 (6th Cir. 1991) …......................... 14
Kensington Int'l ltd. v. Itoua, 505 F.3d 147 (2d Cir. 2007) …................................................... 14
Loya v. Starwood Hotels & Resorts Worldwide, Inc., 583 F.3d 656 (9th Cir. 2009) …............. 17
Lueck v. Sundstrand Corp., 236 F.3d 1137 (9th Cir. 2001) …................................................... 17
O'Bryan v. Holy See, 556 F.3d 361, 379 (6th Cir. 2009) …....................................................... 13
Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083,1088 (9th Cir. 2009) …. 16
Republic of Argentina v. Weltover, Inc., 504 U.S. 607 (1992) …................................................. 7
Saudi Arabia v. Nelson, 507 U.S. 349 (1993) …............................................................... 7, 13, 14
Sec. Pac. Nat. Bank v. Derderian, 872 F.2d 281 (9th Cir. 1989) …............................................ 9

**STATUTES**

28 U.S.C. § 1603(b)
28 U.S.C. § 1605(a)(2)
Cal. Civ. Code § 47
Foreign Sovereign Immunities Act, 28 U.S.C. §§1602 et seq. ("FSIA")  passim
28 USC § 1350 - ALIEN'S ACTION FOR TORT

**OTHER AUTHORITIES**

F. R. Civ. P. 12(b)(1)
F. R. Civ. P. 12(b)(2)
F. R. Civ. P. 12(b)(6)

**List of Exhibits**

| Exhibit No. | Title |
| --- | --- |
| A | United Nations Resolution 1509 (2003) |

## I. INTRODUCTION

### a. THERE IS SUBJECT MATTER JURISDICTION

**First**, the FAC against Republic of Liberia, hereinafter "Liberia", should stand because

the Court has subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C.

§§1602 et seq. ("FSIA").  Additionally, SLSOM-Liberia, SLSOM-Ghana, and approximately

one third of the Class are foreigners and are entitled to file suit under 28 USC § 1350 - ALIEN'S

ACTION FOR TORT. **Second**, the FAC against Liberia should stand because the court has personal jurisdiction over it. Liberia does indeed have minimum contacts with California, and it would be reasonable to subject it to jurisdiction here. The Plaintiffs assert that the Liberia Ministry of Education, National Commission on Higher Education, Ministry of Health, and Mohammed Shariff to Interfere with the Business advantage of SLSOM-Liberia so as to smear its reputation and to have its recognition with the Educational Commission For Foreign Medical Graduates, hereinafter "ECFMG", and the Foundation for Advancement of International Medical Education and Research, hereinafter :FAIMER", so as to destroy the schools reputation and profitability, and consequently punish the Plaintiffs', each and all, economically. The Plaintiffs also assert the the Liberia conspired with the other Defendants, supra, to Intentionally and Negligently Inflict Emotional Distress on the Plaintiffs, each and all, to hurt and distress them. **Third**, the FAC against the Liberia should stand because the conspiracy undertaken by the Liberia and the other Defendants, supra, to defeat the honest efforts of Plaintiffs, is not a function of the legal operation of a governmental agency. **Fourth**, the FAC against Liberia should not be dismissed based on inconvenient forum grounds. **Fifth**, the FAC against Liberia should not be dismissed based on international comity grounds. St. Luke School of Medicine - Liberia has attempted numerous times to obtain a final judgment in Liberia Supreme Court that were ignored. The scheduling Supreme Court Judge was one of the defendants in SLSOM-Liberia 's Supreme Court Writ of Mandamus in 2005, to which SLSOM-Liberia obtained a default (Clerk's certificate) for not answering the complaint. Therefore, a dismissal based on inconvenient forum grounds or international comity grounds would be burdensome and prejudicial to St. Luke School of Medicine - Liberia and the other plaintiffs. Additionally, Dr. Jerroll Dolphin feels his life would be in danger. **Sixth**, the FAC against Liberia is not barred by the litigation privilege.

