UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06322 RGK (SHx) | | Date | September 11, 2012 |
|---|---|---|---|---|
| Title | St. Luke School of Medicine-Ghana et al. v. Republic of Liberia et al. | | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE |
|---|---|

| S. Williams (Not Present) | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Republic of Liberia, Ministry of Health, Ministry of Education, Liberian Medical Board, National Commission on Higher Education, and National Transitional Legislative Assembly's Motion to Dismiss under FRCP 8, 12(b)(1), and 12(b)(6) (DE 146)**

## I.   INTRODUCTION

On August 1, 2011, St. Luke School of Medicine-Ghana, St. Luke School of Medicine-Liberia, Dr. Jerroll B.R. Dolphin ("Dolphin"), on behalf of himself, and Robert Farmer, on behalf of a class (collectively, "Plaintiffs") filed a Complaint against various defendants, including the Republic of Liberia, Ministry of Health, Ministry of Education, Liberian Medical Board, and National Commission on Higher Education (collectively, the "Republic of Liberia" or "Defendants").[1] On February 8, 2012, Plaintiffs filed a First Amended Complaint ("FAC"). The FAC alleges twenty claims. Plaintiffs bring claims against the Republic of Liberia for: (1) violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments, under 42 U.S.C. § 1983; (2) conspiracy to violate civil rights; (3) libel; (4) slander; (5) trade libel and interference with business advantage; (6) collusion, bribery and trading in influence; (7) harassment; (8) fraud; (9) conversion; (10) false imprisonment; (11) intentional infliction of emotional distress; and (12) negligent infliction of emotional distress.

Presently before the Court is the Republic of Liberia's (including Ministry of Health, Ministry of Education, Liberian Medical Board, National Commission on Higher Education, and National Transitional Legislative Assembly) Motion to Dismiss Plaintiffs' FAC pursuant to

---

[1] The Complaint also named the National Transitional Legislative Assembly ("NTLA") as an additional defendant. The Republic of Liberia alleges the NTLA is a defunct governmental entity from a former regime that no longer exists. Similarly, Plaintiffs acknowledge the NTLA was a temporary branch for the transitional government between 2004 and 2006.

Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6). For the following reasons, the Court **GRANTS** the Republic of Liberia, Ministry of Health, Ministry of Education, Liberian Medical Board, National Commission on Higher Education, and National Transitional Legislative Assembly's Motion to Dismiss under Rule 12(b)(1), and **DENIES as moot** the Motions to Dismiss under Rules 8 and 12(b)(6).

## II.     FACTUAL BACKGROUND

Plaintiffs allege the following facts in their FAC:

Plaintiff Dolphin is the founder of St. Luke School of Medicine-Liberia ("St. Luke") located in the Republic of Liberia. The present dispute between the parties arises from the Republic of Liberia withdrawing its recognition of St. Luke as an accredited medical school, which resulted in St. Luke's graduates being unable to practice medicine in the United States.

In order for international medical school graduates, like those who graduate from St. Luke, to take the United States Medical Licensing Examination and practice medicine in the United States, they must be certified by the Educational Commission for Foreign Medical Graduates ("ECFMG"). In order to obtain ECFMG certification, international medical school graduates must have graduated from a medical school listed in the International Medical Educational Directory, which ECFMG maintains. A foreign medical school is added to the International Medical Educational Directory when the foreign country in which the school is located officially recognizes the school.

Dolphin opened St. Luke in 2001 and applied to the Liberian National Commission on Higher Education for approval as a tertiary institution. In 2003, the President of Liberia officially recognized St. Luke as a medical school and granted St. Luke a charter.

Although the Liberian government officially recognized St. Luke as a medical school in 2003, Liberian officials asked Dolphin on several occasions for bribes to facilitate the legitimization of St. Luke. Dolphin refused to pay these bribes. Accordingly, in 2005, government officials publicly denounced St. Luke and Dolphin's credibility in the Liberian media and threatened to prosecute Dolphin and "his collaborators." Government officials also caused an article to be published in the Los Angeles Times stating Dolphin had fled Liberia for fear of prosecution and was "thought to be hiding" in Los Angeles. On several occasions Liberian authorities arrested and detained Dolphin for hours, seized his passport, and warned him to not leave Liberia.