## II. FACTUAL BACKGROUND

Plaintiffs allege that between October 2004 and December 2007 officials of the Republic of Liberia libeled the Plaintiffs by knowingly making false public statements to newspapers that were circulated worldwide, including the USA. In April 2005, Officials of the Republic of

1   Liberia, National Commission on Higher Education sent a fraudulent letter to the ECFMG and

2   FAIMER, that caused SLSOM-Liberia to be removed from the International Medical School

3   Directory, hereinafter "IMED". FAC Exhibit 11, hereinafter "computer school letter". Even after

4   St. Luke School of Medicine - Liberia obtained, from Liberia Supreme Court, an order to return

5   to its previous status, Exhibit 16, hereinafter "Order", the Ministry of Education and the NCHE

6   did not comply to have SLSOM-Liberia re-included into the IMED. In October of 2006,

7   SLSOM-Liberia obtained a default (Court Certificate) against the Ministry of Education and the

8   NCHE in a $120,000,000 USD lawsuit, and seeks to enforce that default in this court.

9       In the "computer school letter" the Defendants made knowingly false statements claiming

10  that SLSOM-Liberia was a "computer school", that St. Luke School of Medicine "never existed

11  in Liberia", St. Luke School of Medicine - Liberia was "awarding degrees through distance

12  education" and the NCHE "has never issued any temporary operational permit to St. Luke

13  School of Medicine to operate in Liberia". The Defendant Liberia, knew the statements were

14  false. Plaintiffs further allege that Liberia forwarded this letter to the ECFMG and FAIMER, in

15  Philadelphia, Pennsylvania, in April 2005 to destroy the business advantage that St. Luke School

16  of Medicine - Liberia in the United States and elsewhere in the world. connection with a pending

17  lawsuit in Ghana. (FAC at ¶¶ 122-124 and Exhibit 11.). Plaintiffs sue Liberia for: (1)

18  "Conspiracy to Violate Civil Rights" (6th Cause of Action ("COA")); (2) "Libel" (7th COA); (3)

19  "Trade Libel and Interference in Business Advantage" (13th COA); (4) "Intentional Infliction of

20  Emotional Distress" (17th COA); and (5) "Negligent Infliction of Emotional Distress" (18th

21  COA).

22      Please note that there are no facts stated in the Liberia's opposition about the infamous

23  "computer school letter". No appeal has been made by any of the Liberian Defendants in

24  Liberian Courts.

25

26

27

28

## III. ARGUMENT

### *a. THERE IS SUBJECT MATTER JURISDICTION.*

The Foreign Sovereign Immunities Act, 28 U.S.C. §§1602 et seq. ("FSIA") is not the "sole basis for obtaining jurisdiction over a foreign state" in United States courts. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989), Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); Cassirer v. Kingdom of Spain, 580 F.3d 1048, 1055 (9th Cir. 2009) (rev'd on other grounds en banc, 616 F.3d 1019 (9th Cir. 2010).

### *i. LEGAL EXCEPTIONS TO FSIA.*

In Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 610 (1992), In a unanimous opinion, written by Justice Antonin Scalia, the Supreme Court held that Argentina was not entitled to sovereign immunity. Reasoning that "when foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial,'" the Court concluded that Argentina's issuance of the bonds was of a commercial character. As for the "direct effect" in the U.S., the Court rejected the suggestion that under the FSIA the effect in the U.S. necessarily needed to be "substantial" or "foreseeable" and instead concluded that in order to be "direct," the effect need only "follow as an immediate consequence" of the defendant's activity. Because New York was the place where payment was supposed to be made, the Court concluded that the effect was direct, notwithstanding the fact that none of the plaintiffs were situated in New York.  The Republic of Liberia is not relying on their laws as to the accreditation of schools, particularly, as to the accreditation of SLSOM-Liberia, and is, therefore not acting to regulate, only to interfere with the economic interests of the Plaintiffs.

Similarly, there needn't be "substantial" or "foreseeable" effects in the U.S. or California. However, California, was the state where the registered owner of SLSOM-Liberia resided, both corporately and personally, there is a direct effect of Liberia's actions, which forced the eventual closure of SLSOM's Inglewood, California office.