Additionally, the National Commission on Higher Education sent several letters to the ECFMG stating Liberia did not recognize St. Luke as a medical school and that St. Luke did not exist. As a result of these letters, the ECFMG immediately withdrew St. Luke from the International Medical Directory and cancelled all St. Luke graduates' test results from the United States Medical Licensing Examination.

In August 2005, the Liberian Supreme Court ordered the government to reinstate and officially recognize St. Luke. However, the ECFMG refused to re-list St. Luke on the International Medical Educational Directory. In January 2006, the ECFMG sent a letter to the National Commission on Higher Education asking about St. Luke's status and whether St. Luke's graduates were eligible to be medically licensed in Liberia. The National Commission on Higher Education never responded to this letter.

In September 2006, St. Luke filed a lawsuit against the Republic of Liberia in the

Liberian Civil Court in which St. Luke obtained a "Default Certificate" against the Republic of Liberia. However, St. Luke was unable to convert the Default Certificate into an executable judgment, because no Liberian court would set the matter for hearing.

### III.    JUDICIAL STANDARD

Federal courts are courts of limited jurisdiction and presumptively lack jurisdiction over civil actions. *Kokkenen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party who invokes jurisdiction bears the burden of establishing subject matter jurisdiction. *Id.*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may be "facial" or factual." *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack under Rule 12(b)(1), the challenger asserts the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Id.* The court must assume the factual allegations in the complaint are true and construe them in the light most favorable to the plaintiff. *See Warren v. Fox Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). However, the court need not accept as true legal conclusions pled as factual allegations. *Id.* A Rule 12(b)(1) motion will be granted, if on its face, the complaint fails to allege grounds for federal subject matter jurisdiction as required by Rule 8(a). *See id.*

When evaluating assertions of subject matter jurisdiction based on an exception to foreign sovereign immunity, courts apply the same pleading requirements as any other assertion of subject matter jurisdiction. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

### IV.    DISCUSSION

Plaintiffs assert this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs argue their claims arise from purported violations of the United States' Friendship Treaty with Liberia, the United States Constitution, and other federal statutes. Defendants argue the Court lacks subject matter jurisdiction, because the Republic of Liberia is protected by sovereign immunity.

As an initial matter, Plaintiffs failed to oppose Defendants' Motion in a timely manner. Pursuant to Local Rules 7-9 and 7-12, the Court, in its discretion, may deem Plaintiffs' inaction as consent to the granting of Defendants' Motion. However, the Court turns to the merits of Defendants' Motion. Based on the foregoing reasons, the Court finds it lacks subject matter jurisdiction over claims brought against the Republic of Liberia.

The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("FSIA"), is the sole means by which the United States courts can assert jurisdiction over claims against foreign sovereigns. *Corzo v. Banco Central de Reserva del Peru*, 243 F.3d 519, 522 (9th Cir. 2001) (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 354 (1993)). Under FSIA, foreign sovereigns are presumptively immune from suit in the United States, unless one of several exceptions applies. 28 U.S.C. § 1604. Thus, subject matter jurisdiction against a foreign sovereign depends on the existence of one of the exceptions to immunity set forth in FSIA. *Republic of Austria v. Altman*, 541 U.S. 677, 691 (2004).

To claim sovereign immunity, a defendant must establish a prima facie case that it is a foreign sovereign. *Meadows v. Dominican Republic*, 817 F.2d 517, 522-23 (9th Cir. 1987). This creates a presumption the defendant is protected by sovereign immunity. The burden of proof then shifts to the plaintiff to show a FSIA exception applies. *Id.* Once the plaintiff has shown an exception applies, the defendant then must prove its entitlement to immunity by a

preponderance of the evidence. *Id.*

### A. The Republic of Liberia and the Separately-Named Liberian Agencies Are Foreign Sovereigns

As defined by FSIA, a foreign state includes their political subdivisions, agencies, and instrumentalities. 28 U.S.C. § 1603. Section 1603 defines political subdivisions and agencies as entities that are: (1) separate legal persons (corporate or otherwise); (2) organs of a foreign state; and (3) not citizens of the United States. *Id.* An entity is an organ of a foreign state if it engages in a public activity on behalf of the foreign government. *Cal. Dep't. of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1098 (9th Cir. 2008). To determine if an entity engages in a public activity, courts consider factors such as the circumstances surrounding the entity's creation, the purpose of its activities, and its independence from the government. *Id.* An entity may be an organ of a foreign state even if it has some autonomy from the foreign government. *Id.*