*ii. LIBERIA DOES NOT HAVE FOREIGN SOVEREIGN IMMUNITY BASED ON ITS*
*EMPLOYEES ACTIONS.*

"State law, not federal common law, governs whether an officer's or employee's action is within the scope of employment in determining the applicability of the FSIA." Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 173 (5th Cir. 1994).  for alleged conduct to be considered within the scope of employment "the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." Osborne v. Payne, 31 S.W.3d 911, 915 (Ky. 2000).Liberia officials are not entitled to sovereign immunity solely because it is an agency or instrumentality of a foreign state. The actions taken against JD, SLSOM-Liberia, SLSOM-Liberia, and the Class by officials of the Liberia were far outside their scope of employment of Liberia.  After previously sending favorable letters to ECFMG – FAIMER in January through March 2005, the NCHE Secretary General was pressured by MS into sending the fraudulent "computer school letter" to ECFMG – FAIMER in April 2005.  The NCHE was operating outside of its jurisdiction by stating that St. Luke School of Medicine - Liberia did not exist in Liberia.  That could only be done by the Supreme Court of Liberia.  Certainly, the Supreme Court upheld SLSOM's existence in Liberia, when it granted SLSOM its order of August 10, 2005 order, FAC Exhibit 16.

"An entity is an organ of a foreign state … if it 'engages in a public activity on behalf of the foreign government.'" Cal. Dept. of Water Res. v. Powerex Corp., 533 F.3d 1087, 1098 (9th Cir. 2008).  Certainly the actions of the Liberian government officials send the fraudulent "computer school letter" was not a public activity on behalf of the Liberian government, especially when it was repudiated by the Liberian Supreme Court by order, and with SLSOM obtaining defaults against the Ministry of Education in both LSC and LCC, Exhibits 17 and 30 respectively.  SLSOM-Liberia had conducted more health examinations for Liberian refugees in Ghana than did the Republic of Liberia itself for those unfortunate refugees, and indeed was constantly providing equipment and drugs for Liberian citizens.

### iii. FSIA EXCEPTIONS APPLY.

FSIA exceptions do apply here. FSIA exceptions are narrowly construed.  See Pac. Nat. Bank v. Derderian, 872 F.2d 281, 285 (9th Cir. 1989) (commercial activity exception "is given a very restrictive interpretation"); Af-Cap, Inc. v. Chevron Overseas Ltd., 475 F.3d 1080, 1087 (9th Cir. 2007) (waiver exception interpreted narrowly); Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2D 9, 19 (D.D.C. 2003) (same as to tort exception). Immunity is "the general rule and must be adhered to by the court unless it is clearly shown that an exception applies." Bahsoon v. Pezetel, Ltd., 768 F. Supp. 507, 510 (E.D.N.C. 1991); Gibbons v. Rep. of Ireland, 532 F. Supp. 668, 671 (D.D.C. 1982).

### 1. TORT EXCEPTION DOES APPLY.

Section 1605(a)(5) of the FSIA sets forth the "tort" exception: "(a) A foreign state shall not be immune from the jurisdiction of courts of the United States … (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States …" Section 1605(a)(5) is "limited" to "cases in which the damage or loss of property occurs in the United States." Amerada Hess, 488 U.S. at 439. "The noncommercial tort exception applies only where both the tort and injury take place within the territorial jurisdiction of the United States." Id., at 440-441. Plaintiffs allege that the ECFMG – FAIMER in Philadelphia, PA, received letters from the officials of Liberia's NCHE in April 2005, particularly the "computer school letter", which contained defamatory statements about the Plaintiffs and their school, that resulted in the removal of SLSOM-Liberia's removal from the IMED, Exhibit 11.  Plaintiffs claimed that Liberia committed torts when it forwarded these letters to the ECFMG – FAIMER in Philadelphia.  Foundation for Advancement of International Medical Education and Research's recognition of St. Luke School of Medicine - Liberia was a valued possession of SLSOM-Liberia that was a valuable and sell-able commodity, that demonstrated to a degree it's worthiness.  The Plaintiffs, each and all, suffered injury and economic loss as a result of the Defendant's action and conspiracy.  The tortious activity by Liberia, that harmed the Plaintiffs, is alleged to have

taken place in USA, as a result of the Liberia "computer school letter".. As such, the tort exception does apply.