The Republic of Liberia and its separately-named agencies qualify for sovereign immunity under FSIA. The Republic of Liberia is a foreign state. The separately-named agencies are "political subdivisions, agencies, and instrumentalities" under FSIA because each is an organ of the Republic of Liberia. The Ministry of Health is the country's primary institution for healthcare services and licenses medical doctors in the country through its subsidiary, the Liberian Medical Board. The Ministry of Education is the country's educational agency, and it accredits educational institutions through its accrediting agency, the National Commission on Higher Education. Even Plaintiffs' description of the agencies in the FAC indicate the agencies were created to provide services for the Liberian public and to protect the quality of the Liberian medical profession and education. (FAC ¶¶ 17-21.) Additionally, each agency is a separate legal person from the Republic of Liberia, and is not a citizen of the United States. These factors are sufficient to show that these agencies engage in public activities and are agencies of Liberia under FSIA.

Therefore, the Republic of Liberia and its separately-named agencies fit within FSIA's definition of "foreign state." Accordingly, this Court lacks subject matter jurisdiction over claims against them unless a FSIA exception exists.

### B. No FSIA Exception Applies to Defendants

Since the Republic of Liberia and its agencies are presumptively protected as a foreign state, subject matter jurisdiction exists only if a FSIA exception applies. FSIA provides, in pertinent part, that a foreign sovereign is subject to the court's jurisdiction when: (1) the sovereign's conduct that gave rise to the suit violated an existing international agreement to which the United States is a party; (2) the sovereign explicitly or implicitly waives its immunity; (3) the sovereign conducts commercial activity in, or having a direct effect, in the United States; or (4) the sovereign commits a tort in the United States. 28 U.S.C. §§ 1604-1605. These exceptions are narrowly construed. *See Sec. Pac. Nat'l Bank v. Derderian*, 872 F.2d 281, 285 (9th Cir. 1989); *Af.-Cap, Inc. v. Chevron Overseas Ltd.*, 475 F.3d 1080, 1087 (9th Cir. 2007); *MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918, 921 (D.C. Cir. 1987).

The Court finds that none of these exceptions apply.

    1.  *International Agreements Exception*

 Under FSIA, federal courts have jurisdiction over claims against a foreign sovereign where international agreements expressly conflict with the immunity provisions of the FSIA. 28 U.S.C. § 1604. An international agreement that only sets forth substantive rules of conduct between the parties to the treaty does not conflict with FSIA's immunity provisions, and thus does not trigger the exception. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 442 (1989). In contrast, the exception to sovereign immunity will apply where an international agreement creates a private right of action for private citizens to bring suit against foreign sovereigns in the United States. *See id.* The exception is triggered because the private right of action expressly conflicts with FSIA's immunity provisions. *See id.*

 Plaintiffs allege the Republic of Liberia repeatedly violated the 1939 U.S.-Liberia Treaty of Friendship, Commerce and Navigation ("Friendship Treaty"). However, violations of the Friendship Treaty do not provide a basis for subject matter jurisdiction. In its June 2, 2010 order to show cause regarding subject matter jurisdiction in the Plaintiffs' previously dismissed case (CV 10-01791 RGK (SHx)), this Court noted that general treaties, without more, are often insufficient to create a basis for subject matter jurisdiction under 28 U.S.C. § 1331. *See Dreyfus v. Von Finck*, 534 F.2d 24, 29 (2d Cir. 1976) ("Rarely is the relationship between a private claim and a general treaty sufficiently direct so that it may be said to 'arise under' the treaty as required by art. III, § 2, cl. 1 of the Constitution."); *Abi Jauodi & Azar Trading Corp. v. Cigna Worldwide Ins. Co.*, No. Civ.A.91-6785, 1992 WL 184262, at *3 (E.D. Pa. July 27, 1992) (finding the U.S.-Liberian Friendship Treaty is insufficient to support federal question jurisdiction). Here, the Friendship Treaty is a general treaty that does not create a private right of action for private individuals to bring suit against the Liberian government in a United States court. *See Argentine Republic,* 488 U.S. at 422. Thus, the international agreement exception does not apply.