## 2. COMMERCIAL ACTIVITY EXCEPTION DOES APPLY.

Section 1605(a)(2) of the FSIA sets forth the "commercial activity" exception: "(a) A foreign state shall not be immune from the jurisdiction of courts of the United States … (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." The act of send the "computer school letter" full of false and fabricated information to FAIMER could be "justified" if the documents were used in a court of law. However, Cal. Civ. Code § 47.  CCP §§ 47c states " (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."  The "computer school letter" do not meet any of the criteria for exception to CCP 47c.    Liberian officials were only seeking to  destroy the economic viability of SLSOM-Liberia because Dr. Jerroll Dolphin, and SLSOM staff refused to pay bribes to the same officials.

## 3. Cause of action under customary international law

The Defendants failed to make mention of the April 2005 "computer school letter" in its Motion to Dismiss as well as the fact that SLSOM won defaults in its LSC and LCC cases in August 2005 and October 2006.  SLSOM, and the other Plaintiffs are seeking judgment against the Defendants based on those defaults because justice has proven to be almost impossible to obtain in Liberia, especially now the Kabinah Janeh, former Minister of Justice in the

Transitional Government of Liberia (2003-2006), and defendant in the LSC case,  is now an Associate Justice of the LSC.

In its November 2009 decision, the D.C. District Court disagreed with  the United States and held that McKesson had "an implied cause of action  under customary international law for expropriation." McKesson Corp. v.  Islamic Republic of Iran, 2009 U.S. Dist. LEXIS 109368, at *19. In reaching  that conclusion the court stated, "Congress enacted the commercial  activities exception [of the FSIA] on an understanding that courts would  apply causes of action based on customary international law." Id. at *13.  The court also held that McKesson had a cause of action under Iranian law  and that the act of state doctrine did not apply. Id. At *19.  Likewise, SLSOM-Liberia did have a cause of action against the Republic of Liberia, its agencies and officials in Liberia, LSC and LCC, and the act of state doctrine does not apply.

### 4. Tort of Outrage/Infliction of Emotional Distress

Tort of Outrage/Infliction of Emotional Distress . . . .   This claim does survive against the Liberia as it pertains to the conduct of its employees who violated the terms of the relevant international laws through their tortious supervisory conduct by the allegedly abusive employees. In considering whether the surviving theories of liability are precluded by the other exception to the tortious act exception: whether they arise out of  misrepresentation or deceit.  In contrast to Cabiri and Kozorowski, plaintiffs' claims are  best characterized as stemming directly from the misinformation disseminated by the Liberia with the "computer school letter". (1) The "computer school letter" is a libelous document that resulted in the failure to provide safe care for the citizens of Liberia and other West African states where SLSOM-Liberia graduates were licensed to practice medicine, a violation of international law.  (2) Negligence – the "computer school letter" was a false report, full of lies, and failed to report the truth about St. Luke School of Medicine - Liberia to FAIMER. (3) Breach of Fiduciary Duty – the Defendants breached their fiduciary duties to truthfully file reports, letters, and statements.  The "computer school letter" did not survive LSC or LCC claims.  (4) Tort of Outrage/Infliction of Emotional Distress -  this claim does survive against the Republic of Liberia as it pertains to the conduct of its employees

1  who violated the terms of the relevant international laws through their tortious supervisory

2  conduct over their employees.

3  Plaintiffs' claims are more akin to claims of negligent supervision as employees of the

4  Liberia are alleged to have provided inadequate supervision over those under its care. In this

5  way, these claims resemble other negligent supervision claims more than they resemble claims

6  brought by the plaintiffs in Cabiri and Kozorowski. We therefore conclude that the plaintiffs'

7  claims of violation of customary international law of human rights, negligence, and breach of

8  fiduciary duty should not be dismissed for "arising out of . . . misrepresentation [or] deceit." See

9  28 U.S.C. § 1605(a)(5)(B).