    2.  *Waiver Exception*

 Federal courts have jurisdiction over a foreign nation when the nation has explicitly or implicitly waived its sovereign immunity. 28 U.S.C. § 1605(a)(1). Courts look for strong evidence that a foreign state has waived its immunity. *In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 546 (9th Cir. 1996). Courts have found waiver where a foreign state has agreed to arbitration in another country or that the law of a particular country should govern a contract. *Id.* Courts have also found implicit waiver when a foreign state has filed a responsive pleading without raising the defense of sovereign immunity. *Id.*

 Plaintiffs make no showing that the Republic of Liberia explicitly waived its sovereign immunity. Furthermore, Defendants did not waive their sovereign immunity in their Notice of Appearance (DE 145) or their Motion to Dismiss (DE 146, 147). Therefore, the Republic of Liberia has not waived its immunity.

    3.  *Commercial Exception*

 Federal courts have jurisdiction over foreign sovereigns in actions where the claim is based upon: (1) a commercial activity carried on in the United States by the foreign state; (2) an act performed in the United States in connection with a commercial activity elsewhere; (3) or commercial activity outside the United States that has a direct effect in the United States. 28 U.S.C. § 1605(a)(2). FSIA defines "commercial activity" as "either [a] regular course of commercial conduct or [a] particular commercial transaction or act," and provides that the "commercial character of an activity shall be determined by reference to the nature of the

course of conduct or particular transaction or act, rather than by reference to its purpose." § 1603(d). A government's act is "commercial" if it is the type of transaction that private actors could complete. *Id.* But the act is not commercial if it is one that requires sovereign power, such as the government's regulation of the market or use of its police power. *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992).

There are no allegations the Republic of Liberia's actions were "commercial" in nature. In fact, Plaintiffs' FAC asserts much of the harm suffered by Plaintiffs resulted from the actions of individual Liberian officials abusing their official powers. Defendants' arrest and detention of Dolphin, public denouncement of Plaintiffs, and official letters to the ECFMG are not the types of actions that private actors could complete without the use of sovereign power. Thus, the Defendants' alleged actions do not fall within the commercial exception.

    4.    *Tort Exception*

Federal courts have jurisdiction over a foreign state where there are claims for money damages for personal injury or death, or damage to or loss of property, occurring in the United States. 28 U.S.C. § 1605(a)(5). The alleged tort must occur within the United States. *See Argentine Republic*, 488 U.S. at 439. Torts occurring wholly in a foreign country with only possible effects in the United States will not suffice. *Id.* Not only does the injury have to occur in the United States, but the tortious action as well. *See Gutch v. Federal Republic of Germany*, 444 F. Supp. 2d 1, 11 (D.D.C. 2006) (holding that for the tortious activity exception to apply, the tortious act and the injury must occur in the United States); *accord Coleman v. Alcolac, Inc.*, 888 F. Supp. 1388, 1403 (S.D. Tex. 1995).

Plaintiffs' claims, including claims alleging injury in the United States, do not qualify under the tort exception, because all of the Republic of Liberia's alleged tortious actions occurred outside of the United States. *See Gutch*, 444 F. Supp. 2d at 11. Plaintiffs allege the Republic of Liberia's defamatory statements to the Liberian media caused Dolphin to be libeled in a false story published in the Los Angeles Times. Plaintiffs also assert they suffered loss of business advantage when Liberian officials caused St. Luke to be removed from the International Medical Educational Directory when Liberian officials sent the ECFMG letters stating that the government did not recognize St. Luke as a medical school. While these alleged injuries may be true, Plaintiffs failed to allege the Republic of Liberia acted tortiously within the United States. The tort exception is meant to apply only to claims where both the tortious act and the injury occurred within the territorial jurisdiction of the United States. *Argentine Republic*, 488 U.S. at 439; *Gutch*, 444 F. Supp. 2d at 11. Therefore, the tort exception does not apply because the Republic of Liberia's actions took place solely in Liberia.

Because the Republic of Liberia is a foreign sovereign and none of the exceptions to immunity exist, it is entitled to sovereign immunity under FSIA. The Court does not have subject matter jurisdiction over the claims against the Republic of Liberia.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Republic of Liberia, Ministry of Health, Ministry of Education, Liberian Medical Board, National Commission on Higher Education, and National Transitional Legislative Assembly's Motion to Dismiss pursuant to Rule 12(b)(1). The Court **DENIES as moot** Defendants' Motions to Dismiss pursuant to Rules 8, and 12(b)(6).

**IT IS SO ORDERED.**

                                                                                                                                                                                                                                                                                                                     : _____

Initials of Preparer