10
## a.  COMMERCIAL ACTIVITY BY LIBERIA.
11

12  A "state engages in commercial activity … where it exercises only those powers that can

13  only be exercised by private citizens, as distinct from those powers peculiar to sovereigns."

14  Nelson, 507 U.S. at 360. "[T]he activity must be of the type in which private individuals engage;

15  if the activities in question are not private, but sovereign in nature, then the commercial activity

16  exception will not apply." O'Bryan v. Holy See, 556 F.3d 361, 379 (6th Cir. 2009). Now, due to

17  the available evidence, Plaintiffs claim that the Liberia conspired with GG, BS, and AC to

18  produce, send, receive, and file the documents in the Court of Appeal's of Ghana. The

19  defendants, each and all, were aware that the document, "computer school letter", were

20  fabrications, replete with false and unsupported statements. The plaintiffs assert that this act of

21  send this document to FAIMER was only done by Liberia to destroy the economic advantage

22  SLSOM-Liberia had acquired through years of hard work, educating medical students.

23  Conspiracy, Interference with Business Advantage, Libel, Infliction of Emotional Distress are

24  not state functions, but are private acts. The acts of Liberia, therefore, are commercial activity.

25  Sending the "computer school letter" to FAIMER in Philadelphia, PA, in the United States was

26  tortious. Because the claims are based upon commercial activity by Liberia, the commercial

27  activity exception clearly applies to Liberia.

28

**b. COMMERCIAL ACTIVITY IN THE U.S.**

"The first clause of section 1605(a)(2) of the [FSIA] provides that a foreign state shall not be immune from the jurisdiction of United States courts in any cause 'in which the action is based upon a commercial activity carried on in the United States by the foreign state.'" Nelson, 507 U.S. at 356. "The Act defines such activity as commercial activity carried on by such state." Id. Plaintiff's claim must "arise[] from" the defendant's "commercial activity in the United States." Gould, Inc. v. Mitsui Mining & Smelting Co., 947 F.2d 218, 221 (6th Cir. 1991). Plaintiffs do allege that Liberia has engaged in commercial activity in the U.S.; thus, the first clause does apply.

c.   ACTS BY Liberia IN THE U.S.   "The second [clause] of the commercial activity exception applies if the plaintiff's action is 'based … upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere.' 28 U.S.C. § 1605(a)(2). This clause "is generally understood to apply to non-commercial acts in the United States that relate to commercial acts abroad." Kensington Int'l ltd. v. Itoua, 505 F.3d 147, 157 (2d Cir. 2007) (quotations omitted).

**d.  DIRECT EFFECT IN THE U.S.**

The third clause of Section 1605(a)(2) applies when the claim is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The third clause also does apply because there is a "direct effect" in the United States. Further, the third clause "requires a nexus between the activity of the foreign sovereign and the plaintiff's cause of action" in the nature of minimum contacts. Corzo v. Banco Cent. de Reserva del Peru, 243 F.3d 519, 525-526 (9th Cir. 2001). The conspiracy was done by the Liberians in the United States.  The submission of the fabricated and false "computer school letter" to ECFMG – FAIMER, resulted in the removal of St. Luke School of Medicine - Liberia from the IMED, which resulted in the immediate disqualification of two dozen American medical students who were eligible to take the United States Medical Licensing Examinations Part 1 and Part 2,

hereinafter " USMLE", as well as the disqualification and revocation of the scores of a dozen or more SLSOM students and graduates who had passed all or part of the USMLE.   The reception of the "computer school letter" by the FAIMER in Philadelphia does establish minimal contacts in the USA, as the NCHE routinely is queried by ECFMG and FAIMER and will continue to do so.

**e. Deceit and misrepresentation**

Courts generally have looked to the definition of misrepresentation in the FTCA as a guide for defining the term under the FSIA, relying on the legislative history of the FSIA for such comparison. *See, e.g., Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193, 200 n.4 (2d Cir.1999).  Indeed, Liberia has been very deceitful and has, and is, misrepresenting numerous facts.

**f. THERE IS PERSONAL JURISDICTION.**

*Petrol Shipping,* 360 F.2d at 107. In its discussion, the court emphasized the distinction between the personal jurisdiction and sovereign immunity questions. It stated: The fact that one party is a branch of a foreign sovereign does not affect the conclusion that by entering into an arbitration agreement containing a submission such as here, the sovereign becomes amiable to suit. The question of immunity does not bear on the question of amiability, or personal jurisdiction. What *Farr and Orion compelled is that the Kingdom be treated as if it is physically present.*  28 U.S.C. § 1330 (1976). This section states, in pertinent part: (a) The district courts shall have original jurisdiction without regard to amount in controversy of any non jury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement. (b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title. *Id. See* Victory Transport v. Commiserii Gen., 336 F.2d 354 (2d Cir. 1964), *cert. denied,* 381

U.S. 934 (1965).  Appropriate service was made the the Defendant Liberia.  Consequently, in accordance with 28 U.S.C. § 1330, if this court holds that if Liberia is not entitled to immunity, then it has personal jurisdiction.

## G. THE ACT OF STATE DOCTRINE DOES NOT APPLY.

Again, the defendant is trying to assert that the plaintiffs are trying to get this court to overturn a Liberian HC's decision.  No, not so.  The plaintiffs are suing the Liberia for Conspiracy, Libel, Interference with Business Advantage, Intentional Affliction of Emotional Distress, and Negligent Infliction of Emotional Distress.  The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401 (1964); Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083,1088 (9th Cir. 2009) ("A long-standing common law principle, the act of state doctrine precludes courts from evaluating the validity of actions that a foreign government has taken within its own borders"). The Plaintiffs feel that there is are opportunities for justice in Ghana.

The Plaintiffs are asking this court for justice based on the allegations in the FAC regarding conspiracy, libel, interference with business advantage, intentional infliction of emotional distress, and negligent infliction of emotional distress.  The claims in this lawsuit are not intertwined with the governmental functions of Liberia.

## h. INCONVENIENT FORUM DISMISSAL IS NOT APPROPRIATE.

The FAC should not be dismissed based on the forum non conveniens doctrine. A party seeking dismissal of an action on forum non conveniens grounds "must show two things: (1) the existence of an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." Loya v. Starwood Hotels & Resorts Worldwide, Inc., 583 F.3d 656, 664 (9th Cir. 2009).

### i. LIBERIA IS NOT AN ADEQUATE ALTERNATIVE FORUM.

An "alternative forum ordinarily exists when the defendant is amiable to service of process in the foreign forum." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1143 (9th Cir. 2001). Liberia is amiable to service of process in Ghana.  There is a prior action pending there against it. That action is for a writ of prohibition, which was filed in 2005, and an Order to restore SLSOM-Liberia's status (no exceptions were made) in August 2005, see Order, to which the Ministry of Education, nor the Ministry of Health, nor the Ministry of Justice, nor any other Liberia agency has complied.   Similarly, the same agencies were sued in LCC for $120,000,000 and defaulted in October 2006, Exhibit 30, to which nothing was afforded SLSOM.  No adequate remedy can be had by SLSOM-Liberia in Liberian courts

### ii. PUBLIC INTEREST FACTORS DO NOT FAVOR DISMISSAL.

The public interest factors to be considered include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." Lueck, 236 F.3d at 1147. The public interest factors weigh in favor of the USA forum. Liberian officials have an interest in seeing that these matters are resolved by the courts in Ghana because they can make sure that nothing will be done to enforce a court's ruling in Liberia, and that the Plaintiffs will "spin their wheels" needlessly.

### iii. PRIVATE INTEREST FACTORS DO NOT FAVOR DISMISSAL.

The private interest factors to be considered include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." Lueck, 236 F.3d at 1145.

The private interest factors do not favor dismissal. It would be unduly burdensome, and would result in undue and great expense, for the Plaintiffs to pursue this action in Liberia, when

the action that took place, the receipt of the "computer school letter" and its consequential effects of removal from FAIMER's IMED, the economic distress of the Plaintiffs, etc., took place in the United States.  This matter is governed by United States and California law. The relevant witnesses and information is located primarily in the United States. If this case was to proceed in the Liberia, it may also be impossible to subpoena witnesses in United States for examination in Liberian courts. Based on the foregoing, the FAC should be sustained and the MTD based on inconvenient forum grounds should be dismissed.

**e. DISMISSAL ON COMITY GROUNDS IS NOT APPROPRIATE.**

California has interest in this dispute. Plaintiffs complain of acts by Liberia, and other Defendants that occurred in the United States. This Court should sustain the Plaintiffs' FAC and dismiss the Defendant's MTD based on the Defendant's sending the fraudulent "computer school letter" to the USA.

**f. THE FAC IS NOT BARRED BY THE LITIGATION PRIVILEGE.**

Plaintiff's complaint against Liberia is not based on actions that Liberia took within a judicial proceeding in Liberia. Again, Plaintiffs allege that Liberia sent letters, particularly the "computer school letter" to FAIMER in Philadelphia that resulted in economic damage to the Plaintiffs.

The FAC against Liberia is not barred by the litigation privilege, Cal. Civ. Code § 47.  " (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."  The "computer school letter" does not fit the qualification for a communication "without malice" or "innocent".

Next, CCP 47 (d-1), "(d) (1) By a fair and true report in, or a communication to, a public journal, of (A) a judicial, (B) legislative, or (C) other public official proceeding.  The "computer

school letter" is virtually all falsehood, lies, and fabrications, and therefore does not fit the definition of a "fair and true report".. See Exhibits 1 - 3, 5, 7, 8, 12, 14 - 19, 21 – 33 of the FAC. The Defendant has not submitted any evidence that the "computer school letter" is true or fair and therefore their request for dismissal based on litigation privilege should be denied. Subsequently the "computer school letter"  does not qualify for litigation privilege.  The claims made by the Plaintiffs are sufficient and true.

Because the litigation privilege applies to foreign actions, the FAC does state a claim against Liberia, and amendment, if necessary should not be denied. The FAC should be sustained because Section 47 clearly does not permit litigation privilege for documentation written in malice and prejudice.


**G. DR. JERROLL DOLPHIN WAS TORTURED BY LIBERIAN OFFICIALS**

The false imprisonment, arrest without charges, constant harassment by Mohammed Shariff, the conspiracy of Liberian officials, taking of Dr. Dolphin's passport, not permitting him to travel, almost daily threats against Dr. Jerroll Dolphin by Liberian officials, including threats against his life, particularly Mohammed Shariff, amounted to torture.  This torture caused severe changes to Dr. Jerroll Dolphin's mental status so much so he has been taking prescribed anti-depression medications to improve his mental status.

**g. THE FAC IS NOT TIME BARRED BY STATUTE OF LIMITATIONS**

CCP Section 354. When and while a state of war bars plaintiff's access to court, the statute of limitations period is tolled (suspended, time clock stops). Liberia is technically in a state of civil war.  See United Nations Resolution 1509 (2003), Exhibit A, attached.  The Plaintiffs claims against the Republic of Liberia and its agencies and officials are within the 8-year statute of limitations of the Republic of Liberia.  The Plaintiffs claims against the Republic of Liberia are therefore tolled.

1
2
3
4

*IV. CONCLUSION*

5
6

For the foregoing reasons, the Plaintiffs, Dr Jerroll Dolphin, St. Luke School of Medicine

7

– Ghana, St. Luke School of Medicine – Liberia, and the Class request that this honorable Court

8

deny this motion, accept the Plaintiff's FAC, and sanction the Defendant Liberia.

9

Respectfully submitted,

10
11

DATED: August 31, 2012

12

By Larry D. Walls

13

Attorney for the Plaintiffs

14
15

**CERTIFICATE OF SERVICE**

16

I hereby certify that a true and correct copy of the foregoing document was served on

17

counsel of record via ECF Notice of Electronic Filing in accordance with the Federal Rules of

18

Civil Procedure and Local Rule 5-3.3

19
20
21

DATED: August 31, 2012

22

By Larry D. Walls

23

Attorney for the Plaintiffs

24
25
26
27
